UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

DAVID F. POEHLER,              )
        Plaintiff,             )
                              )
    v.                        )    Case No. 04cv30254-MAP
                              )
JOHN E. POTTER,               )
POSTMASTER GENERAL,           )
UNITED STATES POSTAL SERVICE, )
        Defendant.            )

**MEMORANDUM IN SUPPORT OF DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

The plaintiff, David F. Poehler ("Poehler"), brings this action against John E. Potter, Jr., United States Postmaster General, under Title VII of the Civil Rights Act of 1964. The defendant has moved for summary judgment on the following grounds. First, claims relating to Poehler's efforts to become a supervisor are barred by the statute of limitations because Poehler failed to file his lawsuit within 90 days of the final agency decision. Second, Poehler cannot show an adverse employment action. Finally, Poehler cannot demonstrate any discriminatory motive. Therefore, the defendant is entitled to summary judgment.

## LOCAL RULE 56.1 STATEMENT OF MATERIAL FACTS[1]

### Employment Background

1.    At times relevant to the complaint, Poehler was employed by the United States Postal Service ("Postal Service"). Tab A, Poehler Deposition I,[2] pp. 5-11.

2.    In 1996, Poehler worked as a supervisor at the Chicopee Post Office.  He resigned in December, 1996, following a disagreement with his supervisor.  Tab A, pp. 12-13.  After a failed business venture, Poehler returned to the Postal Service in 1997 as a clerk in the Springfield Bulk Mail Center ("BMC"), supervised by Al Hearn and Mark Sales.  Tab A, pp. 22-23.   The BMC manager, Robert Koestner, told Poehler he had to  complete the Associate Supervisor Program ("ASP") if he wanted to become a supervisor.  Tab A, p. 32.  The ASP trains supervisors.

3.    Poehler worked as an acting supervisor[3] from 1998 to 1999, when he chose to return to the clerk's job because his workload was too heavy.  Tab A, pp. 26-27.[4]

---

[1]The defendant accepts the facts as true for the purpose of this motion, reserving his right to challenge them at trial.

[2]Poehler's deposition took place on November 7, 2005, and January 20, 2006, and is referenced as Poehler I (Tab A) and Poehler II (Tab B).

[3]An acting supervisory position did not require completion of the ASP.

[4]Poehler was replaced as acting supervisor by Frank Landry. Tab A, p. 29.  Landry then went through the ASP and became a permanent supervisor.  Tab A, pp. 30-31.

4.    In 1998, Poehler applied for the ASP but failed the admissions test.  Tab A, p. 33, 39.

5.    Poehler worked as a clerk from 1999 to 2001, and a bundle sorter from 2001 to 2004.  In 2004, Poehler became an acting supervisor at the BMC in Springfield and transferred to a similar position at the BMC annex in Chicopee in 2005.  Tab A, pp. 5-11.

### EEO Complaint 1B-012-0026-99
### Supervisor Position

6.    At some point in the spring of 1999, Poehler learned that a woman named Suzanne Bowes had been promoted on or about March 10, 1999, to a supervisory position without going through the ASP.  Tab  A, p. 42

7.    On June 2, 1999, Poehler filed EEO Complaint 1B-012-0026-99, alleging age and sex discrimination based on Bowes' promotion.  The complaint identified Koestner as the discriminating official.  Tab C, Declaration of Linda Greaney ¶ 6 and Exhibit 1 thereto.  Koestner was not involved in Bowes' promotion.  Tab A, pp. 48-50.

8.    On May 4, 2001, Attorney Mary Ann Lane entered an appearance on behalf of Poehler and subsequently requested a hearing before an Administrative Judge ("AJ").  Tab C, ¶ 7, and Ex. 2 thereto.

9.    On June 26, 2003, an EEOC AJ issued a decision in favor of the Postal Service, finding no discrimination.  Tab C, ¶ 9,

3

and Ex. 3 thereto.  Poehler appealed to the EEOC Office of
Federal Operations ("OFO"), which on October 27, 2003, affirmed
the finding of no discrimination and notified Poehler of his
right to file a lawsuit within 90 days.  Tab C, ¶ 11, and Ex. 6
thereto.  Poehler did not file a lawsuit within 90 days of the
EEOC decision.  Tab C, ¶ 11.  Poehler claims he did not receive
the OFO decision until March, 2004.  Tab B, p. 15.  The lawsuit
was filed on December 29, 2004.

10.  A number of men and women became supervisors by
completing the ASP.  Tab A, pp. 28-35.

### EEO Complaint 1B-012-0034-01
### Retaliation

11.    On June 20, 2001, Poehler filed EEO complaint 1B-
120034-01, alleging unspecified retaliation based on having filed
EEO complaint 1B-012-0026-99.  The complaint named C. Clark, M.
Sales, E. Maio, Alan Hearn and unspecified management as the
discriminating officials.  Tab C, ¶ 12, and Ex. 7 thereto.
Through consolidation and amendment, additional allegations of
retaliation were included.   Complaint 1B-012-0026-99 was not
consolidated with Complaint 1B-12-0034-01.  Tab C, ¶ 12, and Exs.
8-10 thereto.

12.  Poehler initially outlined his complaints as follows:
(1) a March 15, 2001, notice of removal, which was reduced to a
letter of suspension; (2) the hiring of former Emery employees as
supervisors; and (3) a November, 2000, investigation into

4

Poehler's disability.  Tab C, ¶ 13, at Ex. 11 thereto.  The agency accepted the first claim for investigation and dismissed the remaining claims.  Tab. C, ¶ 13, and Ex. 12 thereto.

13.  On November 1, 2001, Poehler outlined his claims as follows: (1) the March 15, 2001, notice of proposed removal; (2) the July 18, 2001, seven-day suspension; (3) a comment made by Al Hearn on August 30, 2001; and (4) denial of overtime over the Labor Day weekend 2001.  Tab C, ¶ 14, and Ex. 13 thereto.  An amendment added a claim of discrimination relating to a notice of a 14-day suspension issued on September 14, 2001. Tab C, ¶ 12, and Ex. 10 thereto.

14.  An EEOC AJ found no discrimination.  The Postal Service adopted the AJ's decision on September 30, 2004, and notified Poehler of his right to file a lawsuit withing 90 days.  Tab C, ¶ 17, at Exs. 15 and 16 thereto.

15.  While Poehler testified that he believed the March 15, 2001, notice of proposed removal was motivated by retaliation, he could not point to any evidence supporting that belief other than the fact that one supervisor was aware he had filed a previous EEO complaint.  Tab B, pp. 21-24.  Poehler's previous EEO complaint was not against any of the supervisors responsible for issuing the disciplinary letter.  Tab B, p. 25.

16.   The March 15, 2001, notice of proposed removal notified Poehler that he would be terminated because he had been absent since November 30, 2000, and had failed to contact his supervisors or provide documentation justifying his absence.   Tab D.   As a result of a union grievance, the removal was reduced to a seven-day suspension, which was held in abeyance as long as Poehler was not absent for more than three days in the following three months.   Tab C, Ex. 13.   After missing more than three days of work in a three-month period, the Postal Service invoked the seven-day suspension.   The suspension was "in-house" and did not result in any loss of pay.   Tab C, Ex. 13; Tab B, pp. 27-29. Poehler could not point to any evidence supporting his belief that the disciplinary action was discriminatory.   Ex. B, p. 29.

17.   Hearn's comment, which was the subject of Complaint 1B-012-0034-01, took place on August 30, 2001, when Hearn expressed his feelings to Poehler about being named in an EEO complaint.   Tab C, Ex. 13; Tab B, pp. 29-30.   Hearn was married to Poehler's cousin and the two had a friendly relationship at the time the comment was made.   Tab B, p 30.

18.   Before Labor Day, 2001, Poehler asked Hearn if he could have the weekend off; Hearn agreed.   When the scheduling book showed that Poehler was scheduled for work on Labor Day, he asked that he be allowed to work the weekend so that he could get overtime.   Hearn told him that he could not work the weekend

because the schedule was already finalized.  Ultimately, Poehler was not required to work on Labor Day.  Tab B, pp. 32-33.

19.  EEO complaint 1B-012-0034-01 also addressed Poehler's complaint about a 14-day suspension issued on September 29, 2001, for failure to be regular in attendance.  Tab B, pp, 34-35. Poehler acknowledged that he had not been regular in attendance and did not have evidence of similarly situated employees who were treated differently.  Tab B, pp. 35-37.

### EEO Complaint 1B-011-0008-03
### Custodial Position

20.  On May 29, 2003, Poehler filed EEO Complaint 1B-011-0008-03, alleging age and disability discrimination as well as retaliation in the April 7, 2003, denial of a transfer to a custodial position.  This time, Poehler named Richard Wentzel as the discriminating official.  Tab C, ¶ 18, and Ex. 17 thereto. Poehler did not request a hearing and on November 1, 2004, the Postal Service issued a final decision denying his claim and notifying him of the right to file a lawsuit within 90 days.  Tab C, ¶¶ 19, 20 and Exs. 18 and 19 thereto.

21.  Poehler testified that he believed that Wentzel's decision was motivated by disability discrimination because Wentzel told him that the job involved climbing ladders and other physical labor.  Poehler acknowledged that he was not capable of doing that type of manual work.  Poehler also believed that Wentzel's decision was motivated by age discrimination because

Wentzel hired a younger worker for the job.  Finally, Poehler believed that Wentzel's decision was motivated by retaliation for Poehler's prior EEO activity, even though Poehler acknowledged that Wentzel was not aware that Poehler had filed any EEO complaints. Tab B, pp. 39-42.

### The Lawsuit

22.  Poehler filed this lawsuit on December 29, 2004, alleging that he was not permitted to become a supervisor without participating in the ASP program.  Complaint, unnumbered third paragraph.  According to Poehler, this civil action was filed after he received the final agency action on September 30, 2004, in EEO Complaint 1B-012-0034-01.  Poehler claims that the lawsuit encompasses Complaint 1B-012-0034-01, Complaint 1B-021-0026-99, and Complaint 1B-001-0008-03.  Tab E, Interrogatory Response 1.

### ARGUMENT

### I.   The Summary Judgment Standard

The role of summary judgment is to "'pierce the pleadings and to assess the proof in order to see whether there is a genuine issue for trial.'"  Mesnick v. General Electric Co., 950 F.2d 816, 822 (1st Cir. 1991)(quoting Garside v. Osco Drug, Inc., 895 F.2d 46, 50 (1st Cir. 1990)).  The burden on the moving party "may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case."  Celotex Corp. v. Catrett, 477 U.S.

8

317, 325 (1986).  The nonmoving party cannot rest on mere

allegations, but must set forth specific facts demonstrating a

genuine issue for trial.  Hoeppner v. Crotched Mountain

Rehabilitation Center, Inc., 31 F. 3d 9 (1st  Cir. 1994); see

also Perez de la Cruz v. Crowley Towing & Transp. Co., 807 F.2d

1084, 1086 (1st Cir. 1986)(holding that a party may not rely on

mere speculation or conjecture as to facts to overcome a motion

for summary judgment).

     Moreover, not every factual dispute will defeat summary

judgment.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252

(1986).  If the factual dispute is not material and does not make

the outcome of trial uncertain, summary judgment is appropriate.

Id.  A dispute of fact is genuine only if there is sufficient

evidence to permit a reasonable fact-finder to resolve the issue

in the nonmoving party's favor.  NASCO, Inc. v. Public Storage,

Inc., 29 F.3d 28, 32 (1st Cir. 1994).

## II.  The Claim Relating to the Supervisory Position Is Barred by the Statute of Limitations

     Poehler's claim that the Postal Service discriminated

against him by requiring him to complete the ASP in order to

become a supervisor is barred because he failed to file this

lawsuit within 90 days of the EEOC decision.  In order to pursue

a discrimination claim in court, a plaintiff must file his

lawsuit within 90 days of receipt of the "right to sue" letter.

42 U.S.C. § 2000e-5(f)(1).  "In the absence of recognized

9

equitable consideration, the court cannot extend the limitation period by even one day." Rice v. New England College, 676 F.2d 9, 11 (1st Cir. 1982).

In the instant case, the final EEOC decision denying Poehler's claim was dated October 27, 2003, thus any civil action had to be filed by the end of January, 2004. Poehler's lawsuit, filed on December 29, 2004, was 11 months too late.

Any claim by Poehler that the 90-day time period should be tolled must be rejected. In Irwin v. Department of Veterans Affairs, 498 U.S. 89, 96 (1990), the Court held that Title VII time limits are subject to equitable tolling "in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory time period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing a deadline to pass." However, the Court held that equitable tolling would not save the plaintiff's claim where her attorney's office had received notice of the final decision.

In Irwin, the plaintiff claimed that she did not receive the EEOC "right to sue" letter until April 7 1987, even though the letter purportedly was mailed on March 19, 1987. Irwin also claimed that her attorney was out of the country when the letter arrived at the attorney's office on March 23, 1987, and the attorney did not learn of the EEOC decision until he returned to

10

the office on April 10, 1987.  Irwin filed her lawsuit on May 6, 1987, 44 days after the EEOC letter was received in her attorney's office and 29 days after she first received personal notice.  While recognizing that equitable tolling applies generally to Title VII lawsuits against the government, the Court held that the principle did not cover the plaintiff's situation, which was "at best a garden variety claim of excusable neglect." Id. at 96.

Lower courts have reached the same conclusion under similar factual scenarios.  See e.g. Reschny v. Elk Grove Plating Co., 414 F.3d 821, 823-24 (7th Cir. 2005) (equitable tolling will not apply when plaintiff and her counsel failed to provide EEOC with updated mailing address); Wilson v. Secretary, Department of Veterans Affairs, 65 F.3d 402, 404-06 (5th Cir. 1995) (time period runs from attorney's receipt of notice and equitable tolling will not save the claim even if the client's receipt of notice was delayed); Morehead v. Genuine Parts Co., 1999 WL 33117112 (D. Me. Dec. 21, 1999) (notice to attorney starts the 90-day time period for filing suit and equitable tolling not available unless the missed deadline was due to circumstances beyond the plaintiff's control).

The First Circuit's approach to equitable tolling in recent cases confirms that the doctrine cannot save Poehler's untimely claim.  The First Circuit takes a narrow view of equitable

11

exceptions to Title VII limitations periods and applies the
doctrine sparingly. <u>Mercado v. Ritz-Carlton San Juan Hotel</u>, 410
F.3d 41, 46 (1st Cir. 2005). "'Federal courts should not apply
equitable tolling liberally to extend time limitations in
discrimination cases . . . . In a nutshell, equitable tolling is
reserved for exceptional cases.'" <u>Davis v. Lucent Technologies,
Inc.</u>, 251 F.3d 227, 234 (1st Cir. 2001) (quoting <u>Chico-Velez v.
Roche Products, Inc.</u>, 139 F.3d 56, 58 (1st Cir. 1998). <u>Cf</u>. <u>Rakes
v. United States</u>, __ F.3d __, 2006 WL 726683 (1st Cir. March 23,
2006) (in context of Federal Tort Claims Act case, equitable
tolling will not apply when the plaintiff did not exercise due
diligence).

    In this case, Poehler was represented by counsel at the time
of the October 27, 2003, final agency action and there is no
evidence that his lawyer did not receive the notice. Moreover,
even if the statute of limitations did not start running until
March 2004, when Poehler claims he received actual notice of the
decision, his lawsuit still comes months too late.

**III. Poehler Did Not Suffer An Adverse Employment Action**

    As to Poehler's remaining claims, he cannot show that
he suffered an adverse employment action, a prerequisite for a
discrimination claim. <u>Marrero v. Goya of Puerto Rico, Inc.</u>, 304
F.3d 7, 22 (1st Cir. 2002) (citing <u>Hernandez-Torres v.
Intercontinental Trading, Inc.</u>, 158 F.3d 43, 47 (1st Cir. 1998)).

"To be adverse, an action must materially change the conditions of the plaintiff's employment." Gu v. Boston Police Dept., 312 F.3d 6, 14 (1st Cir. 2002). Adverse employment actions include "demotions, disadvantageous transfers or assignments, refusals to promote, unwarranted negative job evaluations, and toleration of harassment by other employees." Hernandez-Torres, 158 F.3d at 47. "'[T]he mere fact that an employee is displeased by an employer's act or omission does not elevate that act or omission to the level of a materially adverse employment action.'" Marrero, 304 F.3d at 23 (quoting, Blackie v. Maine, 75 F.3d 716, 725 (1st Cir. 1996)).

Minor changes in working conditions normally do not constitute adverse employment actions. Id. (citations omitted). "Otherwise every trivial personnel action that an irritable . . . employee did not like would form the basis of a discrimination suit." Id. (citing Williams v. Bristol-Myers Squibb Co., 85 F.3d 270, 274 (7th Cir. 1996)). "[A] materially adverse change in the terms and conditions of employment must be more disruptive than a mere inconvenience or an alteration of job responsibilities." Crady v. Liberty Nat'l Bank and Trust Co., 993 F.2d 132, 136 (7th Cir. 1993)(cited with approval in Marrero, 204 F.3d at 23).

The vast majority of the actions alleged by Poehler do not approach the level of severity necessary to be considered "adverse employment actions." The March 15, 2001, notice of

13

proposed removal was reduced to a seven-day suspension, which was held in abeyance provided Poehler did not miss more than three days of work within a three-month period.  Tab C, Ex. 13.  While the suspension ultimately was invoked because Poehler missed more than three days of work, the suspension was "in-house" with no loss of pay.  Tab B, pp. 27-29.   Accordingly, the disciplinary action did not constitute an adverse employment action.

The August 30, 2001, comment by Hearn about being named in an EEO complaint similarly fails to meet the threshold for an adverse employment action.  Noviello v. City of Boston, 398 F.3d 76, 92 (1st Cir. 2005).  An "allegedly retaliatory act must rise to some level of substantiality before it can be actionable."  Id.  Hearn's remark was isolated, unremarkable and plainly insufficient to support a discrimination claim.

Finally, the denial of overtime during the Labor Day holiday was trivial at best and not actionable.  Moreover, Poehler initially requested the weekend off and ended up getting just what he had wanted.

## IV.  Poehler Cannot Establish A Prima Facie Case of Discrimination

Poehler's complaint cannot survive summary judgment because he has no evidence that the Postal Service was acting with a discriminatory motive.   McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).  An employer is entitled to summary judgment "if the record is devoid of adequate direct or

14

circumstantial evidence of discriminatory animus on the part of the employer." LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 843 (1st Cir. 1993), cert. denied 114 S.Ct. 1398 (1994). "[T]he plaintiff must ordinarily do more than impugn the legitimacy of the employer's asserted justification; he must also adduce evidence 'of the employer's discriminatory animus'." Vega v. Kodak Caribbean Ltd., 3 F.3d 476, 479 (1st Cir. 1993), quoting Mesnick v. General Elec. Co., 950 F.2d 816 (1st Cir. 1991). Poehler simply can't meet that burden.

First, the constantly changing focus of Poehler's various EEO claims is a strong indication that the claims lack substance. Poehler vacillates between age, sex, disability and retaliation as the basis for his claims and targets virtually every supervisor. For example, in 1999, Poehler complained that Robert Koestner discriminated against him on the basis of age and sex by not letting him become a supervisor without completing the supervisor training program known as ASP. Tab A, p. 42, 48-50; Tab C, ¶ 6 and Ex. 1 thereto. In 2003, Poehler threw disability discrimination into the mix when he was denied a transfer to a custodial position, this time naming Richard Wentzel as the discriminating official. Tab B, pp. 39-42; Tab C, ¶¶ 19, 20 and Exs. 18 and 19 thereto. In between, in 2001, Poehler claimed retaliation by still different supervisors in connection with a variety of complaints about disciplinary action and overtime.

15

Tax C. ¶¶ 12-14 and Exs. 7-13 thereto.  It defies logic to
believe that these supervisors all discriminated against Poehler
for different reasons.

Moreover, Poehler's testimony about the circumstances
surrounding these events undercuts any claim of discrimination.
For example, Poehler's age and sex discrimination claim against
Koestner relating to the ASP was based on Poehler's belief that
Susan Bowes was promoted to a supervisory position without going
through the training program.  Yet Poehler conceded that Bowes
was hired in Vermont and Koestner had no involvement in her
promotion.  Tab A, pp. 48-50.

Poehler attributed the March 15, 2001, notice of proposed
removal to retaliation.  However, he agreed that only one of the
four supervisors named in the complaint was even aware that he
had filed a previous EEO action, and the prior EEO action was not
against that supervisor.  Tab B, pp. 21-25.  Indeed, Poehler
could offer no evidence supporting his claim of a retaliatory
motive for the disciplinary action.  While a plaintiff may
establish retaliation through a temporal connection between the
protected activity and the retaliation, in this case there is no
temporal proximity.  Poehler filed his initial EEO complaint in
June, 1999; the letter of proposed removal and related
disciplinary actions took place almost two years later.  With
such a large gap in time, Poehler cannot establish that the

disciplinary action was imposed in retaliation for protected activity. <u>Calero-Cerezo v. United States Department of Justice</u>, 355 F.3d 6, 25 (1st Cir. 2005).

Poehler may claim that the alleged acts of retaliation in July, August and September, 2001, which were included in EEO Complaint 1B-012-0034-01 by amendment,[5] were in retaliation for the filing of Complaint 1B-012-0034-01 in June, 2001. In that case, the temporal connection is closer but still not sufficient. <u>Calero-Cerezo</u>, 355 F.3d at 25 (three months period between protected activity and alleged retaliation insufficient). Moreover, as to the September 29, 2001, letter of suspension for attendance issues, Poehler acknowledged that he had not been regular in attendance and that he had no evidence of similarly situated employees who were treated differently. Tab B, pp. 35-37.

Finally, Poehler lacks evidence that discrimination was behind the denial of a transfer to the custodial position. Poehler acknowledged that he was not capable of performing the work required by the job. Therefore, it is difficult to conceive of how the denial was discriminatory.

-----

[5]EEO complaints relating to disciplinary action in July and September, 2001, and the alleged denial of overtime over Labor Day weekend 2001 were added to Complaint 1B-012-0034-01 through amendment and consolidation. Tab C, ¶ 12, and Exs. 8-10 thereto.

In sum, Poehler's speculation about the Postal Service's discriminatory motives is insufficient to defeat summary judgment.

## **CONCLUSION**

For the reasons stated above, the defendant respectfully requests that her motion be granted.

                              Respectfully submitted,

                              MICHAEL J. SULLIVAN
                              United States Attorney

                        By:   /s/Karen L. Goodwin
                              Karen L. Goodwin
                              Assistant U.S. Attorney
                              U. S. Attorney's Office
                              1550 Main Street, Room 310
                              Springfield, MA  01103
Dated: April 5, 2006         413-785-0235


## CERTIFICATION

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

                              /s/Karen L. Goodwin

18

1

1 - 64

IN THE UNITED STATES DISTRICT COURT

FOR THE

DISTRICT OF MASSACHUSETTS


DAVID F. POEHLER,                    )
        Plaintiff,               ) DOCKET NO.
-v-                                  ) 04CV30254-MAP
                                 ) 04CV30192-MAP
UNITED STATES Postal Service,        )
        Defendant.               )


        THE ORAL DEPOSITION OF DAVID F. POEHLER, held

pursuant to Notice, and the applicable provisions of the

Federal Rules of Civil Procedure, before Diana Strzemienski,

a Court Reporter and Notary Public, within and for the

Commonwealth of Massachusetts, at the offices of the United

States Attorney, 1550 Main Street, Springfield,

Massachusetts, on Monday, November 7, 2005, commencing at

10:31 a.m.



APEX Reporting
(617) 426-3077

5

1                    P R O C E E D I N G S

2                                        (10:31 a.m.)

3        D A V I D   F.   P O E H L E R, having been sworn by a

4        Notary Public to tell the truth, the whole truth and

5        nothing but the truth, testified upon his oath as

6        follows:

7    EXAMINATION BY MS. GOODWIN:

8        Q    Good morning, Mr. Poehler.  My name is Karen

9    Goodwin and I'm representing the Post Office in this case.

10   I'm going to ask you some questions this morning and if you

11   -- if my questions are unclear please let me know and I'll

12   try to rephrase them and make them more clear.  And it's

13   just important that you give a verbal response because the

14   Court Reporter's taking it down by a tape-recording system

15   and won't know what a nod of the head means, or an "m-hm,"

16   could be either way.

17            Let me start off with some background questions.

18   Where are you currently working?

19       A    I am currently working at the Chicopee Annex Post

20   Office as an acting supervisor.

21       Q    And how long have you been doing that?

22       A    Since around June of this year.

23       Q    And what were you doing before that position?

24       A    I was acting as a supervisor at the Bulk Mail

25   Center.

6

1      Q     And how long were you -- in what capacity were you

2 an acting supervisor in the Bulk Mail Center?  What area

3 were you working in?

4      A     I was working the Far East, it's called the Far

5 East.

6      Q     Far East?

7      A     Yes.

8      Q     And in what department?  Who were you supervising?

9      A     I was supervising clerks and mail handlers.

10      Q     And who did you report to as an acting supervisor

11 at the BMC?

12      A     Jim Albano.

13      Q     And how long did you have that job, acting

14 supervisor at the BMC?

15      A     I've been doing it since last April of last year.

16      Q     April of '04?

17      A     '04.

18      Q     And as an acting supervisor in Chicopee who do you

19 report to?

20      A     I report to Mark Sales.  He's the MDO.

21      Q     What's MDO?

22      A     Manager of Service -- manager,

23 supervisor/director.

24      Q     So, the Chicopee Annex is not a -- it's not a

25 retail post office?

```
 1      A    No.

 2      Q    It's the annex of the Bulk Mail Center?

 3      A    Yes.

 4      Q    Who appointed you to the job of acting supervisor

 5  in Chicopee?

 6      A    Jim Barton who is -- he's the MDO.  At the time,

 7  he was -- he was a -- he was acting as import -- plant

 8  import support.  It's a term they use for -- it's a level

 9  before the manager of all the BMC.

10      Q    So, he was under who?

11      A    He was under ---

12      Q    Was he under Mark Sales?

13      A    No, he was over Mark Sales.

14      Q    Was Mark Sales in the position that he's -- I

15  thought you indicated that Mark Sales was the MDO.

16      A    He's the MDO over at the annex.

17      Q    Okay.  So, Mark Sales is the MDO at the annex.

18      A    Annex.

19      Q    Jim Barton ---

20      A    Jim Barton was import supplant -- plant import.  I

21  always get those confused.  Plant import ---

22      Q    I'm not particular worried about the title.

23      A    Title.  Okay.

24      Q    Jim Barton, is he Mr. Sales' supervisor?

25      A    Not directly.  He's just -- in the chain of
```

1    command, he's -- he's up there with the bulk mail manager.

2        Q    And how did you go about getting the job as acting

3    supervisor in Chicopee?  Did you have to apply for that?

4        A    No.  Lee Kopecz, who is now semi-retired, asked me

5    last year if I would act for him, he was short supervisors,

6    and he knew I had been a supervisor for about 12 years

7    previously.

8        Q    And who -- before you became acting supervisor Far

9    East what were you doing?

10       A    I was a -- I had a bid in, a bundle sorter, clerk,

11   clerk job.

12       Q    What do you mean, you had a bid in?  I don't

13   understand what that is.

14       A    You qualify for a bid and then you have days off,

15   it goes according to your bid, you do a specific job.

16       Q    So, your job varies from day to day?

17       A    No, it's usually like I was assigned to a bundle

18   sorter and I key zip codes.

19       Q    And how long did you do that?

20       A    I did that for, to my recollection, about three

21   years.

22       Q    And who was your supervisor in that position?

23       A    Lee Kopecz.

24       Q    So, were you doing that in Chicopee?

25       A    No, I was doing that at the Bulk Mail Center in

1    Springfield.

2         Q     Is that where Mr. Kopecz worked?

3         A     Right.

4         Q     And prior to working as a bundle sorter for about

5    three years what were you doing?

6         A     I was on Tour 1 as a bundle sorter and we lost our

7    bids and went to Tour 3.

8         Q     And Tour 1, when you were a Tour 1 bundle sorter

9    ---

10        A     I was acting also on that tour.

11        Q     You were -- you were what?

12        A     Also acting as a supervisor on that tour.

13        Q     Okay.  Let me try to understand.  When did you

14   start working as a Tour 1 bundle sorter?

15        A     Oh, I believe, to my recollection, it was 2001.

16   Yeah, 2001.

17        Q     And you were a bundle sorter and an acting

18   supervisor on Tour 1?

19        A     Yeah, I was -- I had a bid as a bundle sorter.

20        Q     Okay.

21        A     Okay.  Clerk.  And then they approached me, wanted

22   me to act as a supervisor.

23        Q     Who approached you and wanted you to act as a

24   super ---

25        A     Al Hearn and Mark Sales.

10

```
 1        Q    And how long did -- was that for the entire time
 2   that you were on Tour 1 that you also acted as a supervisor?
 3        A    Yes, for the most part.
 4        Q    And then at some point you went over to Tour 3.
 5        A    Three.
 6        Q    And when did you go to Tour 3?
 7        A    I went to Tour 3 in 2003, I believe.
 8        Q    And were you still in that same position as a
 9   bundle sorter?
10        A    Yes.
11        Q    Were you acting supervisor on Tour 3?
12        A    Not until last year, 2004.
13        Q    And that's when Mr. -- who -- Mr. Albano was the
14   -- who asked you to be the acting supervisor?
15        A    It was Lee Kopecz.
16        Q    Lee Kopecz.
17        A    And Jim Albano was like the -- his -- when he
18   wasn't -- his days off, he would be the boss.  They were
19   both MDOs.
20        Q    And before you went onto Tour 1 in 2001 as a
21   bundle sorter, what were you doing for the Post Office?
22        A    Say that again, ma'am?
23        Q    What were you doing prior to 2001, before taking
24   the position as a bundle sorter on Tour 1?
25        A    I was a clerk on Tour 1 from 1999 to 2001.  Then I
```

*APEX Reporting*
(617) 426-3077

11

1   lost my job over there and went over to the bundle sorter.

2        Q    So, you -- from '99 to 2001 you were a clerk on

3   Tour 1.

4        A    Right.

5        Q    At the BMC?

6        A    Right.  At the BMC.

7        Q    And who was your supervisor?

8        A    Mark Sales and Al Hearn.

9        Q    And are you currently married, Mr. Poehler?

10       A    No, I'm not.

11       Q    And have you ever been married?

12       A    Yes.

13       Q    When were you married?  During what period of time

14  were you married?

15       A    1972 to 1982.

16       Q    And were you divorced in or around 1982?

17       A    Yes.

18       Q    And have you been married since?

19       A    No.

20       Q    Do you have any children?

21       A    Yes.

22       Q    How many children?

23       A    Five.

24       Q    And what are their ages?

25       A    Fifteen, 16, 29, 30 and 31.

**APEX Reporting**
(617) 426-3077

12

1      Q    And do any of your children live with you?

2      A    Yes.

3      Q    Which children live with you?

4      A    My daughter Paige who is 16.

5      Q    And do you live with anyone else other than your

6  daughter Paige?

7      A    No.

8      Q    And what's your current address?

9      A    61 Rest Way, Springfield, Mass.

10     Q    And how -- could you spell that street?

11     A    R-e-s-t, W-a-y.

12     Q    I want to turn to your EEO complaints and I'd like

13  to begin with the complaint concerning being appointed or

14  applying for a supervisory position.  Before I pull the

15  complaint out, let me just back up a little bit.  At some

16  point -- when did you first start working for the Post

17  Office?

18     A    1978.

19     Q    And at some point you left the Post Office and

20  then returned to the Post Office; is that right?

21     A    Yes.

22     Q    When was it that you left the Post Office?

23     A    I left the Post Office in 1996 for about eight

24  months till 1997.  I believe it was December 1996 to August

25  of 1997.

13

1      Q    And why did you leave the Post Office in December

2  of '96?

3      A    I had a -- I had a difference with my acting

4  postmaster.

5      Q    A difference.  Were you fired?

6      A    No.  No.  I resigned.

7      Q    Who was your acting supervisor who you had the

8  difference with?

9      A    Kathy Clark.  Kathleen Clark.

10      Q    Is that the same Kathleen Clarke who was the

11  Administrative Judge on your EEO complaints?

12      A    No.

13      Q    Thank goodness.  All right.  So, what were you

14  doing -- what was your job at the time right before you

15  left?

16      A    I was a supervisor.  I was a full fledged

17  supervisor, a Level 16.

18      Q    A supervisor where?

19      A    At the Springfield -- I'm sorry.  Chicopee main --

20  main office, Chicopee main office.

21      Q    The main office of the BMC or the Post Office?

22      A    No, the Chicopee -- the Chicopee Post Office.

23  There's two offices.  There's a, what they call center

24  office, which is a smaller one, which I was still in charge

25  of, and there was the main office on Main Street.

22

1    of the -- they have some condos up off Forest Park there.

2         Q    In Springfield?

3         A    Yeah.  There's a condo complex.  I'm trying to

4    think of the name.

5         Q    On Longhill Street?

6         A    Oh, no, way up.  It's almost close to the

7    East Longmeadow line.

8         Q    Okay.  So, you left the Post -- you resigned.

9         A    Right.

10        Q    You began working with this friend with the

11   restaurant, and what happened next in terms of your

12   employment?

13        A    Then I came -- I stopped with that.  I drove truck

14   for a little while for -- for a guy named Finkldey, that was

15   the name of his refuse, and then I came back to the Post

16   Office.

17        Q    And when did you come back to the Post Office?

18        A    I came back to the Post Office in August of '97.

19        Q    And what made you decide to come back to the Post

20   Office?

21        A    I didn't have any money, didn't have anything, so,

22   my ex -- well, my ex-girlfriend, she told me, why don't you

23   just call the Post Office up.  So, I said, I'll call them

24   up, and I talked to Bob Koestner, he was happy to hear from

25   me, and he asked me what I wanted to do.  I said, where do

23

1    you need me?  He says, I need a good supervisor, why don't

2    you come back.  So, I said okay.

3         Q    And so, what capacity did you come back in?

4         A    I came back as a clerk because they said that they

5    were hiring from the outside and he didn't have the

6    authority to make me a supervisor.

7         Q    And a clerk where?

8         A    At the BMC.

9         Q    In Springfield?

10        A    Springfield BMC, yeah.

11        Q    And who was your supervisor?

12        A    When I went back there it was -- when I first went

13   back, oh, I'm just fatigued.  It will come to me.

14        Q    And ---

15        A    Al Hearn was the MDO and Mark Sales.

16        Q    What tour were you working?

17        A    I was working on Tour 3.

18        Q    So, this -- we're in August of '97, you're a clerk

19   at the BMC Tour 3 and you continue in that job until when?

20   Until 2001 when you became the bundle sorter?

21        A    Actually in -- when I first went back in '97 I was

22   a clerk.  They started to ask -- when they started asking me

23   to act around '98, and -- because I wanted to get out of

24   weekends.  They wouldn't give me weekends off.  And then

25   they said, well, act for us.  Al Hearn said, act for me,

26

1    dispute about another -- she was a female mail handler.  She

2    ended up getting a supervisory position without taking the

3    ASP program, that's what started the EEO complaints that

4    I -- I had.  They're telling me that -- Koestner said

5    anybody in the 010-011 zip code had to take the program, and

6    she didn't have to take the program.  She went to

7    Springfield, Vermont, and became a customer service

8    supervisor.

9         Q    Did you have a personal dispute with her?

10        A    No.  Never even knew her.

11        Q    Okay.  So, let me -- we're going to get to that,

12   that's your EEO complaint, which I'll show you in a moment.

13   But just in terms of what you were doing, in 1999 -- 1998

14   until sometime in 1999 you were the acting supervisor in the

15   Far East.

16        A    Far East.

17        Q    Something caused you to go back to being a clerk.

18   What caused you to go back to being a clerk in 1999?

19        A    What caused me to go back as a clerk is Mark Sales

20   and Al Hearn started getting rid of all the other

21   supervisors or acting supervisors, and slowly but surely I

22   was running the whole building, you know, I mean, which you

23   end up with like 80 mail handlers and 24 clerks, and that on

24   the overtime they'd call people on days off.  I was running

25   four or five areas, the docks, Sanvik sorter, the connector,

27

1    the bundle sorters, and that was it.  And I said, hey,

2    you've got to get me help, I just -- I just got fatigued.  I

3    said look, you ain't going to get me help, I can't keep

4    doing this.  So, finally I -- I just stepped down because it

5    was just too much.

6        Q    And when did you -- and how did you go about

7    stepping down?  Who did you see to in order to do that?

8        A    Al Hearn, I told him, I said I got to -- I can't

9    do this any more.

10       Q    And did he get somebody to take your place?

11       A    They had an ASP program going on at the time.

12   They weren't -- they weren't graduated.  It was a 12-week

13   program and nobody had graduated yet but they were coming on

14   the workroom floor and they wanted me to train these guys.

15       Q    Let me back up a little bit.

16       A    Okay.

17       Q    You tell Mr. Hearn that you can't work as a

18   supervisor any more in the Far East because the job is too

19   much for you.

20       A    Because -- right, they didn't give me any help,

21   you know, any staffing.

22       Q    So, then, what did you get assigned to do?

23       A    I went back to my bid job on the bundle sorter.

24       Q    And was that -- did you then go down from being a

25   16 to a five?

28

1    A    Right.

2    Q    How much difference in pay was that?

3    A    Well, because I'm at my top step five, top step

4  five is 48, bottom step 16 is, I think, 42 now.  I'm trying

5  to remember how it works.  It's like -- it's not much

6  difference.

7    Q    There's not much difference between a five and 16?

8    A    As an actor, as an acting supervisor, okay,

9  because you get the lowest rate of a supervisor's pay.  If I

10  was a regular supervisor I'd be at -- I'd be at

11  sixty-four-five.  That would be -- Level 17 right now gets

12  64,500.

13    Q    Okay.  So, when you went down to being a clerk

14  that really didn't change your pay very much.

15    A    It changed my -- yeah, it didn't change my pay as

16  much, but as a supervisor I was more prone to get overtime.

17    Q    Okay.  And I was asking you, who took over

18  supervising the Far East when you stepped down to being the

19  bundle sorter?

20    A    I believe Al Hearn came over a few nights and

21  tried running it, and then the ASP, the associate

22  supervisors program, those people started to graduate and

23  they started to filter them in.

24    Q    Do you recall who the first person was who

25  filtered into that job?

29

1     A     Frank Landry.

2     Q     Frank Landry?

3     A     Yeah.  There's a lot of them.  Trying to think who

4  the other ones were.  One of them just passed away last

5  year.  Frank was the one that was ---

6     Q     Was he the one immediate after -- immediately

7  after you?

8     A     Yeah.  Yeah.  He came over with about eight other

9  guys and they wanted me to train them.  I says, hey, I'm

10 stepping down, I'm, you know, they're going to have to train

11 them.

12    Q     You had indicated that when you were working in

13 the Far East there were a number of other supervisors

14 working with you who they got rid of.

15    A     Right.

16    Q     Were these people acting supervisors as well?

17    A     Yes.

18    Q     Can you give me some of their names?

19    A     At the time, Donna Chatterton, okay, she used to

20 be Al Hearn's wife, now she's remarried, but she used to be

21 Donna Hearn.  She was there.  Kathy, I can't think of her

22 last name, she still works over there on days in the Far

23 East.  And there was me, Donna, Kathy, I believe -- I

24 believe that was it.

25    Q     And were they all acting supervisors?

**APEX Reporting**
(617) 426-3077

30

| | |
|---|---|
| 1 | A    They were all -- they were all --- |
| 2 | Q    Frank, Donna and Kathy? |
| 3 | A    Yeah, they're all actors.  Actors.  Oh, and Donna |
| 4 | -- Donna Hearn or Donna Chatterton's daughter.  Her name |
| 5 | escapes me.  It's -- they're all -- there was four of us, |
| 6 | three women and myself. |
| 7 | Q    You all worked the same tour? |
| 8 | A    Yeah.  Yes.  You all had one area, all had -- one |
| 9 | had the bundle sorter, one had the connector, and one had |
| 10 | the Sanvik sorter. |
| 11 | Q    And they were reassigned during the time you were |
| 12 | working there --- |
| 13 | A    Yeah. |
| 14 | Q    --- to different positions. |
| 15 | A    Well, Mark Sales made it -- made it miserable for |
| 16 | them, so, one of them just start back to form and bid a day |
| 17 | job, and one of them just stepped down, said, I'm not doing |
| 18 | it any more, and then she finally resigned from the Post |
| 19 | Office, and Donna -- actually I believe Donna quit.  She |
| 20 | quit the Post Office and she came back and went over to the |
| 21 | Chicopee Annex.  That's where she's working -- working now. |
| 22 | Q    What about Frank?  What happened to him? |
| 23 | A    Frank Landry stayed there.  He was an ASP.  He |
| 24 | stayed there. |
| 25 | Q    He became -- he went into a training program? |

**APEX Reporting**
(617) 426-3077

31

1    A    Yeah, he went into that ---

2    Q    ASP program?

3    A    Yeah, he went into that associate supervisor

4    program, became a supervisor, and stayed over the Far East.

5    Q    I'm going to show you what we'll mark as

6    Exhibit 1.

7         THE COURT REPORTER:  Which case number?

8         MS. GOODWIN:  This -- I think what I'd like to do

9    is just -- is just have this deposition, if it's okay with

10   you, jointly captioned for both cases.

11        MR. PIKULA:  Yes, I agree.

12        MS. GOODWIN:  And then the -- everything will

13   apply to both cases.  Might make your life easier, too.

14                        (Complaint marked Poehler

15                        Deposition Exhibit No. 1.)

16   Q    (by Ms. Goodwin)  Showing you Exhibit 1, is that

17   the complaint that you filed relating to this issue of the

18   ASP program?

19   A    Yes.  Yup.  Yes.

20   Q    Now -- I'm sorry, I should have made a copy of it;

21   I'll have to look over your shoulder.  You found out

22   sometime in March that somebody named Suzanne Bowes was

23   promoted to be a supervisor without having -- without going

24   through the ASP program and you were told by Mr. Koestner

25   that you could not become a supervisor without going to the

*APEX Reporting*
(617) 426-3077

1    ASP program.  Is that the basis of your complaint?

2        A    Well, he actually said anybody in the 010-011 zip

3    code had to take the program.  That was his exact words.

4        Q    And when did you have this conversation with

5    Mr. Koestner?

6        A    I don't remember the day, but I had it in his

7    office.  Right after ---

8        Q    If you don't remember the day can you tell me the

9    year?

10        A    '99.

11        Q    So, sometime in 1999 you had a conversation with

12    Mr. Koestner about becoming ---

13        A    Oh, I'm sorry.  I apologize.  I believe that was

14    when I first came back in '97.

15        Q    So, 1997 you had a conversation with Mr. Koestner

16    about becoming a supervisor and he said you had to go

17    through this program because you were in a certain zip code;

18    is that correct

19        A    Yes.

20        Q    And did you apply to go to this program?

21        A    Yes.

22        Q    And what happened with that?

23        A    I told him I was going to apply for it and he told

24    me that they were hiring from the outside first.  He said,

25    we're going to hire from the outside postal people first,

*APEX Reporting*
(617) 426-3077

1    then postal, we're going to go back and forth.  So, I says I

2    don't understand, why don't -- I've been a supervisor for

3    almost 12 years for you, I think I qualify before people on

4    the outside qualify.

5        Q    Who makes the decision about whether -- who do you

6    have to apply to to go to this ASP program?

7        A    It comes out in an order book and you just apply,

8    it was applied for, and that's what -- I finally applied for

9    after they went from the outside, the first batch of

10   supervisors that come out of there were from the outside the

11   Post Office.

12       Q    When did you apply to the program?

13       A    I applied the very next time they had it.

14       Q    What year was that?

15       A    I think it was in '98, my recollection.

16       Q    And were you admitted to the program?

17       A    I was admitted to the -- no, I was not admitted to

18   the program.  I took the test.

19       Q    How does it work?

20       A    You've got to take a test, it's like a three- or

21   four-hour test, and they told me I failed the test, and that

22   was -- that was the extent of it.  Everybody else got a

23   chance to do it again and, well, were called in the office,

24   and I got to be discouraged and I was the only one who

25   wasn't called in the office, I didn't understand why I

34

1    wasn't called in, so, I ---

2        Q    Who called people into the office?

3        A    All the MDOs.  Lee Kopecz at the time was -- was a

4    tour sup. over at the BMC, you know, he called people in the

5    office.  Mark Sales on his tour, Tour 1 which I work for, he

6    called people in the office and people on Tour 2.

7        Q    These are people who had failed the test?

8        A    These are people who had failed the test on their

9    -- on their tour that they worked and wanted to apply for

10   the ASP.  When they failed it they were asked not to be

11   discouraged, to take it again, you know, if they needed

12   help, you know, they were going to try to help them.

13       Q    And who are some of these individuals?

14       A    Let's see.  The last name is Mio, first name is

15   Fran, Fran Dimio, D-i-m-i-o, or something like that.

16   Fran Dimio was one of them.  I'm trying to think who some

17   other people were.  I didn't really know a lot of people

18   when I came back 'cause ---

19       Q    How did you find out that these individuals had

20   been asked to -- told that they could take the test again or

21   study for it to take it again?

22       A    I was told by -- by people in my area, I believe

23   Franny told me that they called her in the office at the

24   time and she said they asked me to do it again, I don't know

25   if I want to do it again, she said, but she ended up taking

**APEX Reporting**
(617) 426-3077

1    it again and I believe she passed it the second time.

2    Wayne Hearn's son, he's the MDO, he was the MDO on Tour 1, I

3    believe, at some point, he's retired now -- his son took it

4    about eight times, seven or eight times, I heard.

5        Q    Did you seek to take it again?

6        A    I -- I didn't see it in the book the second time.

7        Q    Did you ask anybody about taking the test again?

8        A    Yeah.  Yes, I did.

9        Q    Who did you talk to about taking the test again?

10       A    I asked Jim Albano and Lee Kopecz when they were

11   going to come out with the next one and they weren't sure,

12   you know, there was a, well, we don't know when they're

13   going to come out with the next one, it just comes out

14   random, I guess.

15       Q    Did they make announcements when the test comes

16   out?

17       A    Actually, Paul DeRose, who took the exam, took the

18   ASP, he told me he got an E-mail to take it.  He said, a few

19   of us got E-mails.  I said, E-mails, it should be in a book,

20   and it wasn't posted in a book, they got E-mails.

21       Q    What's the book that you're talking about?

22       A    The book is the order book that everything, the

23   announcements come out, who's retired, who passed away, just

24   how they schedule.

25       Q    Were there any -- after you had taken the test and

36

1   failed it, were there -- did you learn at any time that they

2   were offering the test again?

3        A    No, not right away.

4        Q    Did you learn at any time that they were offering

5   the test again, even if it wasn't right away?

6        A    To my recollection, no.

7        Q    So, you never learned about the ASP test being

8   taken again -- being offered again?

9        A    No.

10       Q    Although somebody told you that they had gotten an

11  E-mail?

12       A    Yes.   Paul DeRose.

13       Q    And did ---

14       A    That was just recently, I think, last year.

15       Q    And after he got the E-mail, after you heard about

16  that, did you ask anybody about taking -- about where you

17  could take the test?

18       A    No.

19       Q    Would it be fair to say that after failing the

20  test you have not actively sought to take the test, you have

21  not -- let me withdraw that question.   After you failed the

22  test you had a conversation with Jim Albano or Lee Kopecz at

23  some time afterwards asking about when they were going to

24  offer the test again and they were unsure, correct?

25       A    Correct.

*APEX Reporting*
(617) 426-3077

1    Q    Other than that conversation with Mr. Albano and

2    Mr. Kopecz, have you made any efforts to find out when the

3    test is going to be offered and whether you can take it?

4         MR. PIKULA:  Objection.  You can answer.

5         MS. GOODWIN:  What's the basis of the objection?

6         MR. PIKULA:  Form.

7         MS. GOODWIN:  What's the problem with the form?

8    I'll fix it.

9         MR. PIKULA:  I think it's, you know, have you made

10   any effort?  I think it's overly broad.

11   Q    (by Ms. Goodwin)  Other than talking to Jim Albano

12   and Lee Kopecz sometime after you failed the test about when

13   the test was going to be offered again did you make any

14   other inquiries of anybody else as to when the test was

15   going to be offered again?

16   A    No, because they were my MDOs, those are my

17   immediate supervisors that I went to.  They should be

18   knowledgeable what tests are being given.

19   Q    And how many times did you talk to Mr. Kopecz

20   about when the test was going to be offered again?

21   A    Oh, it was a few times.  I couldn't tell you the

22   number offhand.

23   Q    Can you give me an estimate?  More than ten?

24   A    No.

25   Q    More than five?

*APEX Reporting*
(617) 426-3077

38

1       A     Yes.

2       Q     Somewhere between five and ten?

3       A     Yes.  Because he started asking me to act for him

4    and I said, well, maybe I should just take the -- try to

5    take the test again, and it wasn't available when I was

6    still at the BMC East.

7       Q     The test was not available.

8       A     No.

9       Q     Was it available to anybody?

10      A     No.  The last time I heard about the test was

11   Paul DeRose told me he got an E-mail.  I said, well, now

12   everybody's getting E-mails for this test or certain people?

13   Paul DeRose's father was retired, was the bulk mail manager

14   at one time.

15      Q     After you found out that Paul DeRose had gotten an

16   E-mail telling him about this test did you make any efforts

17   to find out about how you could take the test?

18      A     I assumed it was a selected few.  He said a few --

19   a few other people got E-mails.

20      Q     And other than talking to Paul DeRose about it,

21   did you talk to any supervisors about the test?

22      A     Yes, I talked to ---

23            MR. PIKULA:  Let her answer.

24      Q     (by Ms. Goodwin)  And I'm talking -- this was last

25   year, correct?

*APEX Reporting*
(617) 426-3077

1  A Yes.

2  Q So, Paul DeRose indicates he gets an E-mail about

3 the test.  Who else did you talk to other than Paul DeRose

4 about the test last year?

5  A Jim Albano.

6  Q And what did Mr. Albano say to you?

7  A He said he wasn't sure what they were doing, and I

8 said, well, if you find out, let me know.  He said okay.

9 That's as far as I believe it went.

10  Q And did Mr. DeRose take the test, to your

11 knowledge?

12  A Yes, he did.

13  Q And so, after -- you spoke to Mr. Albano and then

14 you -- did you do anything else to find out about whether

15 you could take the test?

16  A No.  I asked him to look into it for me.  I was

17 waiting for a reply from my MDO is what I was doing.

18  Q And MDO being who?

19  A Jim Albano.

20  Q Okay.  So, going back to Exhibit 1 -- let me just

21 preface -- let me withdraw that question.

22  So, sometime in 1998 you took the test and you

23 failed the test for the ASP, correct?

24  A Yes.

25  Q And did anything else happen relating to trying to

**APEX Reporting**
(617) 426-3077

42

1    the head of the ASP program at that time.  And she told me

2    the reason she got promoted is because she was working

3    outside a 50-mile radius of her home.  That was the answer I

4    got.

5        Q    And ---

6        A    And I said, well, the further you go from home the

7    higher you get?  You know.  I -- and I said, well, and I

8    asked her who -- also who corrects the ASP programs, is it

9    postal, is it private companies or what, and she says that

10   knowledge is classified.

11       Q    Who corrects the test, is -- that was your

12   question?

13       A    Right.

14       Q    So, other than having this conversation with

15   Bonnie Wilkinson ---

16       A    That's when I filed my EEOs.

17       Q    Then you filed your EEO complaint.

18       A    Yes.

19       Q    And what's the basis of this EEO complaint?  An

20   EEO -- let me withdraw that.  An EEO complaint alleges

21   discrimination, correct?

22       A    Yes.

23       Q    What's the basis of your claim that you were

24   discriminated against?

25       A    Section H.  She was a female, a lot younger than

1       A    No, she wasn't.  I don't -- like I said, there's

2    nine.  I don't know if they're all male.

3       Q    Other than the fact that Sue Bowes is a young --

4    younger woman, is there anything about her situation that

5    leads you to believe that she got what -- she got that

6    position because of her age and sex?

7             MR. PIKULA:  Objection to form.

8       Q    (by Ms. Goodwin)  You can answer it if you're able

9    to.

10       A    See, I know she got it from talking to somebody in

11    the office and they directed her to, you know, to call that

12    Postmaster and had a meeting and she ended up with the job.

13       Q    Who did she work for?

14       A    She worked for, at the time, Jim Barton.  I was

15    over at the Far East.  She was over at the BMC and she

16    worked for Jim Barton at the time.

17       Q    So, the person who you think took -- discriminated

18    against you in this complaint which is Exhibit 1 was

19    Mr. Koestner?

20       A    Bob Koestner, yes.

21       Q    And was it Bob Koestner who was responsible for

22    Suzanne Bowes getting that job in Springfield, Vermont?

23       A    I couldn't honestly tell you that, unless he made

24    a phone call.

25       Q    So, you don't have any evidence to believe that

1    Bob Koestner picked Suzanne Bowes to get that job in

2    Springfield, Vermont?

3         A    No, that would be the Postmaster in Springfield,

4    Vermont.

5         Q    And what's the basis of your belief that

6    Mr. Koestner didn't give you an opportunity to become a

7    supervisor without going through the ASP program because you

8    were an older male?

9         A    Well, he -- that's -- he did, when I first came

10   back, he said, I need a good supervisor, come back, I'll

11   make you a boss.  That's -- I was under the impression I was

12   going to go back as a boss, and then I was told, not him, by

13   somebody else first, that he doesn't have that authority.

14   Then after I met with Mr. Koestner he said, aw, you gotta

15   take the ASP program.

16        Q    What was your relationship with Mr. Koestner?

17        A    At the time, very good.  He was my immediate

18   supervisor years ago back in the '70s, and he became my tour

19   superintendent, and then he became my bulk mail manager, and

20   then when I went to Chicopee when I got -- in '92 when they

21   had the RIF, we were cutting back, he was my Postmaster.

22        Q    So, he's been good to you.

23             MR. PIKULA:  Objection.

24        Q    (by Ms. Goodwin)  Is it your perception that he's

25   treated you well?

*APEX Reporting*
(617) 426-3077

50

1    A    Back in those -- in the past, yes.

2    Q    And what about moving more currently?

3    A    That I don't know.

4    Q    And how has he treated -- how has Mr. Koestner

5 treated you badly?

6    A    Well, he made mention when I saw him one time

7 about, and talking about the ASP program, he made mention,

8 he says, I -- I'm not going to tell you anything because the

9 last time I talked to you I found myself in court, so, and I

10 said, I remember being there, Bob.  That was the last

11 conversation I had with him.

12    Q    What's the basis for your belief that Mr. Koestner

13 has discriminated against you based on your sex and your

14 age?

15    A    There was another ASP, his name was -- I believe

16 his name was Bill Crawley, he come out of the ASP program,

17 didn't like working for the Bulk Mail Center, was

18 transferred over to West Springfield, didn't like

19 West Springfield branch, quit, was gone for a total of 18

20 months, job he was at, private, fell through, and he called

21 up Bob Koestner.  Bob Koestner brought him back to

22 West Springfield as a supervisor with no repercussions.

23    Q    And this individual is a male?

24    A    And this individual is a male.  I believe he's

25 younger.

1

Vol II
1 - 63

IN THE UNITED STATES DISTRICT COURT

FOR THE

DISTRICT OF MASSACHUSETTS

DAVID F. POEHLER,                )
      Plaintiff,            ) DOCKET NO.
-v-                              ) 04CV30254-MAP
                                 ) 04CV30192-MAP
UNITED STATES Postal Service,    )
      Defendant.            )

        THE ORAL DEPOSITION OF DAVID F. POEHLER, held

pursuant to Notice, and the applicable provisions of the

Federal Rules of Civil Procedure, before Jody Perkins,

a Court Reporter and Notary Public, within and for the

Commonwealth of Massachusetts, at the offices of the

United States Attorney, 1550 Main Street,

Springfield, Massachusetts, on Friday, January 20, 2006,

commencing at 10:15 a.m.

ORIGINAL

*APEX Reporting*
(617) 426-3077

15

```
 1   A   Four, I believe, yes.
 2   Q   And how are you able to date it as being March; what
 3       makes you say that you learned about it in March?
 4   A   Because when I got the paperwork from Neal's office,
 5       okay, I looked at it.  I went back to my EEO rep, and
 6       he says it's over the time limit.
 7   Q   What--
 8   A   It should have been done within 90 days of the appeal.
 9   Q   What paperwork did you get from Neal's office; did you
10       get a copy of that--
11   A   Yes--
12   Q   --decision?
13   A   Yes.  I got a copy of that decision which I couldn't
14       get on my own.  That's why I went to Neal's office.
15   Q   And did Richard Neal's office give that to you along
16       with a letter; did they send that decision to you with
17       a cover letter?
18   A   Yes.
19   Q   And maybe if we take a break, would that cover letter
20       be in this package of, of materials that you produced
21       to your lawyer?
22   A   I, I have no idea.
23   Q   Okay.  Picking up with the lawsuit that is marked as
24       Exhibit 4, in your--
25            MR. PIKULA:  May I have just the--
```

**APEX Reporting**
(617) 426-3077

| 1 | Q | The EEO complaint that you filed that we talked about a |
| 2 | | little earlier with respect to the supervisor position, |
| 3 | | that wasn't against Mr. Hearn; was it? |
| 4 | A | Excuse me.  Could you repeat that? |
| 5 | Q | The EEO complaint you filed that is marked as |
| 6 | | Exhibit 1, which related to the Susan Bowes situation, |
| 7 | | who was the discriminating official in that complaint? |
| 8 | A | That was Robert Koestner I had filed. |
| 9 | Q | So none of these four individuals that we're talking |
| 10 | | about were named in that EEO complaint; were they? |
| 11 | A | No. |
| 12 | Q | And as you sit here today, can you think of any EEO |
| 13 | | complaint you had filed against Mr. Hearn before March |
| 14 | | of 2001? |
| 15 | A | No. |
| 16 | Q | And you said that you also thought that this notice of |
| 17 | | proposed removal was based on discrimination because of |
| 18 | | your mental disability.  What makes you believe that; |
| 19 | | why do you believe that? |
| 20 | A | I got passed over for -- when I went back in '97-- |
| 21 | Q | Let's, we're, let's stick with this March 15, 2001, |
| 22 | | notice of removal.  What makes you believe that the |
| 23 | | notice of removal was based on any type of disability |
| 24 | | that you suffered? |
| 25 | A | Because I wasn't at work.  I was out on disability for |

```
 1          my condition, so they were, they figured it's probably
 2          easier just to remove me.  That's why I feel, I feel
 3          that because of my disability, I was being removed.
 4    Q     Did anybody say anything to you that made you believe
 5          that it was because of your disability?
 6    A     No.  Everything was done by paperwork.
 7    Q     Was there any paperwork that you received or that you
 8          had, any paperwork that you received that leads you to
 9          believe that this notice of proposed removal was based
10          on your disability?
11                MR. PIKULA:  Objection to form.
12    A     No.
13    Q     Now, you filed a grievance about the notice of removal;
14          is that right?
15    A     Yes.
16    Q     And as a result of the grievance, it was reduced to a
17          seven day suspension?
18    A     Yes, and that was also reduced.
19    Q     And the seven day suspension was held in abeyance based
20          on, as long as you didn't, as long as you weren't
21          absent for more than three days in a 90 day period;
22          does that--
23    A     Yes--
24    Q     --sound right?  So you didn't lose any pay as a result
25          of this notice of removal; is that fair to say?
```

| 1 | A | No. |
|---|---|---|
| 2 | Q | And did you lose any pay as a result of the suspension |
| 3 | | that was held in abeyance? |
| 4 | A | No. |
| 5 | Q | If we go back to Exhibit No. 8, and if you turn to |
| 6 | | Page 4 of it, it's what's listed as your second |
| 7 | | complaint being the July 18th suspension; do you see |
| 8 | | that? |
| 9 | A | July 18th? |
| 10 | Q | Right, July 18, 2001, suspension, seven day suspension; |
| 11 | | correct? |
| 12 | A | (No verbal response.) |
| 13 | Q | That's the second complaint that's addressed in this |
| 14 | | 34-01 complaint; is that right? |
| 15 | A | Yes. |
| 16 | Q | And this was the suspension, it was, it was invoked |
| 17 | | because you had had a previous agreement that, if you |
| 18 | | didn't miss more than three days, that you wouldn't |
| 19 | | have any suspension, you had agreed to that; is that |
| 20 | | correct? |
| 21 | A | Yes. |
| 22 | Q | And then the, you, in fact, you did miss more than |
| 23 | | three days? |
| 24 | A | Yes. |
| 25 | Q | And so based on the agreement, this suspension was then |

*APEX Reporting*
(617) 426-3077

28

```
 1          invoked; is that how it went?
 2   A      Yes.
 3   Q      What's, do you believe that there was anything
 4          discriminatory about invoking this 07/18/01 suspension?
 5   A      No.
 6              (Pause.)
 7              I went on -- beyond the three days of the
 8          agreement, part and whole, or the 90 days, that's my
 9          disability.  I, I, you know, I had problems standing
10          at, sitting at work over eight hours or up to eight
11          hours.
12   Q      Was there anything discriminatory about the Postal
13          Service invoking this seven day suspension because you
14          had, essentially, because you had missed more than
15          three days in three months; was there anything
16          discriminatory about that action?
17              MR. PIKULA:  Objection to form.
18              MS. GOODWIN:  What's the problem with the form?
19              MR. PIKULA:  I think you seem to be asking about
20          all of his subjective beliefs, and I, I don't even know
21          if that's admissible.
22              MS. GOODWIN:  Well, I guess--
23              MR. PIKULA:  I mean, there are certainly
24          inferences that can be drawn from this, but I don't
25          know that, whether--
```

**APEX Reporting**
(617) 426-3077

|    |   |                                                                      |
|----|---|----------------------------------------------------------------------|
| 1  |   | MS. GOODWIN:  Okay.  Well--                                           |
| 2  |   | MR. PIKULA:  You know, but maybe in a different                      |
| 3  |   | form you could ask it.  I don't know, but you're                     |
| 4  |   | certainly entitled to explore.  I'm not trying to say                |
| 5  |   | that you--                                                           |
| 6  |   | MS. GOODWIN:  But I just wanted to know what the                     |
| 7  |   | matter with the question is.  I think I'm going to                   |
| 8  |   | stick with the question--                                            |
| 9  |   | MR. PIKULA:  Yes, no, sure--                                         |
| 10 |   | BY MS. GOODWIN:                                                       |
| 11 | Q | What is, what, do you believe that this 07/18/01                     |
| 12 |   | suspension was motivated by any discrimination on the                |
| 13 |   | part of the Postal Service?                                          |
| 14 | A | That's, that's, for me, it's hard to answer directly                 |
| 15 |   | because -- and the reason for that is, is because I                  |
| 16 |   | know these people.  It's, I have to say I can't prove                |
| 17 |   | that.                                                                |
| 18 | Q | Do you have any evidence that you can point to?                      |
| 19 | A | No.                                                                  |
| 20 | Q | Turning to the next one, Item 3, August 30, 2001, you,               |
| 21 |   | you're complaining here, if I'm understanding it                     |
| 22 |   | correctly, about a comment Mr. Hearn made--                          |
| 23 | A | Yes--                                                                |
| 24 | Q | --to you?  And is there anything more to the comment                 |
| 25 |   | other than what's reflected here in Exhibit 8?                       |

30

1    A    Yes.

2    Q    What else was not, what's not in Exhibit 8 that

3         concerns this comment?

4    A    He had, he had, after he had said to me, thanks a lot

5         for filing an EEO against me, I said, look, I'm just

6         exercising my rights, he said, well, you make me look

7         bad in front of my superiors.

8    Q    And--

9    A    You know, and I said, well, that's not my problem, I

10        mean, if you want to go by the rules, you know.

11   Q    And anything, anything else in terms of that

12        conversation?

13   A    Oh, I, I just felt that, you know, it wasn't over with

14        him anyway, you know.

15   Q    Did you get along with Mr. Hearn?

16   A    Yes.  In fact, he's, he was married to my cousin.

17   Q    And at this, at this time, did you get along with

18        Mr. Hearn; in this time frame in the summer of 2001,

19        would you consider him somebody who you got along with?

20   A    Yeah.  I worked for him.

21   Q    And did you continue to work for him after August 30th

22        of 2001?

23   A    No.  In fact, I asked him if he needed any, any, any

24        supervisors, and he had told me, no, he's all set, and

25        then I responded with, well, it's not for me, it's

```
 1         somebody wants to know if they could be an actor, and
 2         his response was, oh, yeah, just have them fill out a
 3         buck slip and come on, come on right in.
 4              So I had to take it that I wasn't going to be an
 5         actor for him anymore, but somebody else could be.
 6    Q    Who, who were you working, who was your supervisor
 7         around August 30, 2001?
 8    A    Had to be, I believe it was Al Hearn.
 9    Q    And when did, when did he stop being your supervisor?
10    A    He stopped being my supervisor about two, two or three
11         years ago when I lost my bid job, and I went over to
12         the Far East where I was under MDO Lee Kopacz.
13    Q    So for the rest of 2001, he was your supervisor?
14    A    Yes.
15    Q    And was he, did he continue to be your supervisor in
16         2002?
17    A    Yes, I believe so.
18    Q    And did you, aside from this issue of him not making
19         you an acting supervisor, did you get along with him in
20         the workplace?
21    A    I, I just didn't have any contact with him.
22    Q    So although he was your supervisor, you didn't have any
23         contact with him?
24    A    I, I was on the other side.  I went on the other side
25         of the building under -- my psychiatrist wrote a
```

*APEX Reporting*
(617) 426-3077

32

| | | |
|---|---|---|
| 1 | | statement stating I should be out of that work |
| 2 | | environment or excluded from, from him and Mark Sales, |
| 3 | | so they put me on the other side of the building. |
| 4 | Q | And when did that occur? |
| 5 | A | Around 2002, 2003, somewhere around there. |
| 6 | Q | Before you moved, you were working under Al Hearn? |
| 7 | A | Yes. |
| 8 | Q | Going to the next page, which is Item 4, you indicate |
| 9 | | that you're complaining about your denial of overtime |
| 10 | | and holiday work pay on Labor Day weekend 2001; do you |
| 11 | | see that? |
| 12 | A | Yes. |
| 13 | Q | Is it fair to say that you, initially, did not want to |
| 14 | | work on the Labor Day weekend? |
| 15 | A | Yes. |
| 16 | Q | That you had plans? |
| 17 | A | Yes. |
| 18 | Q | And is it also fair to say that you did, you were not |
| 19 | | required to work on the Labor Day weekend? |
| 20 | A | Yes. |
| 21 | Q | So what's the problem? |
| 22 | A | The problem was that I had asked Mr. Hearn if I could |
| 23 | | have that weekend off because I was going to go visit |
| 24 | | my son down in Carolina. |
| 25 | | He said, not a problem. |

*APEX Reporting*
(617) 426-3077

1      I said, well, I want to let you know so I don't

2      get scheduled and get disciplined for it.

3      He said, not, don't worry about it.\Then it came

4      in the order books showing that I was forced to work

5      the holiday, so I had asked him, Al, what about me not

6      working?

7      He says, don't come in.

8      I said, well, if I don't come in, I'll get

9      disciplined.

10      He said, well, that's how it works.

11      And then I said, well, I don't need any more

12      discipline, I'll be in.  And then I went in the

13      cafeteria, and I said, well, if I got to work my

14      holiday, I want to work my days off.

15      He says, you can't because it's already in the

16      order book, and you didn't, you didn't volunteer to

17      work your days off.  So at the last minute, that

18      Thursday night, I believe it was Thursday or Friday, I

19      got a call from the post office on my answering machine

20      saying I didn't have to show up for work, I didn't have

21      -- I wasn't forced on the holiday, so I didn't come in.

22      When I came in on that Monday, or the next day

23      that I did--

24  Q  Would that be Tues -- the holiday was on a Monday--

25  A  Monday.  Tuesday, when I did show up for work, I found

34

1     out that there were several other individuals that were

2     forced with me that also weren't forced, but they came

3     in anyway, and while they were at work, they were asked

4     to work their days off, and he had told me because I

5     didn't request it in the beginning, it's written in

6     stone I cannot come in, so I had filed an E -- I filed

7     a union grievance.

8  Q    But -- withdraw that.

9  A    I was treated different.  They allowed people to work.

10  Q    You, and you ended up not being required to work--

11  A    Right--

12  Q    --Labor Day weekend at all; correct?

13  A    Right.

14  Q    And that's what you, initially, had wanted?

15  A    Right.  But I also requested, if I had to work, that

16     I'd work my days off, and he told me I couldn't.

17  Q    If you turn three pages, four pages in, there's a

18     second, further on, there's a second affidavit which is

19     dated about a year later, which is also part of this

20     34-01 complaint, and it relates to a 14 day suspension;

21     do you see that?

22        (Pause while witness reviews document.)

23  A    I don't see where it says 14 day.

24  Q    Right here.

25  A    Oh, okay, I see it now, 14 days, yup.

35

| | | |
|---|---|---|
| 1 | Q | Do you recall that 14 day-- |
| 2 | A | Yes-- |
| 3 | Q | --suspension?  And what was the reason that you were |
| 4 | | given for that 14 day suspension? |
| 5 | A | Failure to be regular in attendance. |
| 6 | Q | And had you failed to be regular in attendance? |
| 7 | A | Yes. |
| 8 | Q | And what evidence do you have that this 14 day |
| 9 | | suspension was imposed in retaliation for you having |
| 10 | | filed earlier EEO complaints? |
| 11 | | (Pause.) |
| 12 | A | Because of the way I was treated.  My depression got |
| 13 | | worse.  I got, you know, I was on medication, and there |
| 14 | | were times that I just couldn't function at work. |
| 15 | Q | And, and what, what evidence do you have that the |
| 16 | | suspension was imposed in retaliation for you having |
| 17 | | filed EEO complaints in the past? |
| 18 | A | I can't honestly answer that. |
| 19 | Q | Why can't you answer that? |
| 20 | A | All I can say is because of my condition, they just |
| 21 | | kept riding me.  I took time off from work because I |
| 22 | | was depressed because of what I was going through to, |
| 23 | | to work, and then they just kept, one thing after |
| 24 | | another, you know.  It was, to me, it was like a |
| 25 | | nonstop bombardment on me. |

36

1          I felt they were retaliating, you know, trying to

2     get the best of me while I was in a weak state by being

3     out of work because of my condition.

4  Q   Do you have evidence of other individuals who had

5     similar absenteeism who did not receive any discipline?

6  A   Not at this moment.  I'm sure there is.

7  Q   But as you're sitting here today, you don't have that

8     evidence?

9          (Pause.)

10         Let me, let me withdraw the question and ask it in

11    a different way.  Let's mark this as exhibit, whatever

12    we're up to, No. 9.

13                        (The document referred to was

14                        marked for identification as

15                        Poehler Exhibit No. 9.)

16         BY MS. GOODWIN:

17  Q   I'm showing you what's Exhibit 9, which are your

18    responses to the government's request for production in

19    this particular lawsuit, which is 30254; do you see

20    that, do you recognize that as your responses to

21    production which were served along with a number of

22    different documents?

23         (Pause while witness reviews document.)

24  A   Yes.

25  Q   And you were asked in that request for production to

37

| | | |
|---|---|---|
| 1 | | produce the evidence that you had that supports your |
| 2 | | claim of discrimination; is that right, in Request |
| 3 | | No. 2? |
| 4 | A | Yes. |
| 5 | Q | And is it fair to say that the documents you produced |
| 6 | | were the documents that constitute the evidence that |
| 7 | | you have supporting your claim of discrimination? |
| 8 | A | Yes. |
| 9 | Q | Is there any other evidence that you're aware of that |
| 10 | | was not produced to the government in response to this |
| 11 | | request for production? |
| 12 | A | No.  I mean, there are other individuals that, that |
| 13 | | have taken off without medical documentation, whatever, |
| 14 | | and they're still working for the post office with no |
| 15 | | repercussions. |
| 16 | Q | And did you provide the government with evidence about |
| 17 | | those individuals? |
| 18 | A | No. |
| 19 | Q | Do you have evidence concerning those individuals at |
| 20 | | home? |
| 21 | A | No. |
| 22 | Q | Okay.  I want to shift gears -- just one moment. |
| 23 | | (Pause.) |
| 24 | | In, see if I can keep these straight, just going |
| 25 | | back, just for a minute, to-- |

38

1          COURT REPORTER:  Exhibit 6.

2          MS. GOODWIN:  The interrogatories?

3          COURT REPORTER:  Yes.

4          MS. GOODWIN:  I'm trying to find the actually

5     marked exhibit.

6          MR. PIKULA:  Oh.

7          MS. GOODWIN:  Do you have it?

8          MR. PIKULA:  I can't explain it.  I'm sorry.

9          BY MS. GOODWIN:

10    Q    Just going back to Exhibit 6 for a minute, when you're

11         asked in Question 1 what the basis of your claim of

12         discrimination is, if you go on to Page 2, you indicate

13         towards the bottom that this case is also an appeal

14         from a final decision dated November 1, 2004,

15         concerning a trans -- denial of a transfer to a

16         custodial position; do you see that?

17    A    Yes.

18    Q    Do you mention anything in your lawsuit about this

19         denial of the transfer to a custodial position?  I can

20         show you your lawsuit.

21         (Pause.)

22    A    If I remember, this was the third lawsuit or the

23         second.  I've filed two or three of them.

24    Q    Are you aware, do you have a lawsuit that references

25         the transfer to the custodial, the denial of the

| 1 |   | transfer? |
|---|---|---|
| 2 | A | I don't remember. |
| 3 | Q | What was discriminatory about the denial -- well, |
| 4 |   | withdraw that.  Who denied you the transfer to the |
| 5 |   | custodial position? |
| 6 | A | I believe his name is Wentzel.  I don't remember his |
| 7 |   | first name.  His last name is Wentzel. |
| 8 | Q | And had you ever filed an EEO complaint against him |
| 9 |   | prior to this? |
| 10 | A | No. |
| 11 | Q | And when you filed your EEO complaint about this, was |
| 12 |   | he the discriminating official who you named? |
| 13 | A | Yes, I believe so. |
| 14 | Q | And do you believe that his decision to deny you the |
| 15 |   | transfer was discriminatory? |
| 16 | A | Yes. |
| 17 | Q | And why do you believe it was discriminatory? |
| 18 | A | Because the letter he sent me denying me, the letter, |
| 19 |   | in general, stated that, I believe we have that, too, |
| 20 |   | about my past performance at the post office, you know. |
| 21 |   | They way it was generalized, it didn't, he didn't say I |
| 22 |   | didn't get the job because of my disability. |
| 23 |   | He didn't say I didn't get the job because of my |
| 24 |   | sick leave or anything like that.  It was general that, |
| 25 |   | you know, I didn't get the job.  It was general, and so |

40

```
 1        I filed on it, and -- I filed an EEO on, on his

 2        decision.

 3   Q    Do you think that he denied you the transfer to a

 4        custodial position because of your disability?

 5   A    Yes.

 6   Q    And why do you think that?

 7   A    Because I told him my dis -- I told him my disability.

 8   Q    And why do you think that that's what motivated him not

 9        to give you the job?

10   A    Well, because he told me part of the job entails

11        climbing ladders and carrying bags of salt and, you

12        know, running a lawn mower and driving a snow blower,

13        you know, stuff like that that might be too strenuous.

14   Q    And is that type of work, are you physically able to do

15        those, that type of physical labor?

16   A    No, but there's other, other work that I could do in

17        the custodial craft.  There are people in the custodial

18        craft on limited and light duty.

19   Q    Other than the fact that he described this work as

20        requiring certain type of strenuous manual labor, is

21        there any other basis for your belief that his decision

22        not to give you the job was motivated by

23        discrimination?

24   A    Yeah.  He, he had hired a, well, another employee that

25        was a clerk and is now, went into the custodial craft
```

*APEX Reporting*
(617) 426-3077

41

1    who was much younger than I am, probably in his

2    twenties, early thirties, and I feel that, you know,

3    coupled with my physical being, he just took a younger

4    person.

5  Q  So what type of discrimination is involved in this not

6     getting the transfer to the custodial position, in your

7     opinion?

8  A  In my opinion, I, like I said, he generalized.  He

9     didn't, he didn't give me a specific reason.

10 Q  But is it your belief that he was discriminating

11    against you based on age?

12 A  Age and, and ability.

13 Q  Age and what type of ability?

14 A  Because of my disability, ability not to climb ladders

15    or.

16 Q  And the evidence that you have that it was based on age

17    is, is the fact that a younger person got the job?

18 A  Yes.

19 Q  And who's this younger person who got the job?

20 A  I can't think of his name offhand.  I believe his, his

21    first name is Bob.  I can't think of his last.  He was

22    also, he's also a union steward or he was a union

23    steward.  I can get his name for you though.

24 Q  And, and with respect to this transfer to the custodial

25    job, are you claiming that it was, that it was, that

1    you didn't get the transfer because you were being

2    retaliated against for past EEO complaints?

3  A    Yes.  I felt that, that I didn't get it because of

4    that, past EEO complaints.

5  Q    Did this individual -- how do you spell his last name?

6    Wentzel?

7  A    Wentzel?

8  Q    Do you know?

9  A    W-E-N-T-Z-E-L, I think.

10 Q    And did Mr. Wentzel know that you had filed previous

11   EEO complaints?

12 A    No.

13 Q    Then what makes you believe he was retaliating against

14   you for filing EEO complaints?

15 A    The generalization of his letter that I received.

16        MS. GOODWIN:  I'm going to go now to the other

17   lawsuit, which is 192, and the complaint is marked as

18   Exhibit 5, and I'm going to mark as Exhibit 10 your

19   interrogatory responses, and I don't think I made an

20   extra copy.

21                    (The document referred to was

22                     marked for identification as

23                     Poehler Exhibit No. 10.)

24        BY MS. GOODWIN:

25 Q    Would it be accurate to say that your, the complaints

*APEX Reporting*
(617) 426-3077

43

| 1 | | that you're making in this case 192 are summarized in |
|---|---|---|
| 2 | | your response to Interrogatory 1, which is Exhibit 10? |
| 3 | | (Pause.) |
| 4 | | THE WITNESS:  I'm lost here. |
| 5 | | MS. GOODWIN:  Did I mess up? |
| 6 | | MR. PIKULA:  No. |
| 7 | | (Witness and attorney confer.) |
| 8 | A | All right.  Yup, I see it. |
| 9 | Q | Does Exhibit 10, your answer to No. 1 on Exhibit 10, |
| 10 | | these interrogatory responses, basically, summarizes |
| 11 | | what your complaints are in this particular lawsuit? |
| 12 | A | Yes. |
| 13 | Q | I want to kind of take them one by one, if we can.  The |
| 14 | | first one is what; what's the first thing you're |
| 15 | | complaining about in this lawsuit? |
| 16 | A | Well, based on my physical and emotional and |
| 17 | | retaliation for filing these complaints. |
| 18 | Q | Let me rephrase the question.  Is it, is it fair to say |
| 19 | | that the first thing or one of the things that you're |
| 20 | | complaining about in this lawsuit has to do with not |
| 21 | | being made whole after recision of a February 9, 2002, |
| 22 | | letter of removal? |
| 23 | A | Yes. |
| 24 | Q | So if I understand it correctly, there was, you were |
| 25 | | going to be removed from the post office, but they rec |

44

| 1 | | -- they took that back.  They rescinded it? |
| 2 | A | Right. |
| 3 | Q | And you feel that you were not made whole? |
| 4 | A | Right. |
| 5 | Q | How were you not made whole? |
| 6 | A | Well, the rescinded the letter, but it didn't mean that |
| 7 | | I was made whole by going back to square one, in other |
| 8 | | words, with no disciplinary action against me. |
| 9 | Q | So what was the, what was the effect; what was the |
| 10 | | adverse effect on you of this recision of the letter of |
| 11 | | removal? |
| 12 | A | That I wanted to be made whole so it wouldn't stay on |
| 13 | | my record. |
| 14 | Q | And what, what did it take to make you whole?  The |
| 15 | | letter was rescinded; correct? |
| 16 | A | Right. |
| 17 | Q | That means the letter was withdrawn; right? |
| 18 | A | The letter was withdrawn, but I needed, I filed a union |
| 19 | | grievance which later they sent me a letter saying that |
| 20 | | I was made whole with no repercussions of removal and |
| 21 | | suspension and all that.  In other words, I was made |
| 22 | | whole. |
| 23 | | But at first, when they rescinded it, there was |
| 24 | | noth -- they just said they were rescinding it, but I |
| 25 | | wanted to be made whole so there would be nothing in my |

1   record showing that, well, we started with A, we got up

2   to C, we'll get rid of you -- well, we're not going to

3   get rid of you, but we're going to stay here at B, so

4   next time you do something, we can just, you know what

5   I mean, go to the next disciplinary action.

6        I wanted to be whole, so I filed a grievance, and

7   they had sent me a letter.

8   Q   So were you made whole?

9   A   Yes, I was made whole under, under a union grievance,

10   not under EEO.

11   Q   And I'm just having a little difficulty understanding

12   what about the recision didn't make you whole in the

13   first instance?

14   A   (No verbal response.)

15   Q   Why did, there was a letter of removal.  Does a

16   recision mean that the letter of removal is, basically,

17   reversed?

18   A   Right, rescinded or reversed.

19   Q   So why didn't that make you whole; what was the problem

20   with that?

21   A   Because I had gone to, gone to the EEO level on this

22   issue, and I was made whole at, at the grievance level.

23   Q   What I'm trying to do is go back before you filed your

24   grievance, after the letter was rescinded.  What didn't

25   make, what wasn't making you whole?  If the letter is

```
 1        taken away, what isn't making, why aren't you made
 2        whole by that?
 3    A   I was made whole from the letter from--
 4    Q   No.  I don't want to go that far.  Let's put ourselves
 5        in the position where we are when you filed your EEO
 6        complaint?
 7    A   Yeah.
 8    Q   This 02/09/02 letter of removal was rescinded as of the
 9        time you filed the EEO complaint; correct?
10    A   Right.
11    Q   So you weren't complaining to EEO about being removed.
12        You were complaining to EEO about the recision of the
13        removal; correct?
14    A   Right.
15    Q   What was the problem with the recision of the removal
16        that caused you to go to EEO?
17    A   The first part of that decision was they, they
18        rescinded it, but they didn't make me whole.
19    Q   Well, that's what I'm trying to get--
20    A   Yeah--
21    Q   --at.  Why didn't that make you whole, if they
22        rescinded it?
23    A   Because I wanted a letter.  I wanted an actual letter
24        saying that I was made whole, and they didn't give me
25        it.
```

47

| | | |
|---|---|---|
| 1 | Q | That used those words "made whole"? |
| 2 | A | Right. |
| 3 | Q | Who was responsible for making the decision about the |
| 4 | | recision of removal? |
| 5 | A | I don't know.  Who was ever up -- |
| 6 | Q | Who was discriminating against you and not making you |
| 7 | | whole with the recision of removal? |
| 8 | A | Actually, I believe it would be Al Hearn.  He was my |
| 9 | | MDO. |
| 10 | Q | And he was, was he retaliating against you? |
| 11 | A | I don't think so. |
| 12 | Q | Was he discriminating against you based on your age in |
| 13 | | connection with this-- |
| 14 | A | This-- |
| 15 | Q | --specific thing? |
| 16 | A | No. |
| 17 | Q | Was he discriminating against you based on a |
| 18 | | disability, again, just with respect to this decision? |
| 19 | A | No. |
| 20 | Q | The, the next part of this particular lawsuit, if you |
| 21 | | look back to the interrogatory responses, I believe, |
| 22 | | concerns a request for sick leave being denied on |
| 23 | | January 12th; is that right? |
| 24 | A | Yes. |
| 25 | Q | And who denied that request for sick leave? |

48

| | | |
|---|---|---|
| 1 | A | Jay Penna. |
| 2 | Q | And was Jay Penna retaliating against you when he |
| 3 | | denied the request for sick leave? |
| 4 | A | No. |
| 5 | Q | And was he discriminating against you based on your |
| 6 | | disability when, or your claimed disability when he |
| 7 | | denied your request for sick leave? |
| 8 | A | No. |
| 9 | Q | Was he discriminating against you on any basis when he |
| 10 | | denied the request for sick leave? |
| 11 | A | Yes, I believe so. |
| 12 | Q | What basis? |
| 13 | A | On the basis that I had sick leave to use, and he |
| 14 | | denied me it because of the proposed removal. |
| 15 | Q | You're going to have to explain.  I'm not following |
| 16 | | you. |
| 17 | A | Because they were trying to remove me.  Okay.  I wanted |
| 18 | | to use my sick leave because of my condition, and I was |
| 19 | | denied the sick leave, although I had sick leave |
| 20 | | available, I was denied sick leave, and the reason they |
| 21 | | put on the form was denied, disapproved sick leave, |
| 22 | | proposed removal. |
| 23 | Q | And, and-- |
| 24 | A | That's all-- |
| 25 | Q | --do you believe that the reason he denied you the sick |

**APEX Reporting**
(617) 426-3077

49

| | | |
|---|---|---|
| 1 | | leave was because that you had a removal pending? |
| 2 | A | Yes. |
| 3 | Q | I think the third item -- do you mind if I just look |
| 4 | | over your shoulder here -- the third item was not being |
| 5 | | able to work, not being allowed to work from |
| 6 | | January 31, 2002, to February 14, 2002; is that fair to |
| 7 | | say, that's-- |
| 8 | A | Yes-- |
| 9 | Q | --the third item?  And who was responsible for not |
| 10 | | allowing you to work during that period? |
| 11 | A | Al Hearn. |
| 12 | Q | And was he retaliating against you for prior EEO |
| 13 | | complaints in not letting you work during that period? |
| 14 | A | Yes. |
| 15 | Q | And what makes you believe that he was retaliating |
| 16 | | against you in not letting you work? |
| 17 | A | Because when I was ready to come back to work, and I |
| 18 | | had all that documentation, he, he gave me a date when |
| 19 | | I could come back to work instead of letting me come |
| 20 | | back right away, so I believe it was because of the way |
| 21 | | that, in the past, how I had filed grievances against |
| 22 | | him or EEO against him. |
| 23 | Q | He let you come back? |
| 24 | A | Right, but-- |
| 25 | Q | But he gave you a date that you weren't happy with? |

50

| | | |
|---|---|---|
| 1 | A | Right. |
| 2 | Q | And you believe the reason he gave you that date was |
| 3 | | because he was retaliating against you? |
| 4 | A | Right. |
| 5 | Q | Am I following you? |
| 6 | A | Right. |
| 7 | Q | Okay.  And what evidence do you have that he was |
| 8 | | motivated by retaliation in not letting you return |
| 9 | | earlier? |
| 10 | A | I don't, I don't have, I don't have an answer for that. |
| 11 | Q | Does that mean that you don't have any evidence that |
| 12 | | you can think of? |
| 13 | A | I don't have any, no-- |
| 14 | | MR. PIKULA:  Objection to form. |
| 15 | | BY MS. GOODWIN: |
| 16 | Q | When I say "evidence," I'm talking about it broadly, |
| 17 | | whether it be physical evidence or statements-- |
| 18 | A | Right-- |
| 19 | Q | --of individuals, any type of evidence-- |
| 20 | A | Right, no, I understand.  Yeah, no. |
| 21 | Q | And you don't have any as you're sitting here today? |
| 22 | A | Right. |
| 23 | Q | And did you believe that his decision not to let you |
| 24 | | come back earlier was based on discrimination because |
| 25 | | of any disability that you suffered from? |

| | | |
|---|---|---|
| 1 | A | No. |
| 2 | Q | I believe that Item 4, in terms of the complaints that |
| 3 | | are covered by this particular lawsuit, has to do with |
| 4 | | delaying the processing of your workers comp claim? |
| 5 | A | Yes. |
| 6 | Q | Who was the person responsible for delaying the |
| 7 | | processing of the workers compensation claim? |
| 8 | A | Oh, boy.  There's so many up there. |
| 9 | Q | Let me, let me ask you the question -- let me withdraw |
| 10 | | and ask it in a different way.  Who do you believe |
| 11 | | discriminated against you in delaying the processing of |
| 12 | | your workers comp claim? |
| 13 | A | I don't, I can't remember their name.  The only name |
| 14 | | that comes to mind is Eleanor McNearny, but she not be |
| 15 | | the one.  It may be, there's another, also, Greany. |
| 16 | Q | Linda Greany? |
| 17 | A | Yeah, I think it's Linda Greany. |
| 18 | Q | Does she have anything to do with workers comp claims? |
| 19 | A | Oh, no.  I'm sorry.  Workmens comp, I believe it's |
| 20 | | Eleanor McNearny. |
| 21 | | (The document referred to was |
| 22 | | marked for identification as |
| 23 | | Poehler Exhibit No. 11.) |
| 24 | | BY MS. GOODWIN: |
| 25 | Q | Your, your, the actual EEO complaint on this, which I |

52

1    can show you as Exhibit 11, names three people as being

2    involved in all these various discrimination acts, one

3    of them being Jay Penna, one Al Hearn and one Michelle

4    Collins, and my question is which, if any, of those

5    individuals was the individual who you believe

6    discriminated against you with respect to the

7    processing of your workers comp claim?

8  A    Michelle Collins.  Michelle Collins, I believe -- I

9    talked to John Petrid on, on this particular, my OWCP

10    case.  She had, they didn't get back to us, and the

11    reason they didn't get back to us until a certain time

12    was because she went on vacation -- this is what she

13    told John.

14        She went on vacation, and the, all the stuff was

15    in the fax machine and nobody got it, so he asked to

16    see me.  He tried to tell me nobody has access to the

17    fax room, you know, so he del -- you know, I talked to

18    John, just said they're deliberately holding up your

19    workmens comp claim.

20  Q    He said that to you?

21  A    Yeah.  He says, you know--

22  Q    And who was deliberately holding up your workers comp

23    claim?

24  A    I believe it was Michelle Collins that was supposed to

25    get the paperwork or send it in, and what happened was,

| | | |
|---|---|---|
| 1 | | like I said, when she got back John, because it was |
| 2 | | over the due date, she said that it was, it was in the |
| 3 | | fax machine.  She went on vacation, and that's where it |
| 4 | | was.  It must have came, somebody faxed it and left it |
| 5 | | or they were looking for a fax, but it-- |
| 6 | Q | So was, do you believe that it was Michelle Collins who |
| 7 | | was discriminating against you? |
| 8 | A | Yes. |
| 9 | Q | And on what basis was she discriminating against you; |
| 10 | | was she retaliating against you-- |
| 11 | A | Well-- |
| 12 | Q | --for prior EEO complaints? |
| 13 | A | I can't answer that. |
| 14 | Q | How was she discriminating against you? |
| 15 | A | Well, tying, getting my OWCP out in a timely fashion. |
| 16 | | The excuse she gave to my rep at the time was, was it |
| 17 | | was on the fax machine and I was on vacation. |
| 18 | Q | Well, what's your belief as what the real reason was |
| 19 | | that she was delaying it? |
| 20 | A | I, I believe somebody upstairs talked to her and told |
| 21 | | her to, to slow up my claim. |
| 22 | Q | And who talked to her from upstairs to-- |
| 23 | A | I have-- |
| 24 | Q | --tell-- |
| 25 | A | I have no idea, but that's how they do things. |

54

| | | |
|---|---|---|
| 1 | Q | And so, if I'm following you, you don't know who talked |
| 2 | | to her-- |
| 3 | A | No-- |
| 4 | Q | --to tell her to slow up the claim?  You -- and that's, |
| 5 | | am I understanding you that it's your -- let me |
| 6 | | withdraw that. |
| 7 | | Other than believing that that's the way things |
| 8 | | work, do you have any evidence that there was any |
| 9 | | retaliation or discrimination involved in any delay in |
| 10 | | the processing of your workers comp claim? |
| 11 | A | I, I had a claim that I brought up to workmens comp, |
| 12 | | gave them a copy of what they didn't have.  They, in |
| 13 | | turn, were supposed to send it to Boston.  I, in turn, |
| 14 | | got a reply from Boston that it was untimely, and a |
| 15 | | certain part of the claim was not, had not been |
| 16 | | disclosed to them. |
| 17 | | When I went upstairs to find out what they did |
| 18 | | with that copy I gave them, because that was the |
| 19 | | portion that workmens comp they didn't have, it wasn't |
| 20 | | in my file, and I had, you know, I went up there and |
| 21 | | handed it to them.  Now, that wasn't, it wasn't in my |
| 22 | | file, so where'd it go?  You know, that's why I'm |
| 23 | | saying. |
| 24 | | Then, then this was delayed, so I told John about |
| 25 | | the, that previous episode, and he says, I think |

```
 1        they're just, you know, they're playing games with you,

 2        so file an EEO, and so I did.

 3   Q    And is there anything else--

 4   A    But that's--

 5   Q    --any other evidence--

 6   A    No--

 7   Q    --that's discriminatory?

 8   A    No, other than that.

 9   Q    Just go back to the interrogatories for a moment

10        because I think -- do you mind if I just take it for a

11        second?

12   A    No.

13   Q    I think the last one is, the last one listed in

14        response to Interrogatory No. 1 is being denied a

15        reasonable accommodation as of 02/13/02; do you see

16        that?

17   A    Yes.

18   Q    No. 5.  What was the accommodation you were denied?

19   A    The accommodation I was denied, my psychologist or

20        psychiatrist, Debra Reynolds, wrote a letter to my

21        manager, Al Hearn, requesting that I be removed from

22        the facility so I wouldn't have to work in that

23        environment.

24            Her suggestion was that I go to another facility

25        and work, another post office, in other words, and they
```

56

```
 1        just said, well, that's just a recommendation, and they

 2        put me in the Far East.  That's when they put me over

 3        in the Far East.

 4   Q    And did you indicate to Mr. Hearn that you were

 5        satisfied with that move going to the East, BMC East?

 6   A    At the time he did it, I said I'll give it a couple

 7        weeks and see how, how this works out, but I believe

 8        that she wants me out of the building, you know.

 9             He said, well, she's just suggesting that.

10   Q    Were you moved out of the area that you had been in

11        before?

12   A    (No verbal response.)

13   Q    How far away--

14   A    Yeah, I--

15   Q    How far away were you moved?

16   A    I was moved into another area of the building.

17        There's, the way the building's structured, it's, it's

18        the BMC main plant; then, you go through another work

19        area which is considered the, the connector because it

20        connects the buildings, and at the end of that, that's

21        the Far East.

22   Q    So how long does it take you to walk from one part to

23        the part that, from the part you had been at previously

24        to the part you were reassigned?

25   A    Maybe four or five minutes.
```

*APEX Reporting*
(617) 426-3077

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
_____
DAVID POEHLER,                   )
                                 )
          Plaintiff,             ) No. 04cv30254-MAP
                                 )
                                 ) No. 04cv30192-MAP
     v.                          )
                                 )
                                 )
JOHN E. POTTER,                  )
Postmaster General,              )
United States Postal Service     )
          Defendant              )
_____ )
```

DECLARATION OF LINDA GREANEY

1.  I, Linda Greaney, make this declaration pursuant to the provisions of 28 U.S.C. § 1746.

2.  I am over the age of 18 and understand the obligations of an oath.  This declaration is based upon a review of official United States Postal Service ("Postal Service") records and my personal knowledge of the plaintiff's complaints and Equal Employment Opportunity ("EEO") procedures.

3.  I am employed by the Postal Service as an EEO Compliance and Appeals Specialist in the Northeast Area Appeals Processing Center, Windsor, Connecticut.

4.  In my position as EEO Compliance and Appeals Specialist, I have access to records relating to EEO

complaints filed by Northeast Area postal employees,
including correspondence from the Equal Employment
Opportunity Commission ("EEOC") pertaining to EEO
complaints.

5.   The following is a summary of the administrative
processing of the EEO complaints that the plaintiff claims
are the subject of Poehler v. Potter, 04-30192-MAP and
Poehler v. Potter, 04-30254-MAP.

**EEO Complaint 1B-012-0026-99:**

6.   On June 2, 1999, David Poehler filed EEO
complaint 1B-012-0026-99, alleging that Robert Koestner
discriminated against him due to his sex and age when
he did not permit Poehler to become a supervisor without
going through the "ASP" program.  Ex. 1.

7.   On May 4, 2001, Attorney Mary Ann Lane entered an
appearance on behalf of Poehler.  On September 20, 2001,
Poehler, through his lawyer, requested a hearing before an
Administrative Judge ("AJ").  Ex. 2.

8.   On June 26, 2003, an AJ with the EEOC's Boston
Area Office issued a decision in favor of the Postal
Service, finding no discrimination.  Ex. 3.

9.   On July 1, 2003, the Postal Service issued a
notice of final action implementing the AJ's decision

2

finding no discrimination.  The notice advised the plaintiff of his right to appeal to the Office of Federal Operations ("OFO") at the EEOC within 30 days or to file a lawsuit within 90 days.  Ex. 4.

10.  On July 23, 2003, the plaintiff, through his lawyer, appealed to the OFO.  Ex. 5.

11.  On October 27, 2003, the OFO affirmed the Postal Service's final order that implemented the AJ's decision. The OFO decision notified Poehler of his appeal rights, including the right to file a lawsuit within 90 days. Poehler did not file a lawsuit within 90 days of the EEOC decision.  Ex. 6.

### EEO Complaint 1B-012-0034-01

12.  On June 20, 2001, Poehler filed EEO complaint 1B-012-0034-01, alleging unspecified retaliation based on having filed EEO complaint 1B-012-0026-99.  Poehler named C. Clark, M. Sales, E. Maio, Alan Hearn and unspecified management named as the discriminating officials.  Ex. 7. The Postal Service consolidated Complaint 1B-012-0034-01 with one later filed complaint, 1B-012-0056-01, filed on September 13, 2001.  Ex. 8.  Complaint 1B-012-0034-01 was also amended to include additional discrimination claims on October 9, 2001 and November 14, 2001.  Exs. 9, 10.

The Postal Service did not consolidate EEO Complaint 1B-012-0026-99 with complaint 1B-012-0034-01 at any time.

13.   Poehler and his EEO counselor defined the issues raised in complaint 1B-012-0034-01 as being the following: (1) Notice of Proposed Removal reduced to a seven-day suspension; (2) the hiring of former Emery employees as supervisors; and (3) a November 2000 investigation into Poehler's disability.  Ex. 11.  On July 19, 2001, the agency accepted for investigation the claim concerning the disciplinary action, but dismissed the remaining claims. Ex. 12.

14.   On November 1, 2001, Poehler submitted an affidavit outlining the actions that he believed to be the subject of complaint 1B-012-0034-01.  The issues were: (1) the initial March 15, 2001, notice of proposed removal; (2) the July 18, 2001, seven-day suspension; (3) a comment made by Al Hearn on August 30, 2001; and (4) denial of overtime on the Labor Day weekend, 2001.  Ex. 13.

15.   On July 14, 2004, Poehler, through his attorney, requested a hearing before an AJ.  Ex. 14.

16.   On September 27, 2004, an AJ with the EEOC's Boston Area Office issued a decision in favor of the Postal Service, finding no discrimination.  Ex. 15.

4

17.  On September 30, 2004, the Postal Service issued a Notice of Final Action implementing the AJ's finding of no discrimination regarding Poehler's accepted claims and notifying him of his right to file a lawsuit within 90 days of the decision.  Ex. 16.

### EEO Complaint 1B-011-0008-03

18.  On May 29, 2003, Poehler filed EEO Complaint 1B-011-0008-03, alleging age and disability discrimination as well as retaliation in the April 7, 2003, denial of a transfer to a custodial position.  Poehler named Richard Wentzel as the discriminating official.  Ex. 17.

19.  On September 29, 2004, the plaintiff requested an agency decision without a hearing.  Ex. 18.

20.  November 1, 2004, the Postal Service issued a final decision finding no discrimination and notifying him of the right to file a lawsuit within 90 days.  Ex. 19.

### EEO Complaint 1B-012-0031-02

21.  On April 16, 2002, Poehler filed EEO Complaint 1B-012-0031-02 alleging disability discrimination and retaliation in connection with the following events: (1) he was not made whole following rescission of a letter of removal; (2) denying his request for sick leave on January 12, 2002; (3) not allowed to work January 31, 2002 through February 14, 2002; (4) not timely processing his worker's

5

compensation claim; and (5) not providing reasonable accommodations.  Ex. 20.

22.  By letter dated May 10, 2004, the plaintiff, through Attorney Joseph Cabrera, Jr., requested a final agency decision without a hearing.  Ex. 21.

23.  On June 25, 2004, the Postal Service issued its final decision finding no discrimination and notifying Poehler of the right to file a lawsuit within 90 days.  Ex. 22.

I hereby declare that the foregoing is true and correct to the best of my knowledge, information and belief.

Linda Greaney

March 30, 2006

U.S. Postal Service

# EEO Complaint of Discrimination
## in the Postal Service

Instructions and Privacy Act Statement on Reverse

| 1. Name | 2. SSN | Case No. |
|---|---|---|
| Poehler David | 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 | 1B012002699 |

| 3. Mailing Address | 4. Home Phone | 5. Work Phone |
|---|---|---|
| 249 Parkerview St | 978-2-6369 | (413) 7856298 |

| 6. Position Title (USPS Employees Only) | 7. Grade Level (USPS Employees Only) |
|---|---|
| LEVEL 16 EAS - (204 B) | PS - 05 |

| 8. Installation Where You Believe Discrimination Occurred (Identify Installation, City, State, and ZIP+4) | 9. Name & Title of Person(s) Who Took the Action(s) You Allege Was Discriminatory |
|---|---|
| SPRINGFIELD BMC SPRINGFIELD, MA 01152 | ROBERT KOESTNER PLANT MANAGER SBMC |

10. I designate this person to be my representative.

| a. Name | Title |
|---|---|
| JOHN D. PETRIN | CO-WORKER |

Mailing Address
23 WARNER ST.
GREENFIELD, MA. 01301

| b. Home Phone | c. Work Phone |
|---|---|
| (413) 773-3262 | (413) 285-6313 |

**11. Type of Discrimination Alleged**

- [ ] Race (Specify):
- [ ] Color (Specify):
- [ ] Religion (Specify):
- [ ] National Origin (Specify):
- [x] Sex (Specify): MALE
- [x] Age (Specify):
- [ ] Retaliation (Specify Prior EEO Activity):
- [ ] Disability (Specify)

**12. Date on Which Alleged Act of Discrimination Took Place**

MARCH 10, 1999

13. Explain the specific actions or situation that resulted in your allegation(s) as to how you believe you were discriminated against (treated differently from other employees or applicants) because of race, color, religion, national origin, sex, age, or disability.

ON MARCH 10, 1999 SUZANNE BOWES WAS PROMOTED TO A SUPERVISOR, EAS 16 POSITION WITHOUT GOING THROUGH THE ASP PROGRAM. PLANT MANAGER KOESTNER TOLD ME I COULD NOT BE REINSTATED TO SUPERVISOR WITHOUT THE COMPLETEN ASP PROGRAM

| 14. I have discussed my complaint with an EEO counselor | 15. Name and Signature of EEO Counselor |
|---|---|
| [ ] Yes (Date of final interview: receipt of certified z 430 895 027 | Dorothy S. Bush |
| [ ] No | DOROTHY S. BUSH |

16. Corrective Action Sought

ALL RIGHTS AND BENEFITS TO WHICH I AM ENTITLED TO BY LAW AND/OR REGULATION.

| 17. Signature of Complainant | 18. Date of This Complaint |
|---|---|
| David E. Poehler | 5-30-99 |

TransFORM PS Form 2565, December 1995

# LANE LAW OFFICE
## MARY-ANN L. LANE
### ATTORNEY AT LAW

1380 Main Street
Suite 306
Springfield, MA 01103-1619
Phone: 413-732-0320
FAX:   413-732-0628

33 Mountainview Street
Springfield, MA 01108-2015
Phone: 413-746-2119
FAX: 413-734-7578
email: lan@map.com

Ms. Linda Greaney
Sr EEO Complaints Investigator
Appeals Processing Center
6 Griffin Road North
Windsor, CT 06007-7052
05/04/01

RE:  Appellant :  David F. Poehler, OFO Docket No. 01A02829, Compliance No. 06A10874.

Dear Ms. Greaney:

Please enter my appearance on behalf of Mr. David F. Poehler, in the above described matter.

Thank you.

Mary-Ann L. Lane, Esq.

MAL/sh

## UNITED STATES OF AMERICA
## EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
## BOSTON AREA OFFICE

David Poehler,
> Complainant,

v.

John E. Potter, Postmaster General,   United States Postal Service,
> Agency.

EEOC Hearing No. 160-A2-8133X
Agency File No. 1B-021-0026-99

Before: Kathleen Mearn Clarke
Administrative Judge

### DECISION

### INTRODUCTION

On July 2, 1999, David Poehler (hereinafter referred to as Complainant), filed a formal EEO complaint. Following an investigation by the Agency, Complainant requested a hearing before an EEOC Administrative Judge. However, on March 3, 2003, I notified the parties that a decision without a hearing (summary judgment) may issue in this case. Both parties responded to the notice. After a careful review of the record, I find that the matter is appropriate for summary judgment in favor of the Agency.[1]

### ISSUE

Was Complainant discriminated against based on his sex and age (DOB 04/19/50), in that he became aware on March 10, 1999, that a mail handler was promoted to supervisor, despite not completing the Associate Supervisor Program, while he was advised he had to complete the program, thereby causing him not to apply for the supervisor position?    See Report of Investigation ("ROI") p. 60.

---

[1] The language of 29 C.F. R. Section1614.109(g), which is patterned after Rule 56 of the Federal Rules of Civil Procedure, permits the trier of fact to issue a Summary Judgment when the record shows that "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "Only disputes over facts that might effect the outcome of a suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby*, 477 U.S. 247, 106 S.Ct. 2505, 2510 (1986).

1



## JURISDICTION

Employment Equal Opportunity Commission ("EEOC") jurisdiction to decide this case is predicated on Title VII of the Civil Rights Act of 1964 (Title VII), as amended, the Age Discrimination in Employment Act of 1967 ("ADEA"), as amended, 29 U.S.C. §621 *et seq.*

## UNDISPUTED MATERIAL FACTS

1. From July 1993 to December 1996, Complainant had been a Customer Service Supervisor in the Chicopee, Massachusetts Post Office. Robert Koestner had been his supervisor. Complainant left the Agency and later sought, and received, reinstatement from Mr. Koestner, Manager of the Springfield Bulk Massachusetts Mail Center ("BMC"). When Complainant returned in August 1997, he expected to return as a supervisor. Instead, he was a Part Time Flexible (PTF) Clerk, Parcel Post Distributor, Grade 5. *See* ROI, Affidavits A, B, Exhibits A, B.

2. One day, in the BMC parking lot, Complainant asked Mr. Koestner about available supervisory positions. Mr. Koestner told him that he had to complete the Associate Supervisor Program in order to be promoted to supervisor. Complainant believed what he said. ROI, Affidavits A, B.

3. Complainant applied for the Associate Supervisor Training Program and was notified on March 10, 1999 that he scored "ineligible" on the qualification exam. ROI, Ex.5.

4. On March 10, 1999, Complainant found out that Suzanne Bowes, a PTF Mailhandler (Level 4), approximately 25 years old, had been promoted to Supervisor (Level 16) in Springfield, VT, some 94 miles away from the BMC. Ms. Bowes had not completed the Associate Supervisor Program. Moreover, although Ms. Bowes had served as acting supervisor at the Springfield MA BMC for about a year, Complainant had more supervisory experience she. The Vacancy Announcement for the Springfield VT position did not state that the completion of the Associate Supervisor Training Program was a requirement for the position. ROI, Affidavit A, Ex. 6, 7,9.

5. The record in this case indicates that successful completion of the Associate Supervisor training Program was a requirement for two supervisory positions announced at the

2

BMC in January 1999.  It was not, however a requirement for the Vermont position. ROI, Exhibits 3, 4.

      6. Complainant claims that the information provided to him with respect to the Associate Supervisor Training Program being a requirement for promotion to supervisor was intentionally false and discriminatory because of his sex and age. ROI, Affidavit A..

      7. Complainant does not allege that Mr. Koestner or any other agency official told Ms. Bowes that there was a supervisory position in Vermont that did not require ASTP training.

      8. It is undisputed that the Plant Manager in the BMC in Springfield Massachusetts played no role in selecting Ms. Bowes for the Vermont supervisory position.

## ALLOCATION OF EVIDENTIARY BURDENS

      The U.S. Supreme Court has established a three-part evidentiary process that assigns the order and allocation of proof in civil actions alleging disparate treatment. Texas Department of Community Affairs v. Burdine, 450 U.S. 248 (1981); Furnco Construction Corp. v. Waters, 438 U.S. 567 (1978); McDonnell Douglas v. Green, 411 U.S. 792 (1973).

      First, the Complainant has the initial burden of proving, by a preponderance of the evidence, a *prima facie* case of illegal discrimination. Second, where the Complainant succeeds in proving a *prima facie* case, the burden then shifts to the Agency to articulate some legitimate nondiscriminatory reason(s) for the employment action and/or decision in question. Third, the Complainant is then afforded the opportunity to prove (by a preponderance of the evidence) that the Agency's articulated reason(s) was not true and only served as a pretext for actual illegal employment discrimination.

      It is noted that the Complainant's *prima facie* evidentiary showing is not applied in an absolute rigid manner; rather, the *prima facie* prerequisites are to be adopted to the particulars of the individual case at hand. McCorsten v. United States Steel, 621 F.2d 749 (5th Cir. 1980); Laugeson v. Anaconda Co., 510 F.2d 307 (6th Cir. 1975); McDonnell Douglas, supra, n.13.

      Nevertheless, it is emphasized that the ultimate burden of persuading the trier of fact that the Agency intentionally discriminated remains at all times with the Complainant. St. Mary's Honor Center v. Hicks, 113 S. Ct. 2742 (1993); Cooper v. Federal Reserve Bank of Richmond,

467 U.S. 867 (1984); United States Postal Service Board of Governors v. Aikens, 460 U.S. 711, 716 (1983).

The *McDonnell Douglas* framework, developed to assess claims under Title VII of the Civil Rights Act of 1964, also applies to ADEA actions. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000), 120 S.Ct. 2097(2000). However, while comparative evidence is usually necessary to establish disparate treatment, the Complainant needs only to present evidence of acts from which, if otherwise unexplained, an inference of discrimination may be drawn. *Furnco Construction Corp. v. Waters, supra.* Where the Agency articulates a legitimate, nondiscriminatory reason for its action, the legal analysis may proceed directly to a determination of whether or not the Complainant has satisfied his burden of showing pretext. *Hass v. Department of Commerce*, EEOC Request No. 05970837 (July 7, 1999)[citing *United States Postal Service v. Aikens*, 460 U.S. 711, 713-14 (1983)]; *See also St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 515 (1993).

With respect to the issue of summary judgment, the party opposing summary judgment must do more than merely recite that there is a factual dispute. The opposing party must specifically identify the disputed facts in the record or demonstrate that there is a dispute by producing supporting evidence. Additionally, the opposing party must explain how the facts in dispute are material under the applicable legal principles. *Anderson, supra,* at 322-24; *Patton v. United States Postal Service*, EEOC Request No. 05930055 (July 1, 1993).


<u>ANALYSIS AND FINDINGS</u>

I find that the Agency's Motion properly sets forth the facts and applicable law and that document is incorporated herein. *See* **Attachment A.**

The following supplements the analysis in Attachment A.

Complainant must establish a *prima facie* case of disparate treatment. This requires Complainant to prove that he is a member of a protected group(s), the Agency's action adversely affected a term, condition or privilege of his employment and "similarly situated" employee(s) outside of his protected group(s) were treated more favorably under similar circumstances.

4

Persons are "similarly situated" when all the relevant aspects of Complainant's employment (i.e., same supervisor, tour, work section, installation, grade, etc.) and the comparable employee is nearly identical. *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 335, n. 15 (1977); *Smith v. Monsanto Chemical Co.*, 770 F.2d 719, 723 (8th Cir. 1985); *Murray v. Thistledown Racing Club Inc.*, 770 F.2d 63, 68 (6th Cir. 1985); *Nix v. WLCY Radio/Rahall Communications*, 738 F. 2d 1181, 1185 (11th Cir. 1984); *Payne v. Illinois Central Gulf RR*, 665 F. Supp. 1308, 1333 (W.D. Tenn. 1987). Once the Complainant establishes a *prima facie* case of discrimination, the Agency must articulate a legitimate, nondiscriminatory reason for its action, which the Complainant must prove is a pretext for discrimination in order to meet his ultimate burden of proving discrimination by a preponderance of the evidence. *McDonnell Douglas Corp. v. Green, supra*; *Furnco Construction Corp. v. Waters, supra*; *Texas Department of Community Affairs v. Burdine, supra*. If a *prima facie* case of discrimination is established, the Agency is then given the opportunity to present legitimate and nondiscriminatory reasons for actions in order to rebut the presumption raised by the Complainant. *Texas Department of Community Affairs v. Joyce Ann Burdine, 450 U.S. 248 (1981)*.

As stated in Attachment "A," Complainant has failed to identify a similarly situated individual outside his protected group(s) who was treated more favorably than he. Ms. Bowes, although outside of his protected groups, is not identical in employment to Complainant. Complainant was a PFT Mailhandler level 5 and she was a PFT Mailhandler level 4. ROI, p 6,13. Moreover there is no indication they were nearly identical in that they had the same supervisors, tours, etc. Most significantly, however, there is no evidence or argument anywhere in the record to indicate that Ms. Bowes was told about the Vermont vacancy by Mr. Koestner or indeed, by any agency official.[2]

Accordingly, even viewing the evidence in the light most favorable to Complainant, he

---

I note that there is nothing in the record to show that Complainant was prevented from conducting his own job search to determine whether there were any supervisory positions available within the agency within and outside of his geographical area. It is unreasonable to expect that Complainant's reliance on a parking lot exchange between colleagues would precluded Complainant from finding out about a position in Springfield Vermont if he sought to pursue employment in that geographical area. It is undisputed that Complainant was a supervisor for a number of years before he left the agency to open his own business. ROI, Affidavit A. Since he held such a position, I find it highly unlikely that Complainant understood that the way to find out if there was suitable employment for him agency wide, of specifically in Springfield, Vermont, was to informally inquire of the Plant Manager in Springfield Massachusetts. Surely he was aware other avenues utilized by those seeking agency employment such as federal job websites, agency websites or internal memoranda and announcements regarding employment.

has failed to establish a prima facie case of disparate treatment. 

Although comparative evidence is not required to establish a prima facie case of age discrimination, there is nothing in the record, including the thorough and well thought out submission by Complainant in rebuttal to the agency's case from which an inference of age discrimination may be drawn.

Assuming, arguendo, that Complainant has established a prima facie case of discrimination, the agency presented an explanation for the information Mr. Koesler provided to Complainant. That reason was that he thought Complainant was inquiring about positions in the area of the Springfield, MA BMC. It had not occurred to him that Complainant was seeking employment in Vermont. That statement was not successfully rebutted. It is well established that mere speculations or allegations to refute the agency's legitimate non-discriminatory reasons in the record will be insufficient to create a genuine issue of fact to avoid summary judgment. In Ernest C. Ortega v. USPS, EEOC No. 01995243 (May 3, 2001). In this instance, only speculation and allegations that Mr. Koesler intentionally furthered the candidacy of a younger female for the Vermont position by failing to inform Complainant of the Vermont vacancy was proffered.. That is insufficient to defeat a summary judgment motion in this case.

CONCLUSION

After a careful review of the record, I find that even if the evidence is viewed in a light most favorable to Complainant, there are no material facts in dispute and no issues of credibility. I find that the Complainant failed to meet his burden of proving discrimination by a preponderance of the evidence on any alleged basis.

NOTICE

This is a decision by an Equal Employment Opportunity Commission Administrative Judge issued pursuant to C.F.R. §1614.109(b), 109(g) or 109(i). EEOC regulations require the Agency to take final action on the complaint by issuing a final order within 40 calendar days of receipt of the hearing file and this decision. The Agency's final order will notify the complainant whether or not the Agency will fully implement this decision, and shall contain notice of the complainant's right to appeal to the Commission, the right to file a civil action in federal district court, the name of the proper defendant in any such lawsuit and the applicable time limits for such appeal or lawsuit. A copy of the Final Order shall also be provided to the Administrative Judge.

6

With the exception d█ █led in the next paragraph, complainant █ay not file an appeal to the Commission directly from this decision. Rather, complainant may appeal to the Commission within 30 calendar days of receipt of the Agency's final order concerning its implementation of this decision. If the final order does not fully implement this decision, the Agency must also simultaneously file an appeal to the Commission in accordance with 29 C.F.R. §1614.403, and append a copy of the appeal to the final order. A copy of EEOC Form 573 must be attached to the final order.

Complainant may only appeal directly from this decision in the event that the Agency has not issued its final order within 40 calendar days of its receipt of the hearing file and this decision. In this event, the complainant should append a copy of the Administrative Judge's decision to the appeal. The complainant should furnish a copy of the appeal to the opposing party at the same time it is filed with the Commission, and should certify to the Commission the date and method by which such service was made on the opposing party. All appeals to the Commission must be filed by mail, personal delivery or facsimile to the following address:

Director
Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 19848, Washington, D.C. 20036
Fax No. (202) 663-7022

Facsimile transmissions over 10 pages will not be accepted.

For further guidance regarding appeals, the parties may consult 29 C.F.R. §1614.401 et seq. and Chapter 10 of the Commission's Management Directive-110. These documents are available on the EEOC's website at EEOC.GOV.

### COMPLIANCE WITH AN AGENCY FINAL ACTION

Pursuant to 29 C.F.R. §1614.504, an Agency's final action that has not been the subject of an appeal to the Commission or civil action is binding on the Agency. If the complainant believes that the Agency has failed to comply with the terms of its final action, the complainant shall notify the Agency's EEO Director, in writing, of the alleged noncompliance within 30 calendar days of when the complainant knew or should have known of the alleged noncompliance. The Agency shall resolve the matter and respond to the complainant in writing. If the complainant is not satisfied with the Agency's attempt to resolve the matter, the complainant may appeal to the Commission for a determination of

7

whether the Agency has complied with the terms of its final action. The complainant may file such an appeal within 30 calendar days of receipt of the Agency's determination or, in the event that the Agency fails to respond, at least 35 calendar days after complainant has served the Agency with the allegations of noncompliance. A copy of the appeal must be served on the Agency, and the Agency may submit a response to the Commission within 30 calendar days of receiving the notice of appeal.

Kathleen Mearn Clarke
Administrative Judge

8

## CERTIFICATE OF SERVICE

For timeliness purposes, it will be presumed that this Order was received within five (5) calendar days after it was mailed. I certify that on   June 26, 2003   this Order was mailed to the following parties:

David F. Poehler
249 Parkview Street
Springfield, MA 01129-1332


Mary-Ann L. Lane, Esquire
Lane Law Offices
1380 Main Street Suite 306
Springfield, MA 01103-1619

Margaret Harper, Esquire
Law Department- USPS
8 Griffin Road North
Windsor, CT 06006-0170


Kathleen Mearn Clarke
Administrative Judge

Northeast Area Office


**UNITED STATES**
**POSTAL SERVICE**™

# UNITED STATED POSTAL SERVICE
## EQUAL EMPLOYMENT OPPORTUNITY CASE
## IN THE MATTER OF:

| | |
|---|---|
| **David Poehler,**<br>**Complainant,** | **USPS No. 1B-012-0026-99** |
| **v.** | **Hearing No. 160-A2-8133X** |
| **John E. Potter,**<br>**Postmaster General,**<br>**Respondent.** | |

### Notice of Final Action

In accordance with 29 C.F.R. 1614.110(a), this is the Postal Service's Notice of Final Action in your complaint of discrimination numbered above. In your complaint, you claim that you were subjected to discrimination based on your sex and age when on March 10, 1999, you became aware that a Mail Handler was promoted to supervisor, despite not completing the Associate Supervisor Program, while you were advised that you had to complete that program, thereby causing you not to apply for the supervisor position.

On June 26, 2003, the EEOC Administrative Judge assigned to your case issued a decision without a hearing (summary judgment), which was received by the Postal Service on June 30, 2003. The Administrative Judge found that you had not been discriminated against.

I have reviewed the entire record, including the investigative file, and I have decided to implement the decision of the Administrative Judge.

6 Griffin Road N
Windsor CT 06006-7000

**APPEAL RIGHTS**

**APPEAL TO THE EEOC**

You have the right to appeal the Postal Service's final action to the **Director, Office of Federal Operations, Equal Employment Opportunity Commission (EEOC), P.O. Box 19848, Washington, DC 20036-9848**, within 30 calendar days of your receipt of this final action. You must use PS Form 3573, a copy of which is enclosed, in connection with your appeal. You may also deliver your appeal in person or by facsimile provided that briefs filed by facsimile are ten or fewer pages in length. Any supporting statement or brief must be submitted to the EEOC within 30 calendar days of filing the appeal. Along with your appeal, you must submit proof to the EEOC that a copy of the appeal and any supporting documentation or brief were also submitted to the **Manager, EEO Compliance & Appeals, Appeals Processing Center, USPS, 6 Griffin Road North, Windsor, CT 06006-7052.** You are advised that if you file your appeal beyond the thirty (30) day period set forth in the Commission's regulations, you should provide an explanation as to why your appeal should be accepted despite its untimeliness. If you cannot explain why your untimeliness should be excused in accordance with 29 C.F.R. 1614.604, the Commission may dismiss the appeal as untimely.

**RIGHT TO FILE A CIVIL ACTION**

Alternatively, you may file a civil action in an appropriate U.S. District Court within ninety (90) calendar days of your receipt of the Postal Service's final action, within ninety (90) calendar days of the EEOC's final decision on any appeal, or after one hundred and eighty (180) days from the date of filing an appeal with the EEOC if no final decision has been rendered. If you choose to file a civil action, that action should be captioned **(Your Name) v. John E. Potter, Postmaster General**. You may also request the court to appoint an attorney for you and to authorize the commencement of that action without the payment of fees, costs, or security. Whether these requests are granted or denied is within the sole discretion of the District Judge. Your application must be filed within the same ninety (90) day time period for filing the civil action.

Robert S. Hylen
Manager, EEO Compliance & Appeals

7/1/03
Date

Enclosures: PS Form 3573
            Certificate of Service


**UNITED STATES**
**POSTAL SERVICE**®

**Notice of Appeal/Petition to the Equal Employment
Opportunity Commission, Office of Federal Operations**

| 1. Appellant's Name *(Last, First, MI) (Please Print or Type)* | 2. Daytime Telephone No. *(Include Area Code)* |
|---|---|

3. Home Mailing Address

| 4. Name of Attorney or Other Representative *(If any)* | 5. Telephone No. *(Include Area Code)* |
|---|---|

6. Address of Attorney or Other Representative *(If applicable)*

7. Has the Appellant Filed a *Formal Complaint* with His/Her Agency?

☐ No    ☐ Yes – Indicate the Agency's Complaint No.: _____

8. Name of Agency Being Charged with Discrimination

9. Location of Duty Station or Local Facility in Which the Complaint Arose

10. Has a *Final Decision* Been Issued by the Agency or MSPB on this Complaint?

☐ Yes *(Indicate the date the appellant received it, _____, and attach a copy.)*

☐ No

☐ This Appeal Alleges a Breach of a Settlement Agreement.

11. Has a Complaint Been Filed on This Same Matter with the Commission, Another Agency, or Through Any Other Administrative or Collective Bargaining Procedure?

☐ No    ☐ Yes *(Indicate the agency of procedure, complaint/docket number, and attach a copy, if appropriate.)*

12. Has a Civil Action (Lawsuit) Been Filed in Connection with This Complaint?

☐ No    ☐ Yes *(Attach a copy of the civil action filed.)*

NOTICE: Before mailing this appeal, please be sure to <u>attach a copy of the final decision</u> from which you are appealing, if one has been issued. Any comments or brief in support of the appeal MUST be filed with the Commission AND with the agency within 30 days of the date this appeal is filed. Making a knowingly false statement on this form is punishable by law. See 18 U.S.C. § 1001.

**Privacy Act Statement**

*(This form is covered by the Privacy Act of 1974, Public Law 93-597. Authority for requesting the personal data and the use thereof is given below.)*

1. **Form Number/Title/Date:** EEOC Form 573, Notice of Appeal/Petition (April 1992 edition).

2. **Authority:** 42 U.S.C. § 2000e-16.

3. **Principle Purpose:** The purpose of this questionnaire is to solicit information to enable the Commission to properly and efficiently adjudicate appeals filed by Federal employees, former Federal employees, and applicants for Federal employment.

4. **Routine Uses:** Information provided on this form will be used by Commission employees to determine (a) the appropriate agency from which to request relevant files; (b) whether the appeal is timely; (c) whether the Commission has

jurisdiction over the issue(s) raised in the appeal; and (d) generally to assist the Commission in properly processing and deciding appeals. Decisions of the Commission are final administrative decisions, and such as, are available to the public under the provisions of the Freedom of Information Act. Some information may also be used in de-personalized form as a database for statistical purposes.

5. **Whether Disclosure Is Mandatory or Voluntary and Effect on Individual for not Providing Information:** Since your appeal is voluntary action, you are not required to provide any personal information in connection with it. However, failure to supply the Commission with the requested information could hinder timely processing of your case, or even result in the rejection or dismissal of your appeal.

| 13. Signature of Appellant or Appellant's Representative | Date |
|---|---|

**Send Your Appeal to:**

**THE EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
OFFICE OF FEDERAL OPERATIONS
PO BOX 19848
WASHINGTON DC 20036-9848**

| For EEOC Use Only | OFO Docket No |
|---|---|

PS Form **3573**, June 2001

# CERTIFICATE OF SERVICE

For timeliness purposes, it will be presumed that this Notice of Final Action was received within five (5) calendar days after it was mailed.  I certify that on this date, this Notice of Final Action was mailed to the following parties:

David Poehler
249 Parkerview Street
Springfield MA 01129-1332

Mary-Ann L. Lane, Esq.
1380 Main Street  Suite 306
Springfield MA 01103-1619

Honorable Kathleen Mearn Clarke
Administrative Judge - EEOC
JFK Federal Building  Room 475
Government Center
Boston MA 02203-0506

Sylvia Morris
Manager, Human Resources
Springfield District - USPS
190 Fiberloid Street
Springfield MA 01152-9994

Margaret Harper, Esq.
Windsor Law Office – USPS
8 Griffin Road North
Windsor CT 06006-0170


Manager, EEO Compliance & Appeals                    7/1/03
                                                      Date

 **UNITED STATES POSTAL SERVICE®**

**Notice of Appeal/Petition to the Equal Employment Opportunity Commission, Office of Federal Operations**

| 1. Appellant's Name *(Last, First, MI) (Please Print or Type)*<br>Poehler, David F. | 2. Daytime Telephone No. *(Include Area Code)*<br>(413)-785-6313 |
|---|---|

3. Home Mailing Address

29 Beauregard St.
Indian Orchard, MA 01151

| 4. Name of Attorney or Other Representative *(If any)*<br>Mary-Ann L. Lane, Esq. | 5. Telephone No. *(Include Area Code)*<br>(413)-732-0320 |
|---|---|

6. Address of Attorney or Other Representative *(If applicable)*

1380 Main St. Ste. #306
Springfield, MA 01103

---

7. Has the Appellant Filed a *Formal Complaint* with His/Her Agency?

☐ No     ☒ Yes – Indicate the Agency's Complaint No.: 1B-012-0026-99

8. Name of Agency Being Charged with Discrimination

U.S.P.S.

9. Location of Duty Station or Local Facility in Which the Complaint Arose

190 Fiberloid St. Springfield MA 01152

10. Has a *Final Decision* Been Issued by the Agency or MSPB on this Complaint?

☒ Yes *(Indicate the date the appellant received it,* July 1, 2003 *, and attach a copy.)*

☐ No

☐ This Appeal Alleges a Breach of a Settlement Agreement.

11. Has a Complaint Been Filed on This Same Matter with the Commission, Another Agency, or Through Any Other Administrative or Collective Bargaining Procedure?

☒ No     ☐ Yes *(Indicate the agency of procedure, complaint/docket number, and attach a copy, if appropriate.)*

12. Has a Civil Action (Lawsuit) Been Filed in Connection with This Complaint?

☒ No     ☐ Yes *(Attach a copy of the civil action filed.)*

**NOTICE:** Before mailing this appeal, please be sure to **attach a copy of the final decision** from which you are appealing, if one has been issued. Any comments or brief in support of the appeal MUST be filed with the Commission AND with the agency within 30 days of the date this appeal is filed. Making a knowingly false statement on this form is punishable by law. See 18 U.S.C. § 1001.

**Privacy Act Statement**

*(This form is covered by the Privacy Act of 1974. Public Law 93-597. Authority for requesting the personal data and the use thereof is given below.)*

1. **Form Number/Title/Date:** EEOC Form 573, Notice of Appeal/Petition (April 1992 edition).

2. **Authority:** 42 U.S.C. § 2000e-16.

3. **Principle Purpose:** The purpose of this questionnaire is to solicit information to enable the Commission to properly and efficiently adjudicate appeals filed by Federal employees, former Federal employees, and applicants for Federal employment.

4. **Routine Uses:** Information provided on this form will be used by Commission employees to determine (a) the appropriate agency from which to request relevant files; (b) whether the appeal is timely; (c) whether the Commission has

jurisdiction over the issue(s) raised in the appeal; and (d) generally to assist the Commission in properly processing and deciding appeals. Decisions of the Commission are final administrative decisions, and such as, are available to the public under the provisions of the Freedom of Information Act. Some information may also be used in de-personalized form as a database for statistical purposes.

5. **Whether Disclosure is Mandatory or Voluntary and Effect on Individual for not Providing Information:** Since your appeal is voluntary action, you are not required to provide any personal information in connection with it. However, failure to supply the Commission with the requested information could hinder timely processing of your case, or even result in the rejection or dismissal of your appeal.

| 13. Signature of Appellant or Appellant's Representative | Date<br>7/23/03 |
|---|---|

Send Your Appeal to:

THE EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
OFFICE OF FEDERAL OPERATIONS
PO BOX 19848
WASHINGTON DC 20036-9848

| For EEOC Use Only | OFO Docket No |
|---|---|

PS Form **3573**, June 2001

UNITED STATES OF AMERICA
EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
OFFICE OF FEDERAL OPERATIONS

2003 JUL 24  A 8:

RECEIVED

_____
DAVID POEHLER                    /
Complainant                      /
                                 /  EEOC NO. 160-A2-8133X
v.                               /  AGENCY NO. 1B-012-0026-99
                                 /
JOHN POTTER, POSTMASTER          /
GENERAL, USPS                    /
Respondent                       /
_____/

COMPLAINANT'S APPEAL FROM JUDGMENT

COMES NOW THE COMPLAINANT and appeals from the
final decision and order, entered by Administrative Law
Judge Kathleen Mearn Clarke on 6/26/03 and the Agency's
Notice of Final Decision, mailed on 7/01/03, and received by
the Complainant and his counsel on 7/5/03.

**BASIS FOR APPEAL**

**NEW INFORMATION:**

**CASE SUMMARY**

The Complainant left the Agency in December, 1996 and
requested reinstatement in August, 1997, having been
separated from the USPS for less than fifty-two (52) weeks.
The Complainant had been a management level Supervisor of
Customer Service between 1993 and December, 1996, when
separated from the Agency, and anticipated that he would be
reinstated at the same Supervisory Level, upon his return.

The Complainant was reinstated as a Part Time Flexible
(PTF) Clerk, Postal Distributor, Grade 5, at the Bulk Mail
Center (BMC). Upon inquiring of BMC Plant Manager, Robert
Koestner, as to Supervisor Positions, the Complainant was
informed that everyone who was to be appointed to a
Supervisor Position had to take and pass the Associate
Supervisor Training Program (ASTP). The Complainant took
the exam but it was alleged that he did not receive a
passing score.

1

On March 10, 1999, the Complainant learned that Ms. Suzanne Bowes, a 25 year old PTF Level 4 Mailhandler from the BMC, had been appointed as Supervisor (Level 16) at the White River Junction, VT, facility, and filed his Complaint, alleging age (D.O.B. 4/19/50) and sex (M) discrimination.

The Agency, as part of its defense, stated that the ruling as to the ASTP program pertained only to the 010 and 011 Areas, and that Mr. Koestner would have no reason or duty to inform the Complainant as to differing requirements in other areas.  The Complainant relied upon the statement made to him by MDO Koestner, did not apply for the White River Junction Supervisor's position, and was aggrieved upon learning of the appointment of the young woman, who was less qualified for the position than he, having had only acting supervisory experience, in the past.

NEW AND RELEVANT INFORMATION

a)  The investigation conducted by the EEO failed to reveal several important facts:

1.  Another former supervisor, Richard Cowley, separated from the Agency for one and one half years (>52  Weeks), was reinstated by MDO Koestner to his former supervisory position at the Riverdale Facility, within the 010-011 area, and was not required to take the ASTP.  Mr. Cowley is now a supervisor at the East Longmeadow (010-011) facility.

2.  Sheri Kania, a Level 5 clerk, returned to the BMC facility (011) in late 1999 from a Florida USPS facility. Ms. Kania, who had acting supervisor experience, was appointed as a Maintenance Operations Supervisor at the Springfield BMC, but was not required to take the ASTP as a condition of her employment.  Ms. Kania is under 40 years of age, and has several relatives highly placed in Management at the BMC facility.

3.  Mr. Poehler, the Complainant, was never again allowed to take the ASTP exam, and the BMC now claims that the exam is presently not being given at the BMC because they have been informed that they have too many supervisors.

2

4.  Raymond Hearn, the son of MDO Wayne Hearn (010-011 Area), was given multiple opportunities to take the ASTP exam after failing the exam the first time.  Raymond Hearn is under 40 years of age.

5.  Similarly, Ms. Robin Belville failed the ASTP exam, was afforded additional opportunity to take the exam, and was appointed on 7/12/03 as EAS 17, Customer Service Representative at the Riverdale Installation (010-011 area).

**IMPACT OF THE NEW INFORMATION**

a)  The Complainant was treated differently from similarly situated others at his own facility.  Ms. Bowes was given different information than that provided to the Complainant; Mr. Cowley was reinstated as a supervisor after being separated from the Agency for more than 52 weeks without being required to take the ASTP exam; Ms. Kania was appointed as supervisor without being required to take the ASTP exam; and Mr. Hearn and Ms. Belville were offered multiple opportunities to take the ASTP exam.

The Complainant is an aggrieved employee who has suffered a present harm with respect to a term, condition or privilege of his employment, for which there is a remedy. *Diaz v. Department of the Air Force,* EEOC Request No. 05931049 (April 21, 1994).

b)  The adverse personnel actions and changes in the terms and conditions of his employment, suffered by the Complainant, were more disruptive than a mere inconvenience or alteration of job responsibilities, as they have cost him thousands of dollars in lost salary since he returned to the Agency.  Further, the actions are neither too trivial or inconsequential to rise to the level of an "adverse" employment action. *Shabat v. Blue Cross Blue Schield of the Rochester Area,* 925 F. Supp 977, 989 (W.D.N.Y., 1996), aff'd, 108 F.3d 1370 (2nd Cir. 1997).

c)  MDO Koestner's articulated legitimate nondiscriminatory reason for the Agency's reason in providing the information it did to the Complainant was that MDO Koestner believed "that the Complainant was inquiring about supervisory positions at the Springfield BMC."  The new information indicates that even if MDO Koestner believed that the

3

Complainant's inquiry related *only* to the Springfield Performance Area, the information he provided to the Complaint was factually, substantially and materially incorrect, as other, less qualified and younger personnel were being treated differently than the Complainant.

## CONCLUSION

Based upon new information, not previously uncovered by the EEOC investigation of this matter, the Complainant respectfully requests that the Decision and Order of the Commission be set aside and that the matter be reopened for further investigation and hearings.

Respectfully Submitted,

THE COMPLAINANT
BY HIS ATTORNEY

MARY-ANN L. LANE, ESQ.                    7/22/03
LANE LAW OFFICES                          Date:
1380 Main Street, Ste. 306
Springfield, MA 01103
Tel: 1-413-732-0320
Fx: 1-413-732-0628
BBO# 640227

## CERTIFICATION OF SERVICE

I hereby certify that a true and complete copy of the foregoing has been served upon the Manager, EEO Compliance & Appeals Processing Ctr. USPS, Windsor, CT, by first class mail, postage prepaid, this 22nd day of July, 2003.

Mary-Ann L. Lane, Esq.

4



# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
### Office of Federal Operations
### P.O. Box 19848
### Washington, D.C. 20036

David F. Poehler,
Complainant,

v.

John E. Potter,
Postmaster General,
United States Postal Service,
Agency.

Appeal No. 01A34442

Agency No. 1B-012-0026-99

Hearing No. 160-A2-8133X

## DECISION

Pursuant to 29 C.F.R. § 1614.405, the Commission accepts the complainant's appeal from the agency's final order in the above-entitled matter. Complainant alleged that the agency had discriminated against him on the bases of sex (male) and age (D.O.B. April 19, 1950) when he was made aware that a mail handler had been promoted to supervisor despite not completing the Associate Supervisor Program, while complainant had been advised that he had to complete the Program in order to be promoted, thereby causing him not to apply for the supervisor position.

After a review of the record in its entirety, including consideration of all statements submitted on appeal, it is the decision of the Equal Employment Opportunity Commission to affirm the agency's final order, because the Administrative Judge's issuance of a decision without a hearing was appropriate and a preponderance of the record evidence does not establish that discrimination occurred.

## STATEMENT OF RIGHTS - ON APPEAL

### RECONSIDERATION (M0701)

The Commission may, in its discretion, reconsider the decision in this case if the complainant or the agency submits a written request containing arguments or evidence which tend to establish that:



2                                    01A34442

1.    The appellate decision involved a clearly erroneous interpretation of material fact
      or law; or

2.    The appellate decision will have a substantial impact on the policies, practices, or
      operations of the agency.

Requests to reconsider, with supporting statement or brief, must be filed with the Office of
Federal Operations (OFO) **within thirty (30) calendar days** of receipt of this decision or **within
twenty (20) calendar days** of receipt of another party's timely request for reconsideration. *See*
29 C.F.R. § 1614.405; Equal Employment Opportunity Management Directive for 29 C.F.R. Part
1614 (EEO MD-110), 9-18 (November 9, 1999). All requests and arguments must be submitted
to the Director, Office of Federal Operations, Equal Employment Opportunity Commission, P.O.
Box 19848, Washington, D.C. 20036. In the absence of a legible postmark, the request to
reconsider shall be deemed timely filed if it is received by mail within five days of the expiration
of the applicable filing period. *See* 29 C.F.R. § 1614.604. The request or opposition must also
include proof of service on the other party.

Failure to file within the time period will result in dismissal of your request for reconsideration
as untimely, unless extenuating circumstances prevented the timely filing of the request. Any
supporting documentation must be submitted with your request for reconsideration. The
Commission will consider requests for reconsideration filed after the deadline only in very limited
circumstances. *See* 29 C.F.R. § 1614.604(c).

### COMPLAINANT'S RIGHT TO FILE A CIVIL ACTION (S0900)

You have the right to file a civil action in an appropriate United States District Court **within
ninety (90) calendar days** from the date that you receive this decision. If you file a civil action,
you must name as the defendant in the complaint the person who is the official agency head or
department head, identifying that person by his or her full name and official title. Failure to do
so may result in the dismissal of your case in court. "Agency" or "department" means the
national organization, and not the local office, facility or department in which you work. If you
file a request to reconsider and also file a civil action, **filing a civil action will terminate the
administrative processing of your complaint.**

### RIGHT TO REQUEST COUNSEL (Z1199)

If you decide to file a civil action, and if you do not have or cannot afford the services of an
attorney, you may request that the Court appoint an attorney to represent you and that the Court
permit you to file the action without payment of fees, costs, or other security. *See* Title VII of
the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*; the Rehabilitation Act of
1973, as amended, 29 U.S.C. §§ 791, 794(c). **The grant or denial of the request is within the**

3                                    01A34442

sole discretion of the Court. Filing a request for an attorney does not extend your time in which to file a civil action. Both the request and the civil action must be filed within the time limits as stated in the paragraph above ("Right to File A Civil Action").

FOR THE COMMISSION:

*Carlton M. Hadden*

Carlton M. Hadden, Director
Office of Federal Operations

OCT 2 7 2003
Date

## CERTIFICATE OF MAILING

For timeliness purposes, the Commission will presume that this decision was received within five (5) calendar days after it was mailed. I certify that this decision was mailed to complainant, complainant's representative (if applicable), and the agency on:

OCT 2 7 2003
Date

*L. Nuong*

Equal Opportunity Assistant

Due 6/22/01



**UNITED STATES POSTAL SERVICE**

**EEO Complaint of Discrimination in the Postal Service**
*(See Instructions and Privacy Act Statement on Reverse)*

| | | |
|---|---|---|
| 1. Name<br>Poehler, David T. | 2. SSN<br>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 | 3. Case No.<br>1B-012-0034-01 |

| | |
|---|---|
| 4a. Mailing Address (Street or P.O. Box)<br>29 Beauregard Street | 4b. City, State and ZIP + 4<br>Indian Orchard, MA  01151 |

| | | |
|---|---|---|
| 5. Email Address *<br>-- | 6. Home Phone<br>( 413 ) 543-4955 | 7. Work Phone<br>(413 )785-6313 |

| | | |
|---|---|---|
| 8. Position Title (USPS Employees Only)<br>Clerk | 9. Grade Level (USPS Employees Only)<br>PS05 | 10. Do You Have Veteran's Preference Eligibility?<br>☑ Yes   ☐ No |

| 11. Installation Where You Believe Discrimination Occurred (Identify Installation, City, State, and ZIP+4) | 12. Name & Title of Person(s) Who Took the Action(s) You Allege Was Discriminatory |
|---|---|
| Springfield BMC<br>190 Fiberloid Street<br>Springfield, MA  01152 | C.Clark, M.Sales, E.Maio, Alan Hearn and Management which allowed Emery Delivery Supers to become USPS Supervisors w/o taking exam |

| | |
|---|---|
| 13a. Name of Your Designated Representative<br>M.A. Lane, Esq./John Petrin | 13b. Title<br>Attorney/ Co worker |

| | |
|---|---|
| 13c. Mailing Address (Street or P.O. Box)<br>1380 Main St., Suite 306 | 13d. City, State and ZIP + 4<br>Springfield, MA  01103 |

| | |
|---|---|
| 13e. Email Address * | 13f. Home Phone<br>( ) |
| | 13g. Work Phone<br>(413 )732-0320 |

Providing this information will authorize the Postal Service to send important documents electronically.

RECEIVED

USPS SPRINGFIELD DISTRICT

| 14. Type(s) of Discrimination You Are Alleging | | 15. Date on Which Alleged Act(s) of Discrimination Took Place |
|---|---|---|
| ☐ Race (Specify):<br>☐ Color (Specify):<br>☐ Religion (Specify):<br>☐ National Origin (Specify): | ☐ Sex (Specify):<br>☐ Age (40+) (Specify):<br>☑ Retaliation (Specify Prior EEO Activity): for<br>    orig case<br>☐ Disability (Specify): | Consolidated claims 4/27/01, 5/2/01, 5/10/01 Orig. Case #<br>1B-012-0024-99 |

16. Explain the specific action(s) or situation(s) that resulted in you alleging that you believe you were discriminated against (treated differently than other employees or applicants) because of your race, color, religion, sex, age (40+), national origin, or disability. *Note that if your allegation is like or related to a previous complaint, that complaint may be amended. 29 C.F.R. § 1614.106(d)*

Plaintiff was entitled to return to prior position as supervisor, but was informed that all personell had to take supervisor exam, a female employee returning to job was allowed to resume supervisor position w/o taking exam. Filed EEOC complaint, 1996, and has subsequently been retaliated against which resulted in complaints filed 4/27, 5/2 and 5/10/2001.

17. What Remedy Are You Seeking to Resolve this Complaint?

1.  Actual damages; 12/12/96 - 8/2/97 = $32,153 + 8/399 - 5/3/2001 = $52,500 plus $13,333 for 4 months disability = $97,986 (Difference betw Lev 5, Lev.16). Consequential damages, pain, suffering = $350,000.00  Appointment as super-visor, northwest, CT, within 50mi from Springfield; all other rights and benefits, to which the claimant is entitled.

| 18. Did You Discuss Your Complaint with a Dispute Resolution Specialist or a REDRESS Mediator?<br>☑ Yes (Date you received the Notice of Final Interview): 6/7/01 | Formal Complaint<br>Page 3 of 5 |
|---|---|

| 19a. Signature of Dispute Resolution Specialist<br>*Katherine G. Montague* | 6/7/01 |
|---|---|
| 20. Signature of Complainant of Complainant's Attorney<br>*Mary-Ann R. Lane, Esq.* | 21. Date of this Complaint<br>6/20/01 Consolidation |

PS Form 2565, March 2001 (Page 1 of 2)

 

NORTHEAST AREA OFFICE


**UNITED STATES**
**POSTAL SERVICE™**

**UNITED STATES POSTAL SERVICE**
**EQUAL EMPLOYMENT OPPORTUNITY CASE**
**IN THE MATTER OF:**

| | | |
|---|---|---|
| David F. Poehler, | | |
| Complainant | ) | **FORMERLY** |
| | ) | **Case NO.: 1B-012-0056-01** |
| v. | ) | |
| | ) | **Filed on September 13, 2001** |
| John E. Potter, | ) | |
| Postmaster General, | ) | |
| Respondent | ) | |

**ACKNOWLEDGEMENT OF CONSOLIDATION**

The Postal Service is in receipt of your formal complaint referenced above. Be advised that the Postal Service is required to consolidate for joint processing two or more complaints of discrimination filed by the same complainant in accordance with Equal Employment Opportunity Commission (EEOC) Regulation 29 C.F.R. Part 1614.606.

**Thus, the above-referenced formal complaint has been consolidated into your EEO Complaint Numbered 1B-012-0034-01, filed on June 20, 2001, in accordance with the above regulation and EEOC's Management Directive 110, Chapter 5, Section III, C. Your claims will be investigated together in the same investigative file.**

As a result, the following additional claim(s) is/are accepted for investigation and further processing:

The complainant claims discrimination in retaliation for prior EEO activity when on July 18, 2001, a 7-Day Suspension held in abeyance as a reduction to his Proposed Removal, was invoked.

If you do not agree with the above-defined claim(s), you must provide me with your objections, in writing, within seven (7) calendar days from the date of your receipt of this letter.

Issues to be Investigated
Page _1_ of _16_

6 GRIFFIN ROAD N
WINDSOR CT 06006-7000

 

**Page 2**

NOTE:  If your complaint involves an allegation of age discrimination, the Postal Service is required by the Age Discrimination in Employment Act of 1967, as amended, to advise you that you may consult with an attorney should you desire to do so before signing any agreement resolving your complaint of age discrimination.

Although you named John Petrin as your representative in your formal complaint, the Postal Service recognizes Attorney Mary Ann Lane as your representative because Attorney Lane is your representative in EEO Complaint Number 1B-012-0034-01.

When a complaint has been consolidated with an earlier filed complaint, the investigation must be completed within the earlier of 180 days after the filing of the last complaint, or 360 days after the filing of the original complaint.  You may request a hearing after 180 days have passed since the filing of the original complaint, even if the investigation is not completed.  Please refer to Acceptance of Complaint document concerning information as to how to request a hearing before an Administrative Judge of the EEOC.

Robert S. Hylen                                    Date: October 4, 2001
Manager, EEO Compliance and Appeals
Appeals Processing Center
6 Griffin Road North
Windsor, CT  06006-7052

Enclosures/Certificate of Service
          EEO Dispute Resolution Specialist's Inquiry Report

Issues to be Investigated
Page _2_ of _16_

 

### CERTIFICATE OF SERVICE

For timeliness purposes, it will be presumed that this document was received within five (5) calendar days after it was mailed.  I certify that on this date, this document was mailed to the following parties:

**Mary-Ann Lane, Attorney Representative**
1380 Main ST Ste 306
Springfield MA   01103-1619


David F. Poehler, Complainant
29 Beauregard ST
Springfield MA   01151-1601


Manager, EEO Dispute Resolution
190 Fiberloid Street
Springfield MA  01152-9411

Peter Ertel
EEO Complaints Investigator
Southern CT P&DC
24 Research PKWY
Wallingford CT  06492-9021


Date     OCT  4 2001     _____

Linda Greaney
SR EEO Complaints Investigator
Appeals Processing Center
6 Griffin Road North
Windsor CT  06006-7052


Issues to be investigated
Page _3_ of _16_

NORTHEAST AREA OFFICE



**UNITED STATES
POSTAL SERVICE**™

# UNITED STATES POSTAL SERVICE
# EQUAL EMPLOYMENT OPPORTUNITY CASE
# IN THE MATTER OF:

David F. Poehler,
**Complainant**                    )

                                   )          **Case NO.: 1B-012-0034-01**

**v.**                             )

                                   )          **Filed on June 20, 2001**

John E. Potter,                    )
**Postmaster General,**            )
**Respondent**                     )

## ACKNOWLEDGEMENT OF AMENDMENT

The Postal Service has received your August 31, 2001 request for EEO counseling. The Postal Service believes that the claim(s) raised in your request for counseling are sufficiently like or related to the claim(s) raised in your formal complaint referenced above, and that it/they should be treated as an amendment to that complaint. See Title 29, Code of Federal Regulations, Part 1614.106(d) and (e), and EEOC's Management Directive 110, Chapter 5, Section III.B.1.

As a result, the following claim(s) raised in your request for counseling is/are accepted for investigation, as follows:

The complainant claims discrimination in retaliation for prior EEO activity, when (1) on or about August 30, 2001, Acting Manager/Distribution Operations AH threatened him regarding his EEO activity; and (2) he was denied overtime and holiday work during the Labor Day 2001 holiday weekend.

If you do not agree with the above-defined claim(s), you must provide me with your objections, in writing, within seven (7) calendar days from the date of your receipt of this letter.

NOTE: If your complaint involves a claim of age discrimination, the Postal Service is required by the Age Discrimination in Employment Act of 1967, as amended, to advise you that you may consult with an attorney should you desire to do so, before signing any agreement resolving your complaint of age discrimination.

Issues to be Investigated
Page _4_ of _16_

6 GRIFFIN ROAD N
WINDSOR CT 06006-7000

Page 2

Although you named John Petrin as your representative on your pre-complaint document, PS Form 2564-A, the Postal Service recognizes Attorney Mary Ann Lane as your representative because Attorney Lane represents you in the instant complaint.

The investigation must now be completed within the earlier of 180 days of this amendment, or 360 days from the date the original complaint was filed, except that you may request a hearing on the original complaint and amendments to it at any time after 180 days from the date the original complaint was filed. Please refer to the original Acceptance of Complaint document for information concerning how to request a hearing. Be advised that the mailing address of the EEOC's New York District Office has been changed to P O Box 1748, New York NY 10116-1748.

Robert S. Hylen                                    Date: October 9, 2001
Manager, EEO Compliance and Appeals
Appeals Processing Center
6 Griffin Road North
Windsor, CT 06006-7052

Attachment/Certificate of Service

Issues to be Investigated
Page _5_ of _16_

## CERTIFICATE OF SERVICE

For timeliness purposes, it will be presumed that this document was received within five (5) calendar days after it was mailed. I certify that on this date, this document was mailed to the following parties:

**Mary-Ann Lane, Attorney Representative**
1380 Main ST Ste 306
Springfield MA 01103-1619

David F. Poehler, Complainant
29 Beauregard ST
Springfield MA 01151-1601

Manager, EEO Dispute Resolution
190 Fiberloid Street
Springfield MA 01152-9411

Peter Ertel
EEO Complaints Investigator
Southern CT P&DC
24 Research PKWY
Wallingford CT 06492-9021

Date     OCT  9 2001

Linda Greaney
SR EEO Complaints Investigator
Appeals Processing Center
6 Griffin Road North
Windsor CT 06006-7052

Issues to be Investigated
Page 6 of 16

NORTHEAST AREA OFFICE



**_UNITED STATES_**
**POSTAL SERVICE**™

# UNITED STATES POSTAL SERVICE
## EQUAL EMPLOYMENT OPPORTUNITY CASE
### IN THE MATTER OF:

| | | |
|---|---|---|
| **David F. Poehler,** | ) | |
| **Complainant** | ) | |
| | ) | **Case  NO.: 1B-012-0034-01** |
| **v.** | ) | |
| | ) | **Filed on June 20, 2001** |
| **John E. Potter,** | ) | |
| **Postmaster General,** | } | |
| **Respondent** | ) | |

## ACKNOWLEDGEMENT OF AMENDMENT

The Postal Service has received your October 9, 2001 request for EEO counseling. The Postal Service believes that the claim(s) raised in your request for counseling are sufficiently like or related to the claim(s) raised in your formal complaint referenced above, and that it/they should be treated as an amendment to that complaint. <u>See</u> Title 29, Code of Federal Regulations, Part 1614.106(d) and (e), and EEOC's Management Directive 110, Chapter 5, Section III.B.1.

As a result, the following claim(s) raised in your request for counseling is/are accepted for investigation (in addition to those already accepted for investigation), as follows:

The complainant claims discrimination based on his mental and physical disabilities, and in retaliation for prior EEO activity, when on September 29, 2001, he was issued a Notice of 14-Day Suspension, charging him with failure to be regular in attendance.

If you do not agree with the above-defined claim(s), you must provide me with your objections, in writing, within seven (7) calendar days from the date of your receipt of this letter.

NOTE:  If your complaint involves a claim of age discrimination, the Postal Service is required by the Age Discrimination in Employment Act of 1967, as amended, to advise you that you may consult with an attorney should you desire to do so, before signing any agreement resolving your complaint of age discrimination. **Issues to be Investigated
Page  7  of 16**

6 GRIFFIN ROAD N
WINDSOR CT 06006-7000

Page 2

Although you have named John Petrin as your representative on your pre-complaint document, PS Form 2564-A, the Postal Service recognizes Attorney Mary Ann Lane as your representative because Attorney Lane represents you in the instant complaint.

The investigation must now be completed within the earlier of 180 days of this amendment, or 360 days from the date the original complaint was filed, except that you may request a hearing on the original complaint and amendments to it at any time after 180 days from the date the original complaint was filed.  Please refer to the original Acceptance of Complaint document for information concerning how to request a hearing.  Be advised that the mailing address of the EEOC's New York District Office has been changed to 201 Varick ST, Suite 1009, New York NY 10014-7442.

Robert S. Hylen
Manager, EEO Compliance and Appeals
Appeals Processing Center
6 Griffin Road North
Windsor, CT  06006-7052

Date: November 14, 2001

Attachment/Certificate of Service

Issues to be Investigated
Page _8_ of _16_

## CERTIFICATE OF SERVICE

For timeliness purposes, it will be presumed that this document was received within five (5) calendar days after it was mailed.  I certify that on this date, this document was mailed to the following parties:

**Mary Ann Lane, Attorney Representative**
1380 Main ST Ste 306
Springfield MA   01103-1619

David F Poehler, Complainant
29 Beauregard ST
Springfield MA   01151-1601

Manager, EEO Dispute Resolution
190 Fiberloid Street
Springfield MA  01152-9411

Peter Ertel
EEO Complaints Investigator
Southern CT P&DC
24 Research PKWY
Wallingford CT   06492-9021

Date        NOV 1 4 2001

Linda Greaney
SR EEO Complaints Investigator
Appeals Processing Center
6 Griffin Road North
Windsor CT   06006-7052

Issues to be investigated
Page  9  of  16



**U.S. Postal Service**
**EEO Dispute Resolution Specialist's (DRS) Inquiry Report**

| | |
|---|---|
| | **Case No.** 1B-012-0034-01 |

**NOTICE OF RESTRICTED USAGE**

Access to, and usage of, this EEO report is restricted by both the Freedom of Information Act and the Privacy Act to: (1) the complainant and his or her representative, and (2) government officials who must have access to the files to discharge their OFFICIAL duties. The report must be safeguarded. Willful violations of these requirements are subject to criminal penalties (5 U.S.C. 552a(i)).

## Complainant

**Name** *(Last, First, MI)*
Poehler, David F.

**Social Security No.**
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

**Home Address** (No., Street, City, State, Zip +4)
28 Beauregard Street
Indian Orchard, MA 01151-1601

| **Home Telephone No.** | **Email Address** | **Office Telephone No.** |
|---|---|---|
| ( 413 ) 543-4955 | | ( 413 ) 785-6313 |

| **Position Title** Clerk | **Grade Level** PS-05 | **Tour** 1 | **Duty Hours** 0000 - 0830 |
|---|---|---|---|

| **Off Days** *(For Tour I, record of nights)* Su/Mo | **Is EEO Poster 72 on display in Complainant's facility?** ☐ Yes, verified on _____6/7/01_____ (date) ☐ Not verified |
|---|---|

| **Preference Eligible** ☐ Yes ☐ No | **Mixed Case** ☐ Yes ☐ No | **MSPB Appeal Filed?** ☐ Yes ☐ No If Yes, Date Filed: |
|---|---|---|

## Chronology of Informal Process

| **Date of Incident** 4/3/01 | **Date of Initial Contact with EEO Office** 4/27/01, 5/2/01, 5/10/01 | **Date of Initial Interview** 5/4/01 |
|---|---|---|

| **REDRESS™ Overview** ☑ Yes ☐ No   5/4/01 | **ADR Election/Form Signed** ☐ Yes ☑ No | **60 Day Extension Form Signed** ☑ Yes ☐ No If Yes, Expiration Date: 7/28/01 |
|---|---|---|

| **Date Complainant Signed or Received Notice of Right to File** 6/7/01 | **Date DRS Report Requested** 6/19/01 | **Date DRS Report Submitted** 6/20/01 |
|---|---|---|

## Basis for Alleged Discrimination

**Check and Particularize Each that Applies**

| | |
|---|---|
| ☐ 1. Race (Specify): | ☐ 6. Age (Specify Date of Birth): |
| ☐ 2. Color (Specify): | ☑ 7. Physical Disability (Specify): foot/elbow |
| ☐ 3. Religion (Specify): | ☐ 8. Mental Disability (Specify): stress |
| ☐ 4. Sex (Specify): | ☑ 9. Retaliation (Specify Cited Prior EEO Activity): 1B-012-0026-99 |
| ☐ 5. National Origin (Specify): | |

**Discrimination Claim(s):**

Counselor and counselee agreed to defined issues in person on 6/7/01. Counselee alleges discrimination based on disability/mental & physical and in retaliation for prior EEO activity in that (1) on 4/3/01 the 3/15/01 Notice of Proposed Removal charging him with (a) failure to comply with an official directive, and (b) absent without leave, was reduced to a 7-day suspension, (2) on 5/2/01 he became aware Emery Supervisors at the Priority Mail Center were treated more favorably when they were converted to Postal Supervisors without officially applying, taking the Postal exam, or completing the Associate Supervisor Program; and (3) on 5/10/01 Labor Relations met counselee and his union steward to discuss a November 2000 Investigation conducted by the Postal Inspectors about his disability status.

**Counselor's Report**
Page 1 of 35

**Requested Resolution**
As remedy counselee requests all rights and benefits as allowed by law.

PS Form 2570, March 2001 *(page 1 of 3)*

 

## EEO Dispute Resolution Specialist's Checklist.

Please check All That Apply.

☑ 1. I informed counselee of the impartial role of the Dispute Resolution Specialist in the EEO complaint process, explained the EEO process, and provided counselee with the booklet, *What You Need to Know About EEO* – an overview of the EEO process in the Postal Service.

☑ 2. I notified counselee of his/her right to be accompanied, represented, and advised by a representative of his/her choice at any stage in the complaint process. If counselee elected representation, I obtained the following information:

Representative's Name:   __John D. Petrin_____

Title: Co'Worker                                    Telephone Number:
                                                   413-773-3262

Fax No.                                            Email Address:

Mailing Address:

23 Warner Street, Greenfield, MA 01301-1823

☑ 3. I advised counselee of his/her right to remain anonymous during pre-complaint counseling and he/she DID __✓__ / DID NOT _____ waive anonymity.

☑ 4. I explained the privacy act notice. Counselee signed a copy of the notice prior to the interview.

☐ 5. If a mixed case, I informed counselee of the mixed case election procedures in 29 C.F.R. §1614.302.

☐ 6. If age discrimination was alleged, I informed counselee of the alternate procedures available for pursuing age claims, as outlined in 29 C.F.R. §1614.201.

☐ 7. If a sex based claim of wage discrimination was alleged under the Equal Pay Act (EPA), I advised counselee of his/her right to bypass the administrative procedure and file a civil action, as outlined in 29 C.F.R. §1614.408.

☑ 8. If discrimination based on disability was alleged I informed counselee of his/her requirement to submit documentation of his/her disability. Documentation HAS _____ HAS NOT __✓__ been submitted.

☐ 9. If counselee presented his/herself as an agent of a class, I explained the class complaint procedures and the class agent's responsibilities, as outlined in 29 C.F.R.§1614.204.

☑ 10. I informed counselee of his/her requirement to immediately notify the area Manager, EEO Compliance and Appeals and the EEOC if the representative's or his/her mailing address change.

☑ 11. I explained that I will not be the one who will make the decision on the acceptability of counselee's claim(s); but, there is a possibility that, for the reason(s) I have briefly restated below, the claim(s) will be dismissed in accordance with 29 C.F.R.1614.107.

Counselee was advised that a formal complaint can be entirely or partially dismissed if it lacked a basis, was not timely, matter already pending or previously decided; not raised during counseling.

**Counselor's Report**
**Page _2_ of _35_**

PS Form 2570, March 2001 *(page 2 of 3)*

 

## Dispute Resolution Specialist's Inquiry

Brief Summary of Inquiry (if applicable)

Management responded to counselee's allegations by saying (1) counselee was given an official directive concerning his absence from work since 11/30/00. He was asked to provide updated medical documentation or to report to work. He did neither. The reason for the proposed removal which was subsequently reduced to a 7-day suspension was based solely on his absence and failure to comply with the directive. (2) the Emery Supervisors, who were working at the Priority Mail Processing Center, were converted to Postal employees without official applying, taking the Postal exam, or completing the Associate Supervisor Porgram because they were already supervisors in the facility. All postal employees were impacted by this decision, not just counselee. (3) Labor Relations stated the meeting with counselee and his steward, on 5/10/01, was as a result of an investigation into an on-the-job injury counselee sustained on or about November, 2000. Counselee was given a discussion about the importance of reporting accidents timely. He was not disciplined, there was only an official discussion. Management is aware that counselee had an injury but not aware that he is disabled. Management is aware that counselee has prior EEO activity. His supervisor stated he knows about a prior EEO case only because counselee told him. Management denies discrimination for any reason.

## REDRESS™
(Dispute Resolution Specialist complete this section if counselee participated in ADR)

Date of mediation:                              Disposition:
                                                ☐ Resolved    ☐ Not Resolved

## Summary of Final Interview

A final interview was conducted on 6/7/01. Counselee and his representative were apprised of management's response to his allegations. PS Form 2579-A, Notice of Right to File Individual Complaint, and PS Form 2565, EEO Complaint of Discrimination in the Postal Service, was provided along with instructions for completion.

## Privacy Act Notice

Privacy Act Notice. The collection of this information is authorized by the Equal Employment Opportunity Act of 1972, 42 U.S.C. § 2000e-16; the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 633a; the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794; and Executive Order 11478, as amended. This information will be used to adjudicate complaints of alleged discrimination and to evaluate the effectiveness of the EEO program. As a routine use, this information may be disclosed to an appropriate government agency, domestic or foreign, for law enforcement purposes; where pertinent, in a legal proceeding to which the USPS is a party or has an interest; to a government agency in order to obtain information relevant to a USPS decision concerning employment, security clearances, contracts, licenses, grants, permits or other benefits; to a government agency upon its request when relevant to its decision concerning employment, security clearances, security or suitability investigations, contracts, licenses, grants or other benefits; to a congressional office at your request, to an expert, consultant or other person under contract with the USPS to fulfill an agency function; to the Federal Records Center for storage; to the Office of Management and Budget for review of private relief legislation; to an independent certified public accountant during an official audit of USPS finances; to an investigator, administrative judge or complaints examiner appointed by the Equal Employment Opportunity Commission for investigation of a formal EEO complaint under 29 CFR 1614; to the Merit Systems Protection Board or Office of Special Counsel for proceedings or investigations involving personnel practices and other matters within their jurisdiction; and to a labor organization as required by the National Labor Relations Act. Under the Privacy Act provision, the information requested is voluntary for the complainant, and for Postal Service employees and other witnesses.

| Office Address of Dispute Resolution Specialist (No., Street, City, State, and Zip + 4) | Office Address of Manager EEO Compliance & Appeals (No., Street, City, State, and Zip + 4) |
|---|---|
| PO BOX 596 WILDER VT 05088-0596 | 6 GRIFFIN ROAD NORTH WINDSOR CT 06006-7052 |
| Specialist's Office Telephone No. 802-296-3301 | Specialist's Office Hours 8:00 AM – 5:00 PM |

| Signature of EEO Dispute Resolution Specialist | Typed Name of EEO Counselor's Report Specialist | Date |
|---|---|---|
| *Katherine G. Montague* | Page_3_of_35 Katherine G. Montague | 6/21/01 |

PS Form 2570, March 2001 (page 3 of 3)

NORTHEAST AREA OFFICE

**UNITED STATES**
**POSTAL SERVICE** ™

# UNITED STATES POSTAL SERVICE
## EQUAL EMPLOYMENT OPPORTUNITY CASE
### IN THE MATTER OF:

| | | |
|---|---|---|
| David F. Poehler, | ) | |
| Complainant | ) | |
| | ) | **Case  NO.: 1B-012-0034-01** |
| v. | ) | |
| | ) | **Filed on June 20, 2001** |
| John E. Potter, | ) | |
| Postmaster General, | ) | |
| Respondent | ) | |

### PARTIAL ACCEPTANCE - DISMISSAL OF COMPLAINT

The Postal Service is in receipt of your formal EEO complaint referenced above.  In your complaint, you have raised the following claims:

The complainant claims discrimination in retaliation for prior EEO activity, when (1) on March 15, 2001, he was issued a Notice of Proposed Removal, charging him with failure to comply with an official directive and AWOL; (2) on May 2, 2001, he learned he was denied the opportunity to apply for supervisory positions when non-postal Emery Priority Mail Center supervisors were converted to career postal supervisors; and (3) on May 10, 2001, he was questioned concerning his November 2000 on-the-job injury that was investigated by the Postal Inspection Service.

Equal Employment Opportunity Commission (EEOC) Regulation 29 C.F.R. l6l4.l05(a) states that aggrieved persons who believe they have been discriminated against on the basis of race, color, religion, sex, national origin, age or handicap must consult a counselor prior to filing a complaint.  Further, EEOC Regulation 29 C.F.R. l6l4.l07(a)(1) states that the agency shall dismiss a complaint that fails to state a claim.   The Commission has long defined an "aggrieved employee" as one who suffers a present harm or loss with respect to a term, condition, or privilege of the individual's employment for which there is a remedy.   Diaz v. Department of the Air Force, EEOC Request No. 05931049, (April 21, 1994); see also Wildberger v. Small Business Administration, EEOC Request No. 05960761 (October 8, 1998).   An agency is required to address EEO complaints only when filed by an individual who has suffered direct, personal deprivation at

Issues to be Investigated
Page _10_ of _16_

6 GRIFFIN ROAD N
WINDSOR CT 06006-7000

Page 2

the hands of the employer; the agency's act must have caused some concrete effect on the aggrieved person's employment status.   Quinones v. Department of Defense, EEOC Request No. 05920051 (March 12, 1992).

In Claim (2) of your complaint, you allege that you were denied the opportunity to compete for supervisory positions when the Emery Priority Mail Center supervisors were converted to career postal supervisors. As a result of this action, however, all employees, including yourself, who potentially wished to become a postal supervisor, were denied the same opportunity. Thus, you have failed to allege or claim an individual or unique harm directed at you alone. The U. S. Supreme Court has noted that a generalized grievance shared by all or by a substantially large class of individuals is not sufficient to establish standing. Warth v. Seldin, 422 U.S. 490 (1975). As a result, you are not considered aggrieved, and Claim (2) of your complaint is dismissed for failure to state a unique claim in accordance with the above-cited regulations.

Regarding Claim (3), you allege you were questioned by the Labor Relations Office concerning an on-the-job injury you incurred in November 2000. The EEO Dispute Resolution Specialist's Inquiry Report indicates that although you were interviewed, you were given an official discussion concerning the timely reporting of on-the-job accidents. The Commission has held that complaints involving official discussions do not rise to the level of a cognizable claim, and do not render an individual aggrieved. Joan Avagliano v. U. S. Postal Service, EEOC Request No. 05950517 (July 19, 1996). The Commission has also held that if any future adverse action against you relies, in whole or in part, on the discussion, this may provide you with grounds for a new EEO complaint. As a result, a term, condition or privilege of your employment has not been measurably harmed. Because you are not considered aggrieved by this action, Claim (3) of your complaint is dismissed for failure to state a claim.

You do not have the immediate right to appeal this decision at this time in accordance with 29 C.F.R. 1614.107(b). A copy of this correspondence will be associated with the investigative file, and will become part of the record of this complaint. You have the right to submit a statement for the record providing your position on this dismissal. You should submit this statement to me at the address shown below. If you disagree with the Postal Service's reasons for dismissing this claim(s), you may raise your objections with the Administrative Judge in the event that you request a hearing on the remainder or accepted portion of your complaint, or the issue will be decided in the Postal Service's final agency decision on the complaint in the event you do not request a hearing.

Issues to be Investigated
Page  11  of  16

Page 3

## THE INVESTIGATION OF THE ACCEPTED PORTION OF YOUR COMPLAINT

Therefore, the only claim accepted for investigation and further processing is as follows:

The complainant claims discrimination in retaliation for prior EEO activity, when on March 15, 2001, he was issued a Notice of Proposed Removal, charging him with failure to comply with an official directive and AWOL.

NOTE:  If your complaint involves an allegation of age discrimination, the Postal Service is required by the Age Discrimination in Employment Act of 1967, as amended, to advise you that you may consult with an attorney should you desire to do so before signing any agreement resolving your complaint of age discrimination

If you do not agree with the defined claim(s), you must provide me with your objections, in writing, within seven (7) calendar days from the date of your receipt of this letter.

Your complaint has been assigned to a Northeast Area EEO Complaints Investigator for investigation and further processing.  You will be contacted by an Investigator to obtain your affidavit within the near future.

The investigation will be completed within 180 calendar days, depending upon the volume of workload, from the date on which you filed your formal complaint, except that you and the Postal Service may voluntarily agree, in writing, to extend the time period by up to an additional ninety (90) calendar days.

EEOC Regulations provide that if a new claim is "like or related" to a previously filed complaint, then the complaint should be amended to include that claim.  Should you seek to amend the instant complaint, any amendment would extend the time period for completing the investigation by an additional 180 days except that the investigation of this complaint and any amendments could not extend past 360 calendar days from the date on which you filed this formal complaint.  You may request to amend your complaint through your District EEO Dispute Resolution Office.

If you have a grievance pending on the same claim(s) as you have raised in this complaint, the Postal Service may, at its discretion, defer the processing of this complaint until the grievance procedure has run its course and there has been a final resolution of the grievance.  When an investigation is deferred pending the outcome of the grievance process, the 180-day time period for processing the Issues to be Investigated
Page _12_ of_16

Page 4

and does not restart until the grievance is resolved. If the Postal Service decides to defer processing of this investigation as was just described, you will be notified in writing and you will be advised of any options which you may have as a result.

When this investigation is completed, you will receive a copy of the investigative report, and you will be advised of your right to request a hearing before an Administrative Judge appointed by the Equal Employment Opportunity Commission, or of your alternative right to request a final agency decision by the Postal Service without a hearing. You may request a final agency decision without a hearing, at the appropriate time, by writing me at the following address:

> Robert S. Hylen, Manager
> EEO Compliance and Appeals
> Appeals Processing Center
> 6 Griffin Road North
> Windsor CT  06006-7052

You may request a hearing by an Administrative Judge appointed by the Equal Employment Opportunity Commission by making such a request, in writing, to the Chief Administrative Judge of the Equal Employment Opportunity Commission at the following address:

> Chief Administrative Judge
> EEOC New York District Office
> 7 World Trade Center, 18th Floor
> New York NY  10048-1102

You must make your hearing request within thirty (30) calendar days of the date on which you received the investigative report and you must provide me with a copy of that hearing request. If you have not received a copy of the investigative report and notification concerning your appeal rights within 180 calendar days from the date on which you filed your formal complaint, you may request a hearing by writing directly to the EEOC District Office shown above, with a copy to me, at any time up to thirty (30) calendar days from the date of your receipt of the report of this investigation.

If you are dissatisfied with the Postal Service's final agency decision where there has been no hearing, or with the Postal Service's final action on the decision of an Administrative Judge following a hearing, you have certain appeal rights. You may appeal a final agency decision where no hearing has been held to the Office of Federal

Issues to be Investigated
Page _13_ of _16_

Page 5

Operations of the Equal Employment Opportunity Commission, at the address shown below, within thirty (30) calendar days of the date of your receipt of the final agency decision, or you may file a civil action in the appropriate U.S. District Court within 90 calendar days of the date of your receipt of the final agency decision. You may also appeal a final action by the Postal Service implementing a decision of an Administrative Judge following a hearing to the Office of Federal Operations of the Equal Employment Opportunity Commission within thirty (30) calendar days of the date of your receipt of that final action, or you may file a civil action in the appropriate U. S. District Court within ninety (90) calendar days of the date of your receipt of the final action. Finally, you may respond to an appeal by the Postal Service in connection with its final action not to implement a decision of an Administrative Judge following a hearing, or you may file a civil action in the appropriate U. S. District Court within ninety (90) calendar days of the date of your receipt of the final action and appeal.

Any appeal to the Equal Employment Opportunity Commission should be sent to the following address:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 19848
Washington, DC   20036-9848

You must send me a copy of your appeal and any supporting documentation. In addition, you must provide proof to the Office of Federal Operations that you have sent me a copy of your appeal and any supporting documentation.

You may file a civil action in the appropriate U.S. District Court after the expiration of 180 calendar days from the date on which you filed this formal complaint if the Postal Service has not issued a final agency decision on the complaint, or if no final action has been taken on a decision by an Administrative Judge.

If you initially choose to file an appeal with the Office of Federal Operations of the Equal Employment Opportunity Commission, you may file a civil action in the appropriate U. S. District Court within ninety (90) calendar days from the date of your receipt of the decision of the Office of Federal Operations. You may also file a civil action in the appropriate U. S. District Court if you have not received a decision on your

Issues to be Investigated
Page __14__ of __16__

Page 6


appeal within 180 calendar days of the date on which you filed your appeal with the Office of Federal Operations.


for *Susan M. Filenagen*

Robert S. Hylen                                    Date: July 19, 2001
Manager, EEO Compliance and Appeals
Appeals Processing Center
6 Griffin Road North
Windsor CT 06006

Enclosures/EEO Dispute Resolution Specialist's Inquiry Report
             Certificate of Service


Issues to be Investigated
Page __15__ of __16__

# CERTIFICATE OF SERVICE

For timeliness purposes, it will be presumed that this document was received within five (5) calendar days after it was mailed. I certify that on this date, this document was mailed to the following parties:

**Mary-Ann Lane, Attorney Representative**
1380 Main ST Ste 306
Springfield MA   01103-1619

David F. Poehler, Complainant
28 Beauregard ST
Springfield MA   01151-1601

Peter Ertel USPS
EEO Complaints Investigator
Southern Connecticut P&DC
24 Research PKWY
Wallingford CT   06492-9021

Sharon Dove, Manager
EEO Dispute Resolution USPS
190 Fiberloid Street
Springfield MA 01152-9411

Manager, Human Resources
Springfield District USPS
190 Fiberloid Street
Springfield MA 01152-9400

Date ___ JUL 19 2001 ___

Linda Greaney
SR EEO Complaints Investigator
Appeals Processing Center
6 Griffin Road North
Windsor ( Issues to be Investigated
Page _16_ of _16_

U.S. Postal Service

**EEO Investigative Affidavit (Complainant)**

| | Page No. | No. Pages | Case No. |
|---|---|---|---|
| | 1 | 5 | 1B-012-0034-01 |

| 1. Affiant's Name (First, Middle, Last) | 2. Employing Postal Facility |
|---|---|
| David F. Poehler | Bulk Mail Center |

| 3. Position Title | 4. Grade Level | 5. Postal Address and Zip +4 | 6. Unit assigned |
|---|---|---|---|
| Clerk | 5 | 190 Fiberloid St. Springfield, 01152-9999 | P/L156 |

### Privacy Act Notice

**Privacy Act Notice.** The collection of this information is authorized by the Equal Employment Opportunity Act of 1972, 42 U.S.C. § 2000e-16; the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 633a; the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794a; and Executive Order 11478, as amended. This information will be used to adjudicate complaints of alleged discrimination and to evaluate the effectiveness of the EEO program. As a routine use, this information may be disclosed to an appropriate government agency, domestic or foreign, for law enforcement purposes; where pertinent, in a legal proceeding to which the USPS is a party or has an interest; to a government agency in order to obtain information relevant to a USPS decision concerning employment, security clearances, contracts, licenses, grants, permits or other benefits; to a government agency upon its request when relevant to its decision concerning employment, security

clearances, security or suitability investigations, contracts, licenses, grants or other benefits; to a congressional office at your request, to an expert, consultant or other person under contract with the USPS to fulfill an agency function; to the Federal Records Center for storage; to the Office of Management and Budget for review of private relief legislation; to an independent certified public accountant during an official audit of USPS finances; to an investigator, administrative judge or complaints examiner appointed by the Equal Employment Opportunity Commission for investigation of a formal EEO complaint under 29 CFR 1614; to the Merit Systems Protection Board or Office of Special Counsel for proceedings or investigations involving personnel practices and other matters within their jurisdiction; and to a labor organization as required by the National Labor Relations Act. Under the Privacy Act provision, the information requested is voluntary for the complainant and for Postal Service employees and other witnesses.

### Important Information Regarding Your Complaint

This PS Form 2568-A, EEO Investigative Affidavit (Complainant), and the other form mentioned below, are being provided for you to use to fully respond to the accompanying materials. Mail or deliver your completed statement to the EEO complaints investigator within 15 calendar days of the date you received the forms. Use PS Form(s) 2569, EEO Investigative Affidavit (Continuation Sheet), as needed, to complete your written statement. Remember to number the top of each page and sign and date the bottom of each page of your statement. If you return your statement by mail, the return envelope must be postmarked on or before the 15th calendar day after the date that you received the affidavit forms. Failure to complete your statement and return the forms within the allotted time period could result in your complaint being dismissed based upon your failure to proceed. EEOC complaints processing regulation, 29 C.F.R. 1614.107(a)(7), states, in part, [A complaint may be dismissed] "Where the agency has provided the complainant with a written request to provide relevant information or otherwise proceed with the complaint, and the complainant has failed to respond to the request within 15 days of its receipt, or the complainant's response does not address the agency's request, provided that the request included a notice of the proposed dismissal."

7. Statement (Use Form 2569 if additional space is required.)

Affidavit of David F. Poehler begins on Page 2.

---

**I declare under penalty of perjury that the foregoing is true and correct.**

| Affiant's Signature | Date |
|---|---|
| *David F. Poehler* | 11/1/01 |

Affidavit A
Page 6 of 25

PS Form **2568-A**, March 2001

EXHIBIT
8
1-20-06

| | Page No. | No. Pages | Case No. |
|---|---|---|---|
| **UNITED STATES** **POSTAL SERVICE** EEO Investigative Affidavit (Continuation Sheet) | 2 | | 1B-012-0034-01 |

I have been advised of my right to representation and Mary-Ann L. Lane, Esq., has assisted me with the preparation of my affidavit, which I hereby submit as being both true and correct, and which is submitted under pains and penalties of perjury.

***BACKGROUND***: I believe that I am being retaliated against for my prior submission of EEO complaints, that Management has targeted me as a "trouble maker" and is attempting to force me out of the service. I returned to the USPS in August of 1997 after a break in service of several years. Prior to that break in service, I had been a supervisor for many years, with many commendations to my credit. When I returned, I anticipated that a supervisory position would be offered to me. When I inquired as to available supervisor positions, I was informed by Manager, Robert Koestner, that I had to take the Associate Supervisor's Program. I specifically asked him if everyone was required to do this and he said, "yes." When I discovered, in March of 1999, that Suzanne L. Bowes, (PTF-4) mailhandler, had been promoted to supervisor, customer services, (level 16), without completing the Associate Supervisor Program, I filed an EEO complaint against Mr. Koestner charging that I was discriminated against because of my age and my sex. (1B-012-0026-99).

Later, I filed an EEO complaint when I discovered that former Emery employees were hired by the USPS as supervisors, without completing the Associate Supervisor Program, but this complaint was dismissed.

Here, four complaints of retaliation are consolidated.

1. ***March 15, 2001***: On this date, shortly after returning from medical leave, I was issued a Notice of Proposed Removal, charging me with failure to comply with an official directive and AWOL.

Following difficulties with Mark Sales*, I had gone to see Dr. P.J. Ramaswamy (Mercy Hospital Medical Offices) for stress. He wrote a note saying that I should stay out of work until a psychological evaluation could be scheduled. I gave the note to the medical unit and gave a copy of the note to Al Hearn on November 21, 2000, then left the building on leave, at the doctor's orders.

Affidavit_A
Page 7 of 25

I declare under penalty of perjury that the foregoing is t

Affiant's Signature

*[signature]*

11/1/01

PS Form 2569, March 2001



**UNITED STATES**
**POSTAL SERVICE®**

EEO Investigative Affidavit (Continuation Sheet)

| Page No. | No. Pag | Case No. |
|----------|---------|----------|
| 3 | | 1B-012-0034-01 |

The psychological evaluation was finally scheduled and completed but the written report had not yet been completed and I returned to work in early March, 2001. Shortly after my return, I received the Notice of Proposed Removal, signed by Al Hearn and Earnest Miao, which had been sent to my old address. The psychological report was completed prior to 3/15/01 and my doctor mailed a copy of his report to both the medical unit and MDO, Al Hearn, stating that I could return to work.

I submitted the Stage One Grievance on March 15, 2001, because I believed that the Notice was retaliatory, given that there was a doctor's note on file. The Union succeeded in getting the Notice of Removal reduced to a Seven day Suspension, which was held in abeyance. I was forced to agree that I would have no more than three absences in the next 90 day period, excluding late call-ins. Because medical documentation was in place, there should have been no disciplinary action brought against me. Even the action, itself, was inappropriate, as I should have received no more than a warning, at most.

*The difficulties with Mark Sales arose because he wrongfully informed the postal inspectors that I was committing fraud by falsifying government documents with respect to my job-related injury.

I had gotten hurt on the job as a result of "pulling #1 sacks," on August 20, 2000. I went to the Medical Unit to see Dr. Brody, who said that I had tendonitis and should perform no repetitive motions. I was placed on light duty. The Tour Supervisor, Mark Sales, came up to me and said, "How do you know that it wasn't your other job that caused the injury?" I had told Dr. Brody that I worked part time driving a truck and had asked him if he thought this would affect my injury by bothering my arm. He said, no, and that I could continue with that job. Sales saw me working my part time job and reported me to the inspectors. The inspectors went to my job site and were watching me. The inspectors went to my part time employer and confiscated my time cards, telling my employer that I was suspected of falsifying government documents. Sales, at that time, told me that the inspectors "had their ways to make Dr. Brody change his report." I filed an EEO complaint against Sales as this was yet another incident of retaliatory harassment by Management for my prior EEO activity.

I declare under penalty of perjury that the foregoing is true

Affidavit_A_
Page_8_of_25

Affiant's Signature

_Daniel F. Poehler_

PS Form 2569, March 2001

11/1/01

**UNITED STATES**
**POSTAL SERVICE®**
EEO Investigative Affidavit (̲ tinuation Sheet)

| Page No. | No. P | Case No. |
|----------|-------|----------|
| 4 | | 1B-012-0034-01 |

*2. July 18, 2001:* I had more than three absences over the next 90 days, due to increased back problems, documented for the Medical Unit by the VA Hospital physicians, who were evaluating me for increased disability due to the worsening of my back condition. Because of increased levels of stress at work, I was experiencing more frequent muscle spasms, which required me to increase my Tylenol dose, wear my back brace more frequently and to use a heating pad more often. The spasms frequently caused me to be unable to sleep because of the pain.

I was notified by mail by Al Hearn, MDO, that he was invoking the Seven Day Suspension, previously held in abeyance, because I had been absent more than three times. I was given a Seven Day Suspension, in-house (no actual time or pay loss), which was put on my record.

The purpose of placing this disciplinary action on my record was to allow Management to accelerate the next action to the next step. This action was punitive rather than corrective and was consistent with Management's retaliatory goal of forcing me out of the USPS because of my prior EEO filings. I submitted this EEO complaint, naming Al Hearn for retaliation and for violation of procedure.

*3. August 30, 2001:* At about 4:00 AM, I was walking past the Tour Supervisor's office. Al Hearn came out of the door and saw me. He said, "Thanks a lot for filing an EEO against me." I said, "You're not supposed to discuss that with me out here, besides, you know I had to put a name on it." He said, "Yeh, right." I said, "Well, too late, now." I reported this incident to my in-house EEO representative, John Petrin, who filed an EEO complaint on my behalf, for further retaliation for my EEO filings.

I believe that Al Hearn's hostility to me was as a result of both this particular EEO complaint, in which he was named, and for my previous EEO activity. I further believe that my EEO activity was the result of the retaliatory incident which I next will describe, involving MDO Hearn and the Labor Day weekend.

I declare under penalty of perjury that the foregoing is true

Affidavit_A
Page_9_of_25

Affiant's Signature

PS Form 2569, March 2001

**UNITED STATES**
**POSTAL SERVICE®**
EEO Investigative Affidavit (Continuation Sheet)

| Page No. | No. Pag | Case No. |
|---|---|---|
| 5 | | 1B-012-0034-01 |

**4.** **_Denial of Overtime and Holiday Work Pay, Labor Day Weekend, 2001:_** I had placed myself on the "overtime list" at the beginning of the quarter. Approximately two weeks before the Labor Day weekend, Al Hearn began soliciting for people interested in overtime for the holiday weekend. I informed him that I was not interested because I was going away. He said, "not a problem. I don't think the tour is going to work. On the Wednesday before the holiday weekend, I looked in the book and discovered that I was listed as, "Clerk forced in to work holiday, August 31, 2001." I went to see Al Hearn, who was in the cafeteria. I asked him why I was being forced in after I said I wasn't interested in working. He said, "I assumed you wouldn't be coming in." I said, "If I don't come in, I won't get paid for the holiday. Hearn said, "That's the way it works."

I saw Hearn again about ten minutes later. He was sitting with Bill Facto and Rosemary_____, supervisors. I said that if I was being forced in, that I wanted to work my day off (Saturday). Hearn said, "You can't. I asked why. Hearn said that the holiday schedule had already been written, and once the holiday schedule was written, he couldn't make any changes. Rosemary_____ said, "that's right, no changes allowed."

Friday morning, August 31, 2001, I got a message on my answering machine (female voice), "This is the Bulk Mail Center, you are not forced in and you don't have to work tonight."

When I got in the following Monday, I found out that other clerks who had been forced in (Brian_____, Bob Bilideau, and a third male, all three of whom are much younger than me), actually went into work Friday, were given work, and were also solicited to work Sunday/Monday, allowing them to collect both overtime and holiday pay, which was denied to me.

Clearly, there was work, and, clearly, the holiday schedule could be changed for some people, but not for me.

I found this action to be both punitive and retaliatory by Mr. Hearn, both because of my prior EEO activity and specifically, for naming him in my prior EEO complaint, herein described. I filed an EEO complaint concerning my treatment by Mr. Hearn in this matter.

I declare under penalty of perjury that the foregoing is true

Affidavit A
Page 10 of 25

Affiant's Signature

_David E. Pull_

11/11/01

PS Form 2569, March 2001

U.S. Postal Service
## Certification



C.  No.
B-012-0034-01

I have read the proceeding attached statement, consisting of _____ pages, and it is true and complete to the best of my knowledge and belief. In making this statement, I understand Section 1001, Title 18 of the U.S. Code which states:

"Whoever, in any manner within the jurisdiction of any department or agency of the United States knowingly and wilfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representation, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than 5 years, or both."

### Privacy Act Notice

**Privacy Act Notice.** The collection of this information is authorized by the Equal Employment Opportunity Act of 1972, 42 U.S.C. § 2000e-16; the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 633a; the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794a; and Executive Order 11478, as amended. This information will be used to adjudicate complaints of alleged discrimination and to evaluate the effectiveness of the EEO program. As a routine use, this information may be disclosed to an appropriate government agency, domestic or foreign, for law enforcement purposes; where pertinent, in a legal proceeding to which the USPS is a party or has an interest; to a government agency in order to obtain information relevant to a USPS decision concerning employment, security clearances, contracts, licenses, grants, permits or other benefits; to a government agency upon its request when relevant to its decision concerning employment, security clearances, security or suitability investigations, contracts, licenses,

grants or other benefits; to a congressional office at your request, to an expert, consultant or other person under contract with the USPS to fulfill an agency function; to the Federal Records Center for storage; to the Office of Management and Budget for review of private relief legislation; to an independent certified public accountant during an official audit of USPS finances; to an investigator, administrative judge or complaints examiner appointed by the Equal Employment Opportunity Commission for investigation of a formal EEO complaint under 29 CFR 1614; to the Merit Systems Protection Board or Office of Special Counsel for proceedings or investigations involving personnel practices and other matters within their jurisdiction; and to a labor organization as required by the National Labor Relations Act. Under the Privacy Act provision, the information requested is voluntary for the complainant, and for Postal Service employees and other witnesses.

### USPS Standards of Conduct

Postal Service regulations require all postal employees to cooperate in any postal investigation. Failure to supply the requested information could result in disciplinary action (ELM 666).

### Oath / Affirmation

Subscribed and (sworn) (affirmed) before me on this _____ day of _____, 20___.

Affiant's Signature (Sign in the presence of EEO Investigator)

| Signature of EEO Complaints Investigator | Signature of Affiant |

### Declaration

I declare, under penalty of perjury, that the foregoing is true and correct.

*(Affiant, sign and date if attached statement was not completed in the presence of th* **Affidavit_A**

Affiant's Signature

Dat **Page_11_of_25**

PS Form 2571, May 2001



UNITED STATES
POSTAL SERVICE®

## Agreement to Extend 180-Day EEO Investigative Process

| Case No. | |
| --- | --- |
| 1B-012-0034-01 | |
| Date Filed | |

I, _____David F. Poehler_____ in accordance with 29 C.F.R.
§1614.108(e), hereby agree to extend the time period for the investigation of my EEO complaint for an additional period not to exceed 90 calendar days. In signing this agreement, I understand that I retain my right to request a hearing by an EEOC Administrative Judge if my investigative file is not provided to me within 270 calendar days from the date I filed my formal complaint, and at anytime thereafter up to 30 calendar days after my receipt of the investigative file. I further understand that I retain the right to elect to request a final agency decision without a hearing within 30 calendar days of my receipt of the investigative file.

_Signature of Complainant_ ____[signature]____    Date ____11/1/01____

PS Form 2565-C, March 2001

Affidavit A
Page 12 of 25

## Privacy Act Notice

**Privacy Act Notice.** The collection of this information is authorized by the Equal Employment Opportunity Act of 1972, 42 U.S.C. § 2000e-16; the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 633a; the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794a; and Executive Order 11478, as amended. This information will be used to adjudicate complaints of discrimination and to evaluate the effectiveness of the EEO program. As a routine use, this information may be disclosed to an appropriate government agency, domestic or foreign, for law enforcement purposes; where pertinent, in a legal proceeding to which the USPS is a party or has an interest; to a government agency in order to obtain information relevant to a USPS decision concerning employment, security clearances, contracts, licenses, grants, permits or other benefits; to a government agency upon its request when relevant to its decision concerning employment, security clearances, security or suitability investigations,

contracts, licenses, grants or other benefits; to a congressional office at your request, to an expert, consultant or other person under contract with the USPS to fulfill an agency function; to the Federal Records Center for storage; to the Office of Management and Budget for review of private relief legislation; to an independent certified public accountant during an official audit of USPS finances; to an investigator, administrative judge or complaints examiner appointed by the Equal Employment Opportunity Commission for investigation of a formal EEO complaint under 29 CFR 1614; to the Merit Systems Protection Board or Office of Special Counsel for proceedings or investigations involving personnel practices and other matters within their jurisdiction; and to a labor organization as required by the National Labor Relations Act. Under the Privacy Act provision, the information requested is voluntary for the complainant, and for Postal Service employees and other witnesses.

**U.S. Postal Service**
**EEO Investigative Affidavit (Complainant)**

| | Page No. | No. Pages | Case No. |
|---|---|---|---|
| | 1 | 4 | 1B-012-0034-01 |

| 1. Affiant's Name (First, Middle, Last) | | | 2. Employing Postal Facility | |
|---|---|---|---|---|
| David P. Poehler | | | Springfield   BMC | |

| 3. Position Title | 4. Grade Level | 5. Postal Address and Zip +4 | 6. Unit assigned |
|---|---|---|---|
| Clerk | PSO5 | 190 Fiberloid St Springfield, MA 01152-9997 | |

**Privacy Act Notice**

Privacy Act Notice. The collection of this information is authorized by the Equal Employment Opportunity Act of 1972, 42 U.S.C. § 2000e-16; the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 633a; the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794a; and Executive Order 11478, as amended. This information will be used to adjudicate complaints of alleged discrimination and to evaluate the effectiveness of the EEO program. As a routine use, this information may be disclosed to an appropriate government agency, domestic or foreign, for law enforcement purposes; where pertinent, in a legal proceeding to which the USPS is a party or has an interest; to a government agency in order to obtain information relevant to a USPS decision concerning employment, security clearances, contracts, licenses, grants, permits or other benefits; to a government agency upon its request when relevant to its decision concerning employment, security

clearances, security or suitability investigations, contracts, licenses, grants or other benefits; to a congressional office at your request, to an expert, consultant or other person under contract with the USPS to fulfill an agency function; to the Federal Records Center for storage; to the Office of Management and Budget for review of private relief legislation; to an independent certified public accountant during an official audit of USPS finances; to an investigator, administrative judge or complaints examiner appointed by the Equal Employment Opportunity Commission for investigation of a formal EEO complaint under 29 CFR 1614; to the Merit Systems Protection Board or Office of Special Counsel for proceedings or investigations involving personnel practices and other matters within their jurisdiction; and to a labor organization as required by the National Labor Relations Act. Under the Privacy Act provision, the information requested is voluntary for the complainant, and for Postal Service employees and other witnesses.

**Important Information Regarding Your Complaint**

This PS Form 2568-A, EEO Investigative Affidavit (Complainant), and the other form mentioned below, are being provided for you to use to fully respond to the accompanying questions. Mail or deliver your completed statement to the EEO complaints investigator within 15 calendar days of the date you received the forms. Use PS Form(s) 2569, EEO Investigative Affidavit (Continuation Sheet), as needed, to complete your written statement. Remember to number the top of each page and sign and date the bottom of each page of your statement. If you return your statement by mail, the return envelope must be postmarked on or before the 15th calendar day after the date that you received the affidavit forms. Failure to complete your statement and return the forms within the allotted time period could result in your complaint being dismissed based upon your failure to proceed. EEOC complaints processing regulation, 29 C.F.R. 1614.107(a)(7), states, in part, [A complaint may be dismissed] "Where the agency has provided the complainant with a written request to provide relevant information or otherwise proceed with the complaint, and the complainant has failed to respond to the request within 15 days of its receipt, or the complainant's response does not address the agency's request, provided that the request included a notice of the proposed dismissal."

7. Statement (Use Form 2569 if additional space is required.)

Please See Attached Pages.

I declare under penalty of perjury that the foregoing is true and correct.

| Affiant's Signature | Date |
|---|---|
| *David F. Poehler* | 11/20/0  Affidavit A Page 13 of 25 |

PS Form **2568-A**, March 2001



**UNITED STATES POSTAL SERVICE®**
EEO Investigative Affidavit *(Continuation Sheet)*

| Page No. | No. | Case No. |
|---|---|---|
| 2 | 4 | 1B-012-0034-01 |

I have been advised of my right to representation and my attorney, Mary-Ann L. Lane, Esq., assisted me with this affidavit.

**Background:**

I have previously provided an affidavit (11/01/01), which addressed the first three issues of my complaint and that affidavit is attached as <u>11/01/01 SUBMISSION.</u>

I now provide an affidavit upon the fourth issue, <u>"Based upon my mental and physical disabilities, and in retaliation for my prior EEO activities, on 9/29/02, I was issued a Notice of 14-day Suspension, charging me with failure to be regular in attendance."</u>  This claim was originally designated as Case No. 1B-012-0056-01, which was filed on 9/13/01, and I received notice that it was consolidated with Case No. 1B-012-0034-01, on 10/4/01. (<u>SEE CASE CONSOLIDATION NOTICE</u>)

**Disability:**

I have been diagnosed with *Recurrent, Severe Major Depression, Generalized Anxiety Disorder and Panic without Agoraphobia* (<u>See : MEDICAL DOCUMENTATION AND DIAGNOSES).</u>  I first began having problems with major depression in 1996, as a result of job-related stress. Because of that condition, I left my job as a supervisor for the USPS. When I returned to the USPS in August, 1997, I was told that by MDO Robert Koestner I could not have a supervisor's position because every applicant had to take the newly instituted ASP test. In March, 1999, I learned that this was not true and filed an EEO Complaint (1B-012-0026-99). Since that time, my major depressive symptoms have been exacerbated as a result of constant harassment by my supervisors as a result of my EEO activity.

This disabling condition affects my ability to think clearly and to function on a day to day basis, both as a result of the depression, itself, and because of the panic attacks I frequently experience. The panic attacks leave me dizzy and disoriented and affect my ability to walk and to stand. The job-related stress, which resulted in major depression, caused the destruction of my long term relationship with my significant other and has negatively affected my ability to interact with my children on a day-to-day basis, because sometimes I am too depressed to interact, at all. The stress-related depression affects my ability to sleep, and, without medication, I am frequently unable to sleep, at all, resulting in my constantly feeling tired, drawn and irritable.

Affidavit A
Page 14 of 25

I declare under penalty of perjury that the foregoing is true and correct.

Affiant's Signature

11/20/02

PS Form 2569, March 2001



**UNITED STATES**
**POSTAL SERVICE®**
EEO Investigative Affidavit *(Continuation Sheet)*

| Page No. | No. P | Case No. |
|----------|-------|----------|
| 3 | 4 | 1B-012-0034-01 |

Because of the depression, my ability to enjoy life has been destroyed and my eating habits have been disrupted. I constantly worry about money because of my work situation and because Management continues to place me in out-of-work situations, as part of the ongoing harassment, without pay. My general mood is frequently low and dispairing and I frequently feel gray and hopeless. I have applied for workman's compensation, but the process has taken an excessive amount of time to be resolved. Some days the effort to get up or to dress is just too much for me, because I do not want to see anyone or to speak to anyone.

Without constant stress and harassment, I am able to do my job and to function, however, the constant stress and harassment that I have experienced from Management causes my depression to manifest and when that happens, my ability to perform is affected. I believe that if I were placed in a positive and non-hostile work environment, I would be able to perform my duties. I and my physicians have requested the reasonable accommodation that I be removed from my harassers, and my work area has been moved. However, since harassment continues to come from senior management, it may be necessary to seek work in a different facility, to allow the depression to be controlled.

I have previously discussed my prior EEO Activity. (See 11/01/01 Affidavit)

**USPS Incident**
On 9/29/01, I was placed, by MDO Al Hearn, on a 14 day suspension for failing to be regular in attendance. Because of the major depression resulting from constant job stress and harassment, I was unable to maintain regular attendance. I had placed the appropriate documentation for my absences with the Medical Unit, but was still given the fourteen day suspension. My Primary Care physician referred me to Psychiatrist Dierdre Reynolds, MD, who began evaluating me on 11/6/01, and who submitted an Axis I diagnosis of Severe Major Depression and Panic disorder. (See Dr. Reynolds' letter to Medical Unit Physician, Dated 1/31/02).

On 2/11/02, Dr. Brody communicated to Felicia Adamski (Labor Relations) that my medical documentation was adequate and that my psychiatrist had recommended that I be placed at a different location with different supervisors. (See Brody E-mail to Felicia Adamski, dated 2/11/02)

---

I declare under penalty of perjury that the foregoing is true.    Affidavit A
Page 15 of 25

Affiant's Signature

*[signature]*                                                        11/20/02

PS Form 2569, March 2001



| | Page No. | No. P | Case No. |
|---|---|---|---|
| **UNITED STATES POSTAL SERVICE®**<br>EEO Investigative Affidavit *(Continuation Sheet)* | 4 | 4 | 1B-012-0034-01 |

The warning, and the 7-day and 14-day suspensions were punitive rather than corrective, were harassing and retaliatory and were part of an ongoing pattern and practice of harassment, by senior Management of the USPS, both because of my job stress-caused Severe Major Depression, and because of my prior ongoing EEO activity.

### Proposed Resolution

I want to be compensated for my actual and consequential damage and for all of the pain, suffering and emotional distress I have suffered as a result of the actions of Senior Management of the USPS, which have severly damaged my health and harmed me as a person. I strongly suggest that these persons be removed from their positions of power and authority.

*******************************END*******************************************************

---

I declare under penalty of perjury that the foregoing is true    Affidavit A
Page 16 of 25

Affiant's Signature

*Daniel F. Prekler*                                    11/20/02

PS Form 2569, March 2001



U.S. Postal Service
**Certification**



Case 1B-012-0034-01

I have read the proceeding attached statement, consisting of _____ pages, and it is true and complete to the best of my knowledge and belief. In making this statement, I understand Section 1001, Title 18 of the U.S. Code which states:

"Whoever, in any manner within the jurisdiction of any department or agency of the United States knowingly and wilfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representation, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than 5 years, or both."

### Privacy Act Notice

**Privacy Act Notice.** The collection of this information is authorized by the Equal Employment Opportunity Act of 1972, 42 U.S.C. § 2000e-16; the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 633a; the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794a; and Executive Order 11478, as amended. This information will be used to adjudicate complaints of alleged discrimination and to evaluate the effectiveness of the EEO program. As a routine use, this information may be disclosed to an appropriate government agency, domestic or foreign, for law enforcement purposes; where pertinent, in a legal proceeding to which the USPS is a party or has an interest; to a government agency in order to obtain information relevant to a USPS decision concerning employment, security clearances, contracts, licenses, grants, permits or other benefits; to a government agency upon its request when relevant to its decision concerning employment, security clearances, security or suitability investigations, contracts, licenses,

grants or other benefits; to a congressional office at your request, to an expert, consultant or other person under contract with the USPS to fulfill an agency function; to the Federal Records Center for storage; to the Office of Management and Budget for review of private relief legislation; to an independent certified public accountant during an official audit of USPS finances; to an investigator, administrative judge or complaints examiner appointed by the Equal Employment Opportunity Commission for investigation of a formal EEO complaint under 29 CFR 1614; to the Merit Systems Protection Board or Office of Special Counsel for proceedings or investigations involving personnel practices and other matters within their jurisdiction; and to a labor organization as required by the National Labor Relations Act. Under the Privacy Act provision, the information requested is voluntary for the complainant, and for Postal Service employees and other witnesses.

### USPS Standards of Conduct

Postal Service regulations require all postal employees to cooperate in any postal investigation. Failure to supply the requested information could result in disciplinary action (ELM 666).

### Oath / Affirmation

Subscribed and (sworn) (affirmed) before me on this _____ day of _____, 20_____.

| | Affiant's Signature (Sign in the presence of EEO Investigator) |
|---|---|
| Signature of EEO Complaints Investigator | Signature of Affiant |

### Declaration

**I declare, under penalty of perjury, that the foregoing is true and correct.**

*(Affiant, sign and date if attached statement was not completed in the presence of the)*

Affidavit A
Page 17 of 25

| Affiant's Signature | Date : |
|---|---|
| X _David F. Poehler_ | X 11/20/02 |

PS Form 2571, May 2001

# REQUEST FOR HEARING FORM

Chief Administrative Judge
EEOC   New York District Office
33 Whitehall Street  5th Floor
New York NY 10004-2112

2004 JUL 16 : A 8: 25

RECEIVED
USPS NE AREA
APPEALS PROCESSING
WINDSOR, CT 06006-7052

Dear Sir:

I am requesting the appointment of an Administrative Judge pursuant to 29 C.F.R. 1614.108(g).  I am certifying that either more than 180 days have passed since I filed my formal EEO complaint or I have received a notice from the Postal Service that I have thirty (30) calendar days within which to request a hearing.

Complainant's Name: _David F. Poehler_

Complainant's Installation: _Bulk Mail Center, Springfield, MA_

USPS Case No.: _1B-012-0034-01_

I certify that I have sent a copy of this request for a hearing to the following person at the Postal Service:

> Manager, EEO Compliance & Appeals
> Appeals Processing Center  -  USPS
> 6 Griffin Road North
> Windsor CT 06006-7052

I understand that if I have not provided the Postal Service with a copy of this hearing request, this request will not be processed and an Administrative Judge will not be appointed or, if an Administrative Judge is appointed, my request will be placed on the inactive docket until such time as I inform the Postal Service of my request for a hearing.

Sincerely,

_Mary-Ann L. Lane, Esq._
Signature

_Mary-Ann L. Lane, Esq._
Printed Name

_1380 Main St., Ste. 806_
Street

_Springfield, MA 01103_
City/Town and Zip Code

_7/14/04_
Date





SPRINGFIELD MA 011
PM
15 JUL 2004

Manager, EEO Compl. & Appeals
Appeals Processing Ctr.- USPS
6 Griffin Rd. North
Windsor, CT 06006-7052

06006+7052    ililillulililililililililililil

2SOL-90060 TO ,ROSOИIW
ЭПISSƎƆOƆ SⱯƎԀԀⱯ
ⱯƎ ƎИ SԀSU
OƎVIƎƆƎ

2004 JUL 16  A 8: 25

LANE LAW OFFICES
Mary-Ann L. Lane, Esq.
1380 Main St., Suite 306
Springfield, MA 01103

UNITED STATES OF AMERICA
EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
BOSTON AREA OFFICE

| | |
|---|---|
| David F. Poehler,<br>Complainant<br><br>v.<br><br>John Potter, Postmaster General, United States<br>Postal Service,<br>Agency<br><br>. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

EEOC No.  160-2004-00487X
Agency No. 1B-012-0034-01

## ORDER ENTERING JUDGMENT

For  reasons set forth in the enclosed Decision, judgment in the above-captioned matter is entered in favor of the Agency. A notice to the parties explaining their appeal rights is attached to the decision.

It is so Ordered.

September 27, 2004

For the Commission:

Kathleen Mearn Clarke
Administrative Judge

UNITED STATES OF AMERICA
EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
BOSTON AREA OFFICE

| | |
|---|---|
| David F. Poehler,<br>         Complainant | ) |
| | ) |
| | ) |
|         v. | ) |
| | ) |
| John Potter, Postmaster | ) |
| General, United States | ) |
| Postal Service, | ) |
|         Agency | ) |
| . | ) |
| | ) |

EEOC No.  160-2004-00487X
Agency No. 1B-012-0034-01

Before: Kathleen Mearn Clarke
         Administrative Judge

### DECISION

### INTRODUCTION

On September 13, 2001, David F. Poehler  (hereinafter referred to as Complainant),  filed a formal EEO complaint.  Following an investigation by the Agency, Complainant requested a hearing before an EEOC Administrative Judge.  However, on August 23, 2004,  I notified the parties that a decision without a hearing may issue in this case. Both parties responded to the notice. After a careful review of the record, I find that the matter is appropriate for summary judgment in favor of the Agency.

A decision without a hearing, also known as summary judgment, is appropriate if the record shows that there is no genuine issue as to any material fact and a party is entitled to judgment as a matter of law.  There is no genuine issue of material fact if, based on the relevant evidence in the record, taken as a whole, a reasonable fact finder could not find in favor of the opposing party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986).

1

Material factual disputes include credibility disputes where two or more people have different versions of the relevant event, and the determination of that credibility dispute will affect the outcome of the case. In determining whether there are no disputed material facts, the Administrative Judge must draw all inferences from the record in the light most favorable to the party opposing summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Only disputes over facts that might affect the outcome of the case under the applicable substantive law, and not irrelevant and unnecessary factual disputes, will preclude summary judgment. *Id.*

## ISSUES

Complainant claims discrimination in retaliation for prior EEO activity, when (1) on March 15, 2001, he was issued a Notice of Proposed Removal, charging him with failure to comply with an official directive and AWOL. Complainant claims discrimination in retaliation for prior EEO activity when (2) Complainant claims discrimination in retaliation for prior EEO activity when on July 18, 2001, a 7-Day Suspension held in abeyance as a reduction to his Proposed Removal, was invoked. Further, Complainant claims discrimination in retaliation for prior EEO activity, when (3) on or about August 30, 2001, Acting Manager Distribution Operations AH threatened him regarding his EEO activity and (4) he was denied overtime and holiday work during the Labor Day 2001, holiday weekend. Finally, Complainant claims discrimination based on his mental and physical disabilities, and in retaliation for prior EEO activity, when on September 29, 2001, he was issued a Notice of 14-Day Suspension, charging him with failure to be regular in attendance See Report of Investigation (ROI), Issues to Be Investigated, p. 1,4,12.

## BACKGROUND

Complainant is employed as a Parcel Post Distribution Clerk at the Springfield Bulk Mail Facility. He claims discrimination by Alan J. Hearn, Manager, Distribution Operations. Complainant had engaged in prior EEO activity, specifically seven previous filings dating back to 1993. ROI, Ex19.

2

His most recent filing was an age discrimination charge against Robert. Koesner, Manager, filed on June 6, 1999. The subject charge was filed on June 20, 2001.

On March 15, 2001, Complainant was issued a Notice of Proposed Removal by MDO Hearn and SDO Earnest Maio after MDO Marc Sales informed postal inspectors that Complainant had falsified medical documentation. ROI, Ex.4. The record indicates that Complainant had left the building on November 21, 2000, due to stress. He gave a note from his doctor to the medical unit before he left. He said the letter stated he should remain out of work until a psychological evaluation could be scheduled. He returned to work in early March 2001, after the evaluation had been done, but before the written report was done. Shortly after his return, the Notice of Proposed Removal was issued. Complainant believed the action was retaliatory because the note was on file when the Notice was issued. He grieved the Notice and it was reduced to a 7-day suspension. ROI, Affidavit A. Ex.5. The suspension was held in abeyance. ROI, Ex 6.

Messrs. Hearn, Sales, and Maio all deny knowledge of Complainant's prior EEO activity. Mr. Hearn states that the Notice of Proposed Removal was issued for Complainant's failure to be regular in attendance. ROI, Affidavits, B,C,D.

Complainant claimed that he was denied eight hours of overtime and eight hours of penalty time over the Labor Day Weekend. He testified that he had told Mr. Hearn two weeks before Labor Day weekend that he did not want to work that weekend. However, he discovered the Wednesday before the weekend that he was being forced to work on the holiday. He questioned Mr. Hearn about it and Complainant was told on August 31st that he did not have to work the holiday. He later discovered that those who were forced to work did so on Friday and Saturday and received overtime pay. Complainant does not claim that he worked the holiday, nor does he claim that he was prevented from working on that day.

Complainant claims he suffers from physical and mental disabilities. He was diagnosed with Major Depression in 2001, has a 10% Veterans

3

Administration disability for a back impairment. He also and incurred on the job injuries to his shoulder in 2000 and a broken ankle in 2001. ROI, Supp Affidavit A. See also, Ex.c10,c 11, c12, c13.

On September 29, 2001, Complainant was issued a Notice of 14-day Suspension for failure to be regular in attendance. ROI, Ex.9. This was the reimposition of a previous notice that had been held in abeyance pursuant to a grievance settlement agreement. The agreement provided that the abeyance was conditioned upon Complainant not having more than 3 absences during the next 90 days, excluding late call-ins. Complainant admits in his affidavit to having more than 3 absences during the next 90 days. ROI, Affidavit A, p. 8-9.

### APPLICABLE LAW

For the Complainant to prevail, the evidence of record must initially establish, at least, that there is some substance to the charge. The Complainant must establish a *prima facie* case of disparate treatment; that is, a body of evidence such that, if not rebutted, a finder-of-fact could conclude that unlawful discrimination occurred. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973); *Furnco Construction Corp v. Waters,* 438 U.S. 567 (1978); *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248 (1981). This requires the Complainant to prove that he is a member of a protected group(s), the Agency's action adversely affected a term, condition or privilege of his employment and "similarly situated" employee(s) outside of his protected group(s) were treated more favorably under similar circumstances. Persons are "similarly situated" when all the relevant aspects of the Complainant's employment (i.e., same supervisor, tour, work section, installation, grade, etc.) and the comparable employee is nearly identical. *International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 335, n. 15 (1977); *Smith v. Monsanto Chemical Co.,* 770 F.2d 719, 723 (8th Cir. *1985); Murray v. Thistledown Racing Club Inc.,* 770 F.2d 63,68(6th Cir. *1985); Nix v. WLCY Radio/Rahall Communications,* 738 F. 2d 1181, 1185 (11th Cir. 1984); *Payne v. Illinois Central Gulf RR,* 665 F. Supp. 1308, 1333 (W.D. Tenn 1987). Once

4

the Complainant establishes a *prima facie* case of discrimination, the Agency must articulate a legitimate, nondiscriminatory reason for its action, which the Complainant must prove is a pretext for discrimination in order to meet her ultimate burden of proving discrimination by a preponderance of the evidence. *McDonnell Douglas Corp v. Green, supra; Furnco Construction Corp. v. Waters, supra; Texas Department of Community Affairs v. Burdine, supra.*

Complainant bears the burden of establishing that the Agency's articulated reasons are a mere pretext for discrimination. Complainant can do this either directly, by showing that a discriminatory reason more likely motivated the Agency, or indirectly by showing that the Agency's proffered explanation is unworthy of credence. *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 256 (1981). In *St. Mary's Honor Center v. Hicks*, 509 U.S. 502 (1993), *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 256 (1981). In *St. Mary's Honor Center v. Hicks,* 509 U.S. 502 (1993), the Supreme Court held that a critical factor for the fact finder in determining whether, as a matter of law, to find discrimination is not whether the employer's explanation is credible, but whether it is persuaded by the complainant that it was discrimination that motivated the employer to act as it did. According to the Court, it is not sufficient "to disbelieve the employer; the fact finder must believe the plaintiff's explanation of intentional discrimination."            Disability Discrimination

With respect to a claim of discrimination based on disability, it is well established that the burdens of proof required in a disparate treatment claim, brought pursuant to the Act are modeled after those used in Title VII law. *Prewitt v. United States Postal Service*, 662 F.2d 292, 305 n.19 (5th Cir. 1981). In order to establish a *prima facie* case of disability discrimination, the Complainant must demonstrate that: (1) he is an individual with a disability for the purposes of the Act, as defined in 29 C.F.R. §1630.2; (2) he is a qualified person with a disability, in that he is qualified for, and can perform, the essential functions of the position with or without reasonable accommodation, as specified in 29 C.F.R. §1630.2(m); (3) he was treated differently than individuals not in his protected group; and (4) the circumstances give rise to the inference that the difference in treatment was based on his disability. *See*

5

*Jasany v. United States Postal Service*, 755 F.2d 1244 (6th Cir. 1985); *Gant v. United States Postal Service*, EEOC Request No. 05910096 (July 9, 1991); *Hagen v. Department of the Interior*, EEOC Appeal No. 01941974 (March 8, 1995); *Raspanti v. Department of the Army*, EEOC Appeal No. 01942756 (March 17, 1997).

The Complainant must prove that he is a qualified individual with a disability within the meaning of the Act. EEOC regulations define an individual with a disability as one who has a physical or mental impairment, which substantially limits one, or more of that person's major life activities, has a record of such impairment, or is regarded as having such impairment. 29 C.F.R. §1630.2. "Major life activities" include such functions as caring for themselves, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working. 29 C.F.R. §1630.2(i). As such, he must be able to perform the essential elements of her position with or without a reasonable accommodation.

Retaliation

To establish a Title VII retaliation claim, a plaintiff can establish a prima facie case by establishing the following factors: (1) involvement in a protected activity; (2) an adverse employment action; and (3) a causal link between the activity and the employment action. *Ray v. Henderson*, 217 F.3d 1234, 1240(9th Cir.2000). If the plaintiff establishes the prima facie case, the burden shifts as in a disparate treatment case. *Ray v. Henderson*, 217 F.3d 1234, 1240(9th Cir.2000). The causal link can be inferred from circumstantial evidence, such as the proximity in time between the protected activity and the retaliatory employment decision. *Ray v. Henderson*, 217 F.3d 1234, 1240, 1244. (9th Cir.2000). See *Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir.1987) (holding that a two-to-three-month delay was not too long to establish a causal link sufficient to withstand summary judgment and citing with approval *Hochstadt v. Worcester. Experimental Biology, Inc.*, 425 F.Supp. 318, 324-25 (D.Mass.), aff'd, 545 F.2d 222 (1st Cir.1976) held that a six-month delay could satisfy the causation requirement). But see *Villiarimo v. Aloha Island Air*, 281 F.3d 1054, 1065 (9th Cir.2002) (nearly 18-month lapse between protected activity and adverse employment action is too long,

by itself, to give rise to an inference of causation and citing cases from other circuits with similar holdings for periods ranging from four to eight months).

## ANALYSIS AND FINDINGS

I find that the Agency's Response to Notice of Intent to Issue a Decision Without a Hearing properly sets forth the facts and applicable law and that document is incorporated herein. *See* **Attachment A.**

As set out in Attachment A, Complainant has failed to establish a prima facie case of disability discrimination as he has failed to establish that he is disabled under the Act. Complainant cites his 10% Veteran's disability designation as evidence of his disability. The fact that the Department of Veterans Affairs has determined that the Complainant suffers form a service-connected disability does not in itself mean that he is a qualified person with a disability for the purposes of the Rehabilitation Act. In order to qualify under the Act, the Complainant must still demonstrate that his disability substantially limits one of his major life activities. *Melahn v. Department of Navy*, 01832380, 1446/B4 (1985); see also *Crevier v. Postmaster General*, 01952393 (1997) (evidence of 60 percent Veterans Administration disability does not establish complainant is individual with disability); Bono v. Postmaster General, 01951113 (1997) (records establishing that complainant had 40 percent service-connected disability due to knees not sufficient where records do not describe condition or any limitation on major life activities). He has failed to do so.

Complainant cites his on the job injuries but gives no indication as to the permanence of those injuries and no indication of how the impairments substantially limit a major life activity. There is no simply no evidence to support the claim that Complainant has an impairment that substantially limits a major life activity, is regarded as having such an impairment or has a record of having such an impairment. Had he established that his impairment reached that level, he still would nor have prevailed as he failed to identify any similarly situated individual outside his protected group who was treated more favorably than he.

7

With respect to the retaliation claim, even assuming that the Agency officials accused of discrimination were aware of Complaint's 1999, charge, he cannot prevail. There is no evidence of a causal connection between the protected activity and the actions complained of here and none can be inferred from the record.

Had Complainant established prima facie cases with respect to disability or reprisal, he still would not prevail as the Agency's articulated non-discriminatory reasons for its actions, as detailed in Attachment A, have not been successfully rebutted by Complainant.

## CONCLUSION

After a careful review of the record in its entirety, including arguments and evidence not specifically addressed in this Decision, I find that there are no genuine issues of material fact in dispute or genuine issues of credibility and conclude that the Complainant failed to meet his burden of proving discrimination by a preponderance of the evidence on any alleged basis.

## NOTICE

This is a decision by an Equal Employment Opportunity Commission Administrative Judge issued pursuant to C.F.R. §1614.109(b), 109(g) or 109(i). EEOC regulations require the Agency to take final action on the complaint by issuing a final order within 40 calendar days of receipt of the hearing file and this decision. The Agency's final order shall notify the complainant whether or not the Agency will fully implement this decision, and shall contain notice of the complainant's right to appeal to the Commission, the right to file a civil action in federal district court, the name of the proper defendant in any such lawsuit and the applicable time limits for such appeal or lawsuit. A copy of the Final Order shall also be provided to the Administrative Judge.

With the exception detailed in the next paragraph, Complainant may not file an appeal to the Commission directly from this decision. Rather,

8

Complainant may appeal to the Commission within 30 calendar days of receipt of the Agency's final order concerning its implementation of this decision. If the final order does not fully implement this decision, the Agency must also simultaneously file an appeal to the Commission in accordance with 29 C.F.R. §1614.403, and append a copy of the appeal to the final order. A copy of EEOC Form 573 must be attached to the final order.

Complainant may only appeal directly from this decision in the event that the Agency has not issued its final order within 40 calendar days of its receipt of the hearing file and this decision. In this event, the complainant should append a copy of the Administrative Judge's decision to the appeal. The complainant should furnish a copy of the appeal to the opposing party at the same time it is filed with the Commission, and should certify to the Commission the date and method by which such service was made on the opposing party. All appeals to the Commission must be filed by mail, personal delivery or facsimile to the following address:

> Director
> Office of Federal Operations
> Equal Employment Opportunity Commission
> P.O. Box 19848, Washington, D.C. 20036
> Fax No. (202) 663-7022

Facsimile transmissions over 10 pages will not be accepted.

For further guidance regarding appeals, the parties may consult 29 C.F.R. §1614.401 et seq. and Chapter 10 of the Commission's Management Directive-110. These documents are available on the EEOC's website at EEOC.GOV.

9

## COMPLIANCE WITH AN AGENCY FINAL ACTION

Pursuant to 29 C.F.R. §1614.504, an Agency's final action that has not been the subject of an appeal to the Commission or civil action is binding on the Agency. If the complainant believes that the Agency has failed to comply with the terms of its final action, the complainant shall notify the Agency's EEO Director, in writing, of the alleged noncompliance within 30 calendar days of when the complainant knew or should have known of the alleged noncompliance. The Agency shall resolve the matter and respond to the complainant in writing. If the complainant is not satisfied with the Agency's attempt to resolve the matter, the complainant may appeal to the Commission for a determination of whether the Agency has complied with the terms of its final action. The complainant may file such an appeal within 30 calendar days of receipt of the Agency's determination or, in the event that the Agency fails to respond, at least 35 calendar days after complainant has served the Agency with the allegations of noncompliance. A copy of the appeal must be served on the Agency, and the Agency may submit a response to the Commission within 30 calendar days of receiving the notice of appeal.

Kathleen Mearn/Clarke

Administrative Judge

10

<u>Certificate of Service</u>

       For timeliness purposes, it will be presumed that this Decision was received within five (5) calendar days after it was mailed. I certify that on September 27, 2004  this Decision was mailed to the following parties:

David F. Poehler

61 Rest Way

Springfield, MA 01119-1730


Mary Ann Lane, Esquire

Lane Law Offices

1380 Main Street

Springfield MA 01103-1619


Wendy A. Wodarski, Esquire

USPS- Windsor Law Office

8 Griffin Road North

Windsor, CT  06006-0710


Robert S. Hylen

USPS- Windsor Law Office

8 Griffin Road North

Windsor, CT  06006-0710


_____

Kathleen Mearn Clarke

Administrative Judge

US POSTAL SERVICE
LAW DEPARTMENT

SEP 3 0 2004

WINDSOR FIELD OFFICE
WINDSOR CT   06006-0170

NORTHEAST AREA OFFICE


**UNITED STATES
POSTAL SERVICE**™

## UNITED STATED POSTAL SERVICE
## EQUAL EMPLOYMENT OPPORTUNITY CASE
## IN THE MATTER OF:

**David F. Poehler,
Complainant,**

**USPS No.  1B-012-0034-01**

**v.**

**John E. Potter,
Postmaster General,
Respondent.**

**Hearing No. 160-2004-00487X**

### Notice of Final Action

In accordance with 29 C.F.R. 1614.110(a), this is the Postal Service's Notice of Final Action in your complaint of discrimination numbered above.  In your complaint, you claim that you were subjected to discrimination in retaliation for prior EEO activity when: (1) on March 15, 2001, you were issued a Notice of Proposed Removal, charging you with failure to comply with an official directive and AWOL; (2) on July 18, 2001, a 7-Day Suspension held in abeyance as a reduction to your Proposed Removal was invoked; (3) on or about August 30, 2001, Acting Manager Distribution Operations AH threatened you regarding your EEO activity; and (4) you were denied overtime and holiday work during the Labor Day 2001 holiday weekend.  You also claim that you were discriminated against based on your mental and physical disabilities and in retaliation for prior EEO activity when (5) on September 29, 2001, you were issued a Notice of 14-Day Suspension, charging you with failure to be regular in attendance.

On September 27, 2004, the Administrative Judge assigned to your case issued a decision without a hearing (summary judgment), which was received by the Postal Service on September 29, 2004.  The Administrative Judge concluded that you had not been discriminated against.

I have reviewed the entire record, including the investigative file, and I have decided to implement the decision of the Administrative Judge.

6 GRIFFIN ROAD N
WINDSOR CT 06006-7000

**EXHIBIT**
7
1·20·04  JQP

## APPEAL RIGHTS

## APPEAL TO THE EEOC

You have the right to appeal the Postal Service's final action to the **Director, Office of Federal Operations, Equal Employment Opportunity Commission (EEOC), P.O. Box 19848, Washington, DC 20036-9848**, within 30 calendar days of your receipt of this final action. You must use PS Form 3573, a copy of which is enclosed, in connection with your appeal. You may also deliver your appeal in person or by facsimile provided that briefs filed by facsimile are ten or fewer pages in length. Any supporting statement or brief must be submitted to the EEOC within 30 calendar days of filing the appeal. Along with your appeal, you must submit proof to the EEOC that a copy of the appeal and any supporting documentation or brief were also submitted to the **Manager, EEO Compliance & Appeals, Appeals Processing Center, USPS, 6 Griffin Road North, Windsor, CT 06006-7052**. You are advised that if you file your appeal beyond the thirty (30) day period set forth in the Commission's regulations, you should provide an explanation as to why your appeal should be accepted despite its untimeliness. If you cannot explain why your untimeliness should be excused in accordance with 29 C.F.R. 1614.604, the Commission may dismiss the appeal as untimely.

## RIGHT TO FILE A CIVIL ACTION

Alternatively, you may file a civil action in an appropriate U.S. District Court within ninety (90) calendar days of your receipt of the Postal Service's final action, within ninety (90) calendar days of the EEOC's final decision on any appeal, or after one hundred and eighty (180) days from the date of filing an appeal with the EEOC if no final decision has been rendered. If you choose to file a civil action, that action should be captioned **(Your Name) v. John E. Potter, Postmaster General**. You may also request the court to appoint an attorney for you and to authorize the commencement of that action without the payment of fees, costs, or security. Whether these requests are granted or denied is within the sole discretion of the District Judge. Your application must be filed within the same ninety (90) day time period for filing the civil action.

Robert S. Hylen

Manager, EEO Compliance & Appeals

_9/30/04_
Date

Enclosures:  PS Form 3573
             Certificate of Service

 **UNITED STATES POSTAL SERVICE®**

## Notice of Appeal/Petition to the Equal Employment Opportunity Commission, Office of Federal Operations

| 1. Appellant's Name *(Last, First, MI) (Please Print or Type)* | 2. Daytime Telephone No. *(Include Area Code)* |
|---|---|

3. Home Mailing Address

| 4. Name of Attorney or Other Representative *(If any)* | 5. Telephone No. *(Include Area Code)* |
|---|---|

6. Address of Attorney or Other Representative *(If applicable)*

7. Has the Appellant Filed a *Formal Complaint* with His/Her Agency?

☐ No    ☐ Yes – Indicate the Agency's Complaint No.: _____

8. Name of Agency Being Charged with Discrimination

9. Location of Duty Station or Local Facility in Which the Complaint Arose

10. Has a *Final Decision* Been Issued by the Agency or MSPB on this Complaint?

☐ Yes *(Indicate the date the appellant received it,* _____ *, and attach a copy.)*

☐ No

☐ This Appeal Alleges a Breach of a Settlement Agreement.

11. Has a Complaint Been Filed on this Same Matter with the Commission, Another Agency, or Through Any Other Administrative or Collective Bargaining Procedure?

☐ No    ☐ Yes *(Indicate the agency or procedure, complaint/docket number, and attach a copy, if appropriate.)*

12. Has a Civil Action (Lawsuit) Been Filed in Connection with This Complaint?

☐ No    ☐ Yes *(Attach a copy of the civil action filed.)*

NOTICE: Before mailing this appeal, please be sure to <u>attach a copy of the final decision</u> from which you are appealing, if one has been issued. Any comments or brief in support of the appeal MUST be filed with the Commission AND with the agency within 30 days of the date this appeal is filed. Making a knowingly false statement on this form is punishable by law. See 18 U.S.C. § 1001.

### Privacy Act Statement

*(This form is covered by the Privacy Act of 1974. Public Law 93-597. Authority for requesting the personal data and the use thereof is given below.)*

1. Form Number/Title/Date: EEOC Form 573, Notice of Appeal/Petition (April 1992 edition).

2. Authority: 42 U.S.C. § 2000e-16.

3. Principle Purpose: The purpose of this questionnaire is to solicit information to enable the Commission to properly and efficiently adjudicate appeals filed by Federal employees, former Federal employees, and applicants for Federal employment.

4. Routine Uses: Information provided on this form will be used by Commission employees to determine (a) the appropriate agency from which to request relevant files; (b) whether the appeal is timely; (c) whether the Commission has

jurisdiction over the issue(s) raised in the appeal; and (d) generally to assist the Commission in properly processing and deciding appeals. Decisions of the Commission are final administrative decisions, and such as, are available to the public under the provisions of the Freedom of Information Act. Some information may also be used in de-personalized form as a database for statistical purposes.

5. Whether Disclosure is Mandatory or Voluntary and Effect on Individual for not Providing Information: Since your appeal is voluntary action, you are not required to provide any personal information in connection with it. However, failure to supply the Commission with the requested information could hinder timely processing of your case, or even result in the rejection or dismissal of your appeal.

| 13. Signature of Appellant or Appellant's Representative | Date |
|---|---|

Send Your Appeal to:

**THE EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
OFFICE OF FEDERAL OPERATIONS
PO BOX 19848
WASHINGTON DC  20036-9848**

| For EEOC Use Only | OFO Docket No |
|---|---|

PS Form 3573, June 2001

## CERTIFICATE OF SERVICE

For timeliness purposes, it will be presumed that this Notice of Final Action was received within five (5) calendar days after it was mailed. I certify that on this date, this Notice of Final Action was mailed to the following parties:

David F. Poehler
61 Rest Way
Springfield MA 01119-1730

Mary Ann Lane, Esq.
1380 Main Street  Suite 306
Springfield MA 01103-1646

Honorable Kathleen Mearn Clarke
Administrative Judge
JFK Federal Building  Room 475
Government Center
Boston MA 02203-0506

David J. Couture
Manager, Human Resources
Massachusetts District - USPS
74 Main Street
North Reading MA 01889-9994

Wendy A. Wodarski, Esq.
Windsor Law Office – USPS
8 Griffin Road North
Windsor CT 06006-0170


_____          _____
Manager, EEO Compliance & Appeals          9/30/04
                                            Date



**UNITED STATES POSTAL SERVICE** ®

**EEO Complaint of Discrimination in the Postal Service**
*(See Instructions and Privacy Act Statement on Reverse)*

| 1. Name David Pochler | 2. SSN 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 | 3. Case No. 1B-011-0008-03 |
|---|---|---|

| 4a. Mailing Address (Street or P.O. Box) 4 REST WAY | 4b. City, State and ZIP + 4 SPRINGFIELD, MA. 01119-1730 |
|---|---|

| 5. Email Address * | 6. Home Phone ( ) | 7. Work Phone ( ) |
|---|---|---|

| 8. Position Title (USPS Employees Only) CLERK | 9. Grade Level (USPS Employees Only) PS-05 | 10. Do You Have Veteran's Preference Eligibility? ☒ Yes  ☐ No |
|---|---|---|

| 11. Installation Where You Believe Discrimination Occurred (Identify Installation, City, State, and ZIP+4) SPRINGFIELD BMC SPRINGFIELD, MA. 01152 | 12. Name & Title of Person(s) Who Took the Action(s) You Allege Was Discriminatory RICHARD WENTZEL MDO |
|---|---|

| 13a. Name of Your Designated Representative JOHN D. PETRIN | 13b. Title CO-WORKER |
|---|---|

| 13c. Mailing Address (Street or P.O. Box) 23 WARNER ST. | 13d. City, State and ZIP + 4 GREENFIELD, MA. 01301 |
|---|---|

| 13e. Email Address * | 13f. Home Phone (413) 773-3262 | 13g. Work Phone (413) 785-6313 |
|---|---|---|

*\* Providing this information will authorize the Postal Service to send important documents electronically.*

| 14. Type of Discrimination You Are Alleging | | 15. Date on Which Alleged Act(s) of Discrimination Took Place |
|---|---|---|
| ☐ Race (Specify): | ☐ Sex (Specify): | APRIL 7, 2003 |
| ☐ Color (Specify): | ☒ Age (40+) (Specify): | |
| ☐ Religion (Specify): | ☒ Retaliation (Specify Prior EEO Activity): | |
| ☐ National Origin (Specify): | ☒ Disability (Specify): | |

16. Explain the specific action(s) or situation(s) that resulted in you alleging that you believe you were discriminated against (treated differently than other employees or applicants) because of your race, color, religion, sex, age (40+), national origin, or disability. *Note that if your allegation is like or related to a previous complaint, that complaint may be amended. 29 C.F.R. § 1614.106(d)*

ON APRIL 7, 2003 I WAS DENIED A "TRANSFER" TO A CUSTODIAN POSITION

RECEIVED
MAY 30 2003
USPS SPRINGFIELD DISTRICT
EEO OFFICE

17. What Remedy Are You Seeking to Resolve this Complaint?

ALL RIGHTS AND BENEFITS TO WHICH I AM ENTITLED TO BY LAW AND/OR REGULATION.

18. Did You Discuss Your Complaint with a *Dispute Resolution Specialist* or a *REDRESS Mediator?*
☒ Yes (Date you received the Notice of Final Interview): 5/14/03    ☐ No

| 19a. Signature of Dispute Resolution Specialist Catherine H. Montague | 19b. Date 5/14/03 |
|---|---|
| 20. Signature of Complainant or Complainant's Attorney David F. Pochler | 21. Date of this Complaint 5/29/03 |

PS Form 2565, March 2001 (Page 1 of 2)

Formal Complaint
Page 1 of 5

September 29, 2004

RECEIVED
USPS NE AREA
APPEALS PROCESSING
WINDSOR, CT 06006-7052
2004 OCT -1 A ↑ 58

Robert S. Hylen
Manager, EEO Compliance & Appeals
Appeals Processing Center – USPS
6 Griffin Road, North
Windsor, Ct  06006-7052

Re:  Agency No:  1B-011-008-03
     Complainant:  David F. Poehler

This is in regard to the above cited case.

I am in receipt of the agency's investigative report (transmittal letter dated September 23, 2004).  I am hereby requesting a final agency decision without a hearing, so I can file a civil action in the appropriate U.S. District Court.

**DAVID F. POEHLER**
61 Restway
Springfield, MA  01119-1730

Cc:  file




NORTHEAST AREA OFFICE


**UNITED STATES**
**POSTAL SERVICE™**

# UNITED STATED POSTAL SERVICE
# EQUAL EMPLOYMENT OPPORTUNITY CASE
## IN THE MATTER OF:

**David F. Poehler,**
**Complainant,**                          **Case No. 1B-011-0008-03**

**v.**                                     **Filed on May 29, 2003**

**John E. Potter,**
**Postmaster General,**
**Respondent.**

## Notice of Final Decision

This is the Postal Service's final decision in regard to your complaint of discrimination. In that complaint, you claim discrimination based on your age, disability and in retaliation for prior EEO activity, when on April 7, 2003, your request to transfer to a custodial position was denied.

Your complaint was processed by an Equal Employment Opportunity Investigator, after which a copy of the Investigative Report was transmitted to you. Following receipt of that report on or about September 28, 2004, you had 30 days in which to request a hearing before an Administrative Judge (AJ) of the Equal Employment Opportunity Commission (EEOC) or a final agency decision without a hearing. By letter dated September 29, 2004, received by the Agency on October 1, 2004, you requested a final agency decision without a hearing. This decision is being issued pursuant to your request

To prevail on a claim of unlawful discrimination, a complainant must satisfy the three-part evidentiary scheme in **McDonnell Douglas Corporation v. Green,**

6 GRIFFIN ROAD N
WINDSOR CT 06006-7000

 

David F. Poehler
Page 2

411 U.S. 792 (1973). A complainant must initially establish, by preponderant evidence, a **prima facie** case of discrimination. The **prima facie** elements are determined by the circumstances of the case and the bases of discrimination alleged. **International Brotherhood of Teamsters v. United States**, 431 U.S. 324, 358 (1977). The agency must then articulate legitimate nondiscriminatory reasons for its actions. Finally, the burden returns to the complainant to prove, by a preponderance of the evidence, that the agency's ostensibly legitimate and nondiscriminatory reasons are pretextual. **Cooper v. Federal Reserve Bank of Richmond**, 467 U.S. 867, 875 (1984); **U.S. Postal Service Board of Governors v. Aikens**, 460 U.S. 711, 715-6 (1983); **Texas Department of Community Affairs v. Burdine**, 450 U.S. 248, 253-6 (1981).

At all times, the ultimate burden of persuasion remains with the complainant. **Board of Trustees of Keene College v. Sweeney**, 439 U.S. 24, 25 N.2 (1978). This burden was reaffirmed and clarified in **St. Mary's Honor Center v. Hicks**, 509 U.S. 502 (1993). In **Hicks**, the Court held that in order to impose liability upon an employer for discriminatory employment practices there must be an ultimate finding of unlawful discrimination regardless of whether or not the employer's explanation for its action was believable.

In order to establish a **prima facie** case of disparate treatment, a complainant must demonstrate: (1) that he/she belongs to a statutorily protected group; (2) that he/she is similarly situated with employees outside his/her protected group; and (3) that he/she was treated differently than those employees. In order for two or more employees to be considered similarly situated for the purpose of creating an inference of disparate treatment, a complainant must show that all of the relevant aspects of his/her employment situation are nearly identical to those of the other employees who he/she alleges were treated differently. **Smith v. Monsanto Chemical Co.**, 770 F.2d 719, 723 (8th Cir. 1985); **Murray v. Thistledown Racing Club, Inc.**, 770 F.2d 63, 68 (6th Cir. 1985); **Nix v. WLCY Radio/Rahall Communications**, 738 F.2d 1181, 1185 (11th Cir. 1984); Payne v. Illinois Central Gulf Railroad, 655 F. Supp. 1308, 1333 (W.D. Tenn. 1987).

In an Age Discrimination in Employment Act (ADEA) case, to establish a **prima facie** case of age discrimination, the complainant must show that s/he was over forty (40) years of age, that s/he was subjected to an adverse employment action, and that s/he was treated less favorably than similarly situated employees substantially younger than her/him. **See Reeves v. Sanderson Plumbing Products, Inc.**, 530 U.S. 133 (2000); O'Conner v. Consolidated Coin Caterers Corp., 517 U.S. 308 (1996). While there is no bright-line test for what constitutes "substantially younger," that term has generally been applied to age differences in excess of five years. **See Hammersmith v. Social Security Administration** EEOC Appeal No. 01A05922 (March 6, 2002). When a complainant alleges that s/he has been disparately treated by the employing agency as a result of unlawful age discrimination, "liability depends on whether age actually motivated the employer's decision." **Reeves v. Sanderson**



David F. Poehler
Page 3

**Plumbing Prods., Inc.**, 530 U.S. 133, 141 (2000)(citing **Hazen Paper Co. v. Biggins**, 507 U.S. 604, 610 (1993)). "That is, [complainant's] age must have actually played a role in the employer's decision making process and had a determinative influence on the outcome." **Id.**

The Commission has long held that employees are similarly situated when they are subjected to the same supervisor, perform the same job function, are on the same tour of duty, and are subjected to an adverse employment action during approximately the same period. **O'Neal v. United States Postal Service**, EEOC Request No. 05910490 (July 23, 1991). The courts have held that:

> "Employees are not 'similarly situated' merely because their conduct might be analogized. Rather in order to be similarly situated, other employees must have reported to the same supervisor as the plaintiff, must have been subjected to the same standards governing performance evaluation and discipline, and must have engaged in conduct similar to the plaintiff's without such differentiating or mitigating circumstances that would distinguish their conduct or the appropriate discipline for it (emphasis furnished)." **Mazzelli v. RCA Global Communications, Inc.**, 642 F. Supp. 1531, 1547 (S.D. N.Y. 1986), Aff'd 814 F.2d 653 (2nd Cir. 1987).

In other words, "apples should be compared to apples." **Dartmouth Review v. Dartmouth College**, 889 F.2d 13, 19 (1st Cir. 1989).

Courts have adopted and applied the Title VII burdens of proof to disability discrimination. See **Norcross v. Sneed**, 755 F.2d 113 (8th Cir. 1985); **Prewitt v. United States Postal Service**, 662 F.2d 292 (5th Cir. 1981). In order to establish a **prima facie** case of disability discrimination, a complainant must prove, by a preponderance of the evidence, that he was treated differently than individuals not within his protected group, or that the agency failed to make a needed reasonable accommodation, resulting in adverse treatment of the complainant. See **Sessions v. Helms**, 751 F.2d 991, 992-3 (9th Cir.), cert. denied 474 U.S. 846 (1985). A complainant also must demonstrate a causal relationship between the disabling condition and the agency's reasons for the adverse action.

The Supreme Court has held that the determination of whether a person is an "individual with a disability" must be based on his or her condition at the time of the alleged discrimination. The positive and negative effects of mitigating measures used by the individual, such as medication or an assistive device, must be considered when deciding if he or she has an impairment that substantially limits a major life activity. **Sutton v. United Airlines, Inc.**, 527 U.S. 471 (1999); **Murphy v. United Parcel Service, Inc.**, 527 U.S. 516 (1999).




David F. Poehler
Page 4

The Office of Personnel Management regulations defining medical documentation required for a disability claim provides at 5 C.F.R. 339.102: "(a) the history of the specific medical condition(s), including references to findings from previous examinations, treatment and responses to treatment; (b) clinical findings from the most recent medical evaluation, including any of the following which have been obtained: findings of physical examination, results of laboratory tests, X-rays, EKG's and other special evaluations for diagnostic procedure, and in the case of psychiatric disease, the findings of a mental status examination and the results of psychological studies; (c) assessment of the current clinical status and plans for future treatment; (d) diagnosis; (e) an estimate of the expected date of full or partial recovery; (f) an explanation of the impact of the medical condition on the life activities both on and off the job; (g) narrative explanation of the medical basis for any conclusions that the medical condition has or has not become static or well stabilized:..."

To establish a **prima facie** case of reprisal discrimination, a complainant must show that: (1) s/he engaged in prior protected activity: (2) the agency official(s) was aware of the protected activity; (3) s/he was subsequently disadvantaged by adverse treatment; and (4) there is a causal link between the protected activity and the adverse treatment. **Hochstadt v. Worcester Foundation for Experimental Biology, Inc.**, 425 F.Supp. 318, 324 (D.Mass.), aff'd, 545 F.2d 222 (1st Cir. 1976); **Manoharan v. Columbia University College of Physicians and Surgeons**, 842 F.2d 590, 593 (2d Cir. 1988) and **Whitmire v. Department of the Air Force**, EEOC Appeal No. 01A00340 (September 25, 2000). The causal connection may be shown by evidence that the adverse treatment followed the protected activity within such a period of time and in such a manner that a reprisal motive is inferred. **Grant v. Bethlehem Steel Corp.**, 622 F.2d 43 (2nd Cir. 1980). To support a finding of unlawful retaliation, there must be proof that the agency official(s) took the action at issue because of complainant's prior protected activity and sought to deter complainant or others. EEOC Compliance Manual on Retaliation, No. 915.003 (May 20, 1998), p. 8-16.

The complaint file indicates that at the time of the events described herein, you were a Full-Time Regular Clerk, PS-05, at the Springfield BMC in Springfield, Massachusetts. You failed to respond to the EEO Investigator's requests that you provide an affidavit during the investigation of this complaint. You believe that management denied your request to transfer to a custodial position on April 7, 2003 based on your disability (not identified), age (DOB 4/19/50) and in reprisal for prior EEO activity.

I find that you have failed to meet the threshold requirement that you are an individual with a disability as defined by the Rehabilitation Act. The record does not support a finding that at the time of the alleged discriminatory action, you had an impairment that qualified as a disability as defined by the Rehabilitation Act. You provided no testimony concerning the impact of your impairment (unspecified) on your major life activities. Also, you failed to provide any medical

 

David F. Poehler
Page 5

evidence that would indicate that your unidentified impairment substantially limited one or more of your major life activities. "The determination of whether an individual has a disability is not necessarily based on the name or diagnosis of the impairment the person has, but rather on the effect of that impairment on the life of the individual." **Sutton v. United Airlines**, 527 U.S. 471, 483 (1998), **citing**, 29 C.F.R. pt. 1630, App. § 1630.2(j). Merely having an impairment does not make one disabled for purposes of the statute, a claimant must also show that the impairment substantially limits a major life activity. **Toyota Motor Manufacturing, Kentucky, Inc. v. Williams**, 122 S.Ct. 681, 690 (2002). Major life activities are "those activities that are of central importance to daily life." Id. At 690. I find that you have not established that your unspecified impairment restricts you from doing activities that are of central importance to most people's daily lives. Finally, I find that you have failed to establish that you have a record of a disability or that you were treated as if you were disabled. **See Brown v. USPS**, EEOC Appeal No. 01990686 (February 21, 2002) (fact that complainant was provided with a limited duty job offer did not establish that the agency regarded him as an individual with a disability).

Returning to the previously discussed burden of proving a **prima facie** case of disparate treatment, I find that you failed to prove that you were treated less favorably than similarly situated individuals outside of your protected groups. Specifically, you failed to identify any Non-Disabled Full-Time Regular Clerk who was treated more favorably than you under like circumstances as described in this complaint. The complaint file indicates that Richard T. Coughlin and Jesse I. Dane were selected for the Laborer, Custodial position for which you sought a transfer. Unlike you, neither of the individuals selected had a record of an accident within the last five (5) years. Also, neither individual had a sick leave balance similar to your sick leave balance.

In terms of establishing a **prima facie** case of reprisal, I find that you failed to prove element 2 of a **prima facie** case; i.e. the agency official(s) was aware of your prior protected activity. The complaint file indicates that the selecting officials for the Laborer, Custodial position were Richard Wentzel, Manager, Maintenance Operations and William M. Waller, Manager, Maintenance Operations. Mr. Wentzel and Mr. Waller testified that they were not aware of you having prior EEO activity.

Assuming **arguendo** that you established a **prima facie** case of discrimination, management articulated a legitimate nondiscriminatory reason for the action taken. Mr. Wentzel testified that the most important criterion for selection for the Laborer, Custodial position was accident frequency within the last five (5) years. According to Mr. Wentzel, no applicant was selected who had an accident within the last five (5) years. You were not selected because you had a record of an accident within the last five (5) years. Mr. Waller testified that you were not selected for the position because you had an unacceptable safety record.

 

David F. Poehler
Page 6

Finally, you have the burden of proving, by a preponderance of the evidence, that the reasons asserted by management were not the true reasons, but merely pretexts for discrimination. **Burdine**, 450 U.S. at 247. You may meet your burden either directly by persuading the trier of fact that a discriminatory reason more likely than not motivated the employer or indirectly, by showing the employer's proffered explanation is unworthy of credence. **Burdine**, 450 U.S. at 256. In **St. Mary's Honor Center v. Hicks**, 509 U.S. 502 (1993), the Supreme Court held that a fact finder is not required as a matter of law, to find discrimination whenever it finds that the employer's explanation is not credible. The critical factor is that the court must be persuaded that it was discrimination that motivated the employer to act as it did. According to the Court, it is not sufficient "to disbelieve the employer; the fact finder must believe the plaintiff's explanation of intentional discrimination." **Hicks**, 509 U.S. at 519. I am not persuaded that management's action as described in this complaint was motivated by discrimination.

It is noted that you failed to provide an affidavit during the investigation of your complaint. The Commission has held that where the EEO investigator asked the complainant to provide specific information and the complainant failed to do so, any deficiency in the record preventing the complainant from meeting his/her burden of proof is not based on the agency's failure to conduct a proper investigation. **Scurra v. United States Postal Service**, EEOC Appeal No. 01965021 (October 8, 1998).

After carefully considering the entire record, and applying the legal standards outlined in **McDonnell Douglas Corp. v. Green**, 411 U.S. 792 (1973); **Prewitt v. U.S. Postal Service**, 662 F.2d 292 (5th Cir. 1981) (applying the standard to cases brought under the Rehabilitation Act); **Loeb v. Textron, Inc.**, 600 F.2d 1003 (1st Cir. 1973) (applying the standard to cases brought under the ADEA) and **Hochstadt v. Worcester Foundation for Experimental Biology, Inc.**, 425 F.Supp. 318 (D.Mass.), aff'd 545 F.2d 222 (1st Cir. 1976) (applying the standard to reprisal cases) I find that you have failed to prove that you were subjected to discrimination as alleged and your complaint is now closed.

## APPEAL RIGHTS

## APPEAL TO THE EEOC

You have the right to appeal the Postal Service's final decision to the **Director, Office of Federal Operations, Equal Employment Opportunity Commission (EEOC), P.O. Box 19848, Washington, DC 20036-9848**, within 30 calendar days of your receipt of this decision. You must use PS Form 3573, a copy of which is enclosed, in connection with your appeal. You may also deliver your appeal in person or by facsimile provided that briefs filed by facsimile are ten or fewer pages in length. Any supporting statement or brief must be submitted to




David F. Poehler
Page 7

the EEOC within 30 calendar days of filing the appeal. Along with your appeal, you must submit proof to the EEOC that a copy of the appeal and any supporting documentation or brief were also submitted to the **Manager, EEO Compliance & Appeals, Appeals Processing Center, USPS, 6 Griffin Road North, Windsor, CT 06006-7052.** You are advised that if you file your appeal beyond the thirty (30) day period set forth in the Commission's regulations, you should provide an explanation as to why your appeal should be accepted despite its untimeliness. If you cannot explain why your untimeliness should be excused in accordance with 29 C.F.R. §1614.604, the Commission may dismiss the appeal as untimely.

## RIGHT TO FILE A CIVIL ACTION

Alternatively, if you are dissatisfied with the Postal Service's final decision in this case, you may file a civil action in an appropriate U.S. District Court within ninety (90) calendar days of your receipt of the Postal Service's final decision, within ninety (90) calendar days of the EEOC's final decision on any appeal, or after one hundred and eighty (180) days from the date of filing an appeal with the EEOC if no final decision has been rendered. If you choose to file a civil action, that action should be captioned **(Your Name) v. John E. Potter, Postmaster General.** You may also request the court to appoint an attorney for you and to authorize the commencement of that action without the payment of fees, costs, or security. Whether these requests are granted or denied is within the sole discretion of the District Judge. Your application must be filed within the same 90-day time period for filing the civil action.

Robert S. Hylen
Manager, EEO Compliance & Appeals

November 1, 2004
Date

Enclosures: PS Form 3573
                     Certificate of Service

 

## CERTIFICATE OF SERVICE

For timeliness purposes, it will be presumed that this Notice of Final Decision was received within five (5) calendar days after it was mailed. I certify that on this date, this Notice of Final Decision was mailed to the following parties:

David F. Poehler
61 Rest Way
Springfield MA  01119-1730

Joseph Cabrera, Jr., Esq.
27 Mattoon Street
Springfield MA  01105-1715

Manager, Human Resources
Massachusetts District – USPS
74 Main Street
North Reading, MA 01889-9994

_Susan M. Flanagan_
Susan M. Flanagan
EEO Compliance & Appeals Specialist

_November 1, 2004_
Date

MAILED FIRST CLASS 4/10/02 JMP

**UNITED STATES POSTAL SERVICE**

**EEO Complaint of Discrimination in the Postal Service**
(See Instructions and Privacy Act Statement on Reverse)

| 1. Name | 2. SSN | 3. Case No. |
|---|---|---|
| Gloria Poehler | 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 | 1B-012-0031-02 |

| 4a. Mailing Address (Street or P.O. Box) | 4b. City, State and ZIP + 4 |
|---|---|
| 29 BEAUREGARD ST. | INDIAN ORCHARD, MA. 01151 |

| 5. Email Address * | 6. Home Phone | 7. Work Phone |
|---|---|---|
| | ( ) | (413) 785-6313 |

| 8. Position Title (USPS Employees Only) | 9. Grade Level (USPS Employees Only) | 10. Do You Have Veteran's Preference Eligibility? |
|---|---|---|
| CLERK | PS-05 | ☒ Yes ☐ No |

| 11. Installation Where You Believe Discrimination Occurred (Identify Installation, City, State, and ZIP+4) | 12. Name & Title of Person(s) Who Took the Action(s) You Allege Was Discriminatory |
|---|---|
| SPRINGFIELD BMC SPRINGFIELD, MA. 01152 | JAY PENNA AL HEARN MICHELLE COLLINS |

| 13a. Name of Your Designated Representative | 13b. Title |
|---|---|
| JOHN D. PETRIN | CO-WORKER |

| 13c. Mailing Address (Street or P.O. Box) | 13d. City, State and ZIP + 4 |
|---|---|
| | |

| 13e. Email Address * | 13f. Home Phone | 13g. Work Phone |
|---|---|---|
| | ( ) | ( ) |

* Providing this information will authorize the Postal Service to send important documents electronically.

**14. Type of Discrimination You Are Alleging**

☐ Race (Specify):
☐ Color (Specify):
☐ Religion (Specify):
☐ National Origin (Specify):

☐ Sex (Specify):
☐ Age (40+) (Specify):
☒ Retaliation (Specify Prior EEO Activity):
☒ Disability (Specify): PHYSICAL & MENTAL.

**15. Date on Which Alleged Act(s) of Discrimination Took Place**

**16.** Explain the specific action(s) or situation(s) that resulted in you alleging that you believe you were discriminated against (treated differently than other employees or applicants) because of your race, color, religion, sex, age (40+), national origin, or disability. Note that if your allegation is like or related to a previous complaint, that complaint may be amended. 29 C.F.R. § 1614.106(d).

ON 2/9/02 THE AGENCY RESCINDED A PREVIOUS LETTER OF DECISION BUT DID NOT MAKE ME WHOLE, ON JAN. 25, 2002 THE AGENCY ISSUED ME A LETTER OF DECISION ON MY NOTICE OF PROPOSED REMOVAL ALTHOUGH THE AGENCY RESCINDED THE LETTER OF DECISION I WAS NOT ALLOWED TO RETURN TO WORK UNTIL 2/14/02, MY REQUEST FOR 8 HOURS OF SICK LEAVE FOR 1/12/02 WAS DENIED, ON 1/10/02 THE INJURY COMPENSATION OFFICE RECEIVED MY CA-2 BUT AS OF 1/31/02 IT HAD NOT BEEN SENT TO OWCP IN BOSTON, ON 1/31/02 I REQUESTED AN EXPLANATION ON WHY MY CA-2 WAS NOT PROCESSED, I DID NOT RECEIVE A RESPONSE. SINCE ON OR

**17.** What Remedy Are You Seeking to Resolve this Complaint? ABOUT 2/13/02 THE AGENCY HAS FAILED TO GIVE ME REASONABLE ACCOMMODATIONS.

REMEDY- ALL RIGHTS AND BENEFITS TO WHICH I AM ENTITLED TO BY LAW AND/OR REGULATION.

**18.** Did You Discuss Your Complaint with a Dispute Resolution Specialist or a REDRESS Mediator?

☒ Yes (Date you received the Notice of Final Interview): 3/27/02    ☐ No
Mailed via Cert. of Svc.

| 19a. Signature of Dispute Resolution Specialist | 19b. Date |
|---|---|
| Katherine G. Montague | |

| 20. Signature of Complainant or Complainant's Attorney | 21. Date of this Complaint |
|---|---|
| David F. Poehler | 4-11-02 |

PS Form 2565, March 2001 (Page 1 of 2)

Formal Complaint
Page 1 of 3

Formal Complaint
Page 1 of 3

# Joseph Cabrera, Jr.

**27 Mattoon Street**
Springfield, MA 01105
(413) 781-2875
Fax (413) 732-1709
*email: cabgia@aol.com*

2004 MAY 12 ℙ 3: 46



May 10, 2004

**VIA 1st Class Mail**
Attn: Robert S. Hylen
Manager, EEO Compliance and Appeals
Appeals Processing Center
6 Griffin Road North
Windsor, CT 06006-7052

Re:  Agency No.:  1B-012-0031-02
     Filed on :   04/06/2002
     Complainant:  David Poehler

Dear Mr. Hylen,

    Please be advised that this office represents Mr. David Poehler in regards to the above mentioned complaint. Your agency had not completed its investigation within the prescribed (180) days. As the agency has failed to do so as prescribed by 29 CFR, Part 1614, 108 (e), we request an immediate decision in accordance with 29 CFR, Part 1614, 110 (b). My client seeks a final agency decision so that we may file a civil action in Federal District Court

    Please feel free to contact this office with any questions. Thank you for your time and consideration in this matter,

Very truly yours,

Joseph Cabrera, Jr., Esq.

DICTATED BUT NOT READ
JCJR:mjh

NORTHEAST AREA OFFICE



UNITED STATES
POSTAL SERVICE™

# UNITED STATED POSTAL SERVICE
## EQUAL EMPLOYMENT OPPORTUNITY CASE
### IN THE MATTER OF:

**David F. Poehler,**
**Complainant,**

**Case No. 1B-012-0031-02**

**v.**

**Filed on April 16, 2002**

**John E. Potter,**
**Postmaster General,**
**Respondent.**

## Notice of Final Decision

This is the Postal Service's final decision in regard to your complaint of discrimination. In that complaint, you claim discrimination based on your physical and mental disabilities and in retaliation for prior EEO activity, when (1) you were not made whole after the February 9, 2002 rescission of the Letter of Decision – Removal; (2) your request for sick leave for January 12, 2002 was denied; (3) you were not allowed to work during the period January 31, 2002 through February 14, 2002; (4) management delayed the processing of your OWCP Form CA-2 that you submitted on January 10, 2002, and your inquiries as to why the delay have not been answered, and (5) you have been denied reasonable accommodation since February 13, 2002.

By letter dated May 10, 2004, received by the Agency on May 12, 2004, you requested a final agency decision without a hearing. This decision is being issued pursuant to your request. It is noted that your request was received prior

6 GRIFFIN ROAD N
WINDSOR CT 06006-7000

David F. Poehler
Page 2

to the completion of the processing of your complaint by an Equal Employment Opportunity Investigator. The completed report of investigation was received by the Appeals Processing Center on June 18, 2004. Therefore, a copy of the completed Investigative Report and complaint file was transmitted to you with this final agency decision.

To prevail on a claim of unlawful discrimination, a complainant must satisfy the three-part evidentiary scheme in **McDonnell Douglas Corporation v. Green**, 411 U.S. 792 (1973). A complainant must initially establish, by preponderant evidence, a **prima facie** case of discrimination. The **prima facie** elements are determined by the circumstances of the case and the bases of discrimination alleged. **International Brotherhood of Teamsters v. United States**, 431 U.S. 324, 358 (1977). The agency must then articulate legitimate nondiscriminatory reasons for its actions. Finally, the burden returns to the complainant to prove, by a preponderance of the evidence, that the agency's ostensibly legitimate and nondiscriminatory reasons are pretextual. **Cooper v. Federal Reserve Bank of Richmond**, 467 U.S. 867, 875 (1984); **U.S. Postal Service Board of Governors v. Aikens**, 460 U.S. 711, 715-6 (1983); **Texas Department of Community Affairs v. Burdine**, 450 U.S. 248, 253-6 (1981).

At all times, the ultimate burden of persuasion remains with the complainant. **Board of Trustees of Keene College v. Sweeney**, 439 U.S. 24, 25 N.2 (1978). This burden was reaffirmed and clarified in **St. Mary's Honor Center v. Hicks**, 509 U.S. 502 (1993). In **Hicks**, the Court held that in order to impose liability upon an employer for discriminatory employment practices there must be an ultimate finding of unlawful discrimination regardless of whether or not the employer's explanation for its action was believable.

In order to establish a **prima facie** case of disparate treatment, a complainant must demonstrate: (1) that he/she belongs to a statutorily protected group; (2) that he/she is similarly situated with employees outside his/her protected group; and (3) that he/she was treated differently than those employees. In order for two or more employees to be considered similarly situated for the purpose of creating an inference of disparate treatment, a complainant must show that all of the relevant aspects of his/her employment situation are nearly identical to those of the other employees who he/she alleges were treated differently. **Smith v. Monsanto Chemical Co.**, 770 F.2d 719, 723 (8th Cir. 1985); **Murray v. Thistledown Racing Club, Inc.**, 770 F.2d 63, 68 (6th Cir. 1985); **Nix v. WLCY Radio/Rahall Communications**, 738 F.2d 1181, 1185 (11th Cir. 1984); Payne **v. Illinois Central Gulf Railroad**, 655 F. Supp. 1308, 1333 (W.D. Tenn. 1987).

The Commission has long held that employees are similarly situated when they are subjected to the same supervisor, perform the same job function, are on the same tour of duty, and are subjected to an adverse employment action during

David F. Poehler
Page 3

approximately the same period. **O'Neal v. United States Postal Service**, EEOC Request No. 05910490 (July 23, 1991). The courts have held that:

> "Employees are not 'similarly situated' merely because their conduct might be analogized. Rather in order to be similarly situated, other employees must have reported to the same supervisor as the plaintiff, must have been subjected to the same standards governing performance evaluation and discipline, and must have engaged in conduct similar to the plaintiff's without such differentiating or mitigating circumstances that would distinguish their conduct or the appropriate discipline for it (emphasis furnished)." **Mazzelli v. RCA Global Communications, Inc.**, 642 F. Supp. 1531, 1547 (S.D. N.Y. 1986), Aff'd 814 F.2d 653 (2nd Cir. 1987).

In other words, "apples should be compared to apples." **Dartmouth Review v. Dartmouth College**, 889 F.2d 13, 19 (1st Cir. 1989).

Courts have adopted and applied the Title VII burdens of proof to disability discrimination. See **Norcross v. Sneed**, 755 F.2d 113 (8th Cir. 1985); **Prewitt v. United States Postal Service**, 662 F.2d 292 (5th Cir. 1981). In order to establish a **prima facie** case of disability discrimination, a complainant must prove, by a preponderance of the evidence, that he was treated differently than individuals not within his protected group, or that the agency failed to make a needed reasonable accommodation, resulting in adverse treatment of the complainant. See **Sessions v. Helms**, 751 F.2d 991, 992-3 (9th Cir.), cert. denied 474 U.S. 846 (1985). A complainant also must demonstrate a causal relationship between the disabling condition and the agency's reasons for the adverse action.

The Supreme Court has held that the determination of whether a person is an "individual with a disability" must be based on his or her condition at the time of the alleged discrimination. The positive and negative effects of mitigating measures used by the individual, such as medication or an assistive device, must be considered when deciding if he or she has an impairment that substantially limits a major life activity. **Sutton v. United Airlines, Inc.**, 527 U.S. 471 (1999); **Murphy v. United Parcel Service, Inc.**, 527 U.S. 516 (1999).

The Office of Personnel Management regulations defining medical documentation required for a disability claim provides at 5 C.F.R. 339.102: "(a) the history of the specific medical condition(s), including references to findings from previous examinations, treatment and responses to treatment; (b) clinical findings from the most recent medical evaluation, including any of the following which have been obtained: findings of physical examination, results of laboratory tests, X-rays, EKG's and other special evaluations for diagnostic procedure, and in the case of psychiatric disease, the findings of a mental status examination and the results of psychological studies; (c) assessment of the current clinical

David F. Poehler
Page 4

status and plans for future treatment; (d) diagnosis; (e) an estimate of the expected date of full or partial recovery; (f) an explanation of the impact of the medical condition on the life activities both on and off the job; (g) narrative explanation of the medical basis for any conclusions that the medical condition has or has not become static or well stabilized:..."

To establish a **prima facie** case of reprisal discrimination, a complainant must show that: (1) s/he engaged in prior protected activity: (2) the agency official(s) was aware of the protected activity; (3) s/he was subsequently disadvantaged by an adverse action; and (4) there is a causal link between the protected activity and the adverse action. **Hochstadt v. Worcester Foundation for Experimental Biology, Inc.**, 425 F.Supp. 318, 324 (D.Mass.), aff'd, 545 F.2d 222 (1st Cir. 1976); **Manoharan v. Columbia University College of Physicians and Surgeons**, 842 F.2d 590, 593 (2d Cir. 1988). The causal connection may be shown by evidence that the adverse action followed the protected activity within such a period of time and in such a manner that a reprisal motive is inferred. **Grant v. Bethlehem Steel Corp.**, 622 F.2d 43 (2nd Cir. 1980). To support a finding of unlawful retaliation, there must be proof that the agency official(s) took the action at issue because of complainant's prior protected activity and sought to deter complainant or others. EEOC Compliance Manual on Retaliation, No. 915.003 (May 20, 1998), p. 8-16.

The complaint file indicates that at the time of the events described herein, you were a Full-Time Regular Parcel Post Distribution Machine Clerk, PS-05, at the Springfield Bulk Mail Center in Springfield, Massachusetts. You failed to respond to three affidavit requests made by the EEO Investigator during the investigation of your complaint. On PS Form 2565, EEO Complaint of Discrimination in the Postal Service, you claim that you were subjected to the following discriminatory actions: you were not made whole after the February 9, 2002 rescission of the Letter of Decision – Removal; your request for sick leave for January 12, 2002 was denied; you were not allowed to work during the period January 31, 2002 through February 14, 2002; management delayed the processing of your OWCP Form CA-2 that you submitted on January 10, 2002, and your inquiries as to why the delay have not been answered, and you have been denied reasonable accommodation since February 13, 2002. (ROI, Formal Complaint Tab, page 1). You state that management took these actions based on your mental and physical disabilities (not specified) and in retaliation for prior EEO activity.

As an initial matter, I find that your claim that management delayed the processing of your OWCP Form CA-2 that you submitted on January 10, 2002, and your inquiries as to why the delay were not answered (Claim 4), fails to state a claim. This claim constitutes an impermissible collateral attack on the OWCP decision making process, and, as such, fails to state a claim. The OWCP has exclusive jurisdiction over the administration, interpretation, and enforcement of the Federal Employees Compensation Act (FECA). In a similar complaint, the

David F. Poehler
Page 6

numbered 1B-012-0056-01.    (ROI, Exhibit 2, page 1).    Since the actions complained of in the instant case did not occur until approximately seven (7) months after your EEO case numbered 1B-012-0034-01 was initiated, too much time has elapsed to establish the requisite causal connection between the management actions complained of and your prior EEO activity.  In **Clark County School District v. Breeden**, 2002 WL 402573 (SCT 2001), the U.S. Supreme Court held that to establish nexus, the temporal proximity must be "very close," citing **O'Neal v. Ferguson Constr. Co.**, 237 F.3d 1248, 1253 (CA 10 2001); **Richmond v. Oneok, Inc.**, 120 F.3d 205, 209 (CA 10 1997)(3-month period insufficient); **Hughes V. Derwinski**, 967 F.2d1168, 1174-1175 (CA 7 1992)(4-month period insufficient).

Additionally, the EEOC is relying on shorter proximity time periods, i.e. 3-4 months.  **Brown v. Department of Defense**, EEOC Appeal No. 01990413 (February 13, 2002); **Lombardo v. United States Postal Service**, EEOC Appeal No. 01996935 (April 4, 2002); **Turner v. United States Postal Service**, EEOC Appeal No. 01A03220 (February 21, 2003); **Turner v. Department of Defense**, EEOC Appeal No. 01A21018 (May 29, 2003); **Lynch v. United States Postal Service**, EEOC Appeal No. 01A24705 (August 14, 2003).  In **Buggs v. Powell**, 293 F. Supp. 2d 135 (D.D.C. 2003), the U.S. District Court for the District of Columbia states that while courts have not established the maximum time lapse between protected activity and alleged retaliatory actions for establishing causal connection, courts generally have accepted time periods of a few days up to a few months and seldom have accepted time lapses outside of a year in length.  Further, the District Court stated that the cases cited by the **Breeden** Court seem to suggest that if a plaintiff relies upon temporal proximity alone to establish causation, the time span must be under three months.

Assuming **arguendo** that you established a **prima facie** case of discrimination, management articulated a legitimate nondiscriminatory reason for the actions taken.  The complaint file indicates that you were issued a Notice of Proposed Removal on January 4, 2002 for the charge of Failure to Comply With an Official Directive.  Specifically, you failed to comply with a directive issued to you on November 16, 2001 concerning your absence from work since November 6, 2001. (ROI, Exhibit 3). On January 25, 2002, a Letter of Decision was issued on the Notice of Proposed Removal. In that decision, Allan J. Hearn, Manager, Distribution Operations, found that the evidence warranted your removal. (ROI, Exhibit 5).  However, by letter dated February 9, 2002, you were notified by Jerome Penna, Supervisor Distribution Operations, that the removal had been rescinded. In the letter, Mr. Penna provided you with several options, including your return to work, and asked that you contact him no later than February 13, 2002 to advise him of the selected option. (ROI, Exhibit 7).

As indicated above, for the period January 31, 2002 through February 9, 2002, the Agency had initiated the removal process with regard to your employment. Mr. Penna testified that you had been considered Absent Without Leave at the

David F. Poehler
Page 7

time that the Notice of Proposed Removal had been issued on January 4, 2002.
Therefore, you were not entitled to be "made whole" for this time period. Mr.
Penna stated that you could have returned to work as of February 10, 2002. Mr.
Hearn indicated that you needed to be cleared to return to work after the
rescission of the removal action. Under the Employee and Labor Relations
Manual, employees need to be cleared to return to work after an extended
absence due to illness or injury. (ROI, Exhibit 13). The complaint file indicates
that through the grievance process, you were compensated for your absence
during the period January 31, 2002 through February 14, 2002. (ROI, Exhibits 8
and 9). (Claims 1 and 3).

The complaint file indicates that Mr. Penna denied your request for eight (8)
hours of sick leave for January 12, 2002. (ROI, Exhibit 4). Mr. Penna indicated
that your sick leave was denied for January 12, 2002 because the removal
process had been initiated. (ROI, Affidavit B, page 4 ). (Claim 2).

With regard to Claim 5, you indicated during the counseling process that
management had failed to provide you with reasonable accommodation in that it
had not transferred you to another work area away from your current
supervisors. (ROI, Counselor's Report, pages 7-9). Mr. Hearn testified that you
had requested to be assigned to the General Mail Facility. However, you both
agreed that you would be assigned to the BMC-East from the Bulk Mail Center.
According to Mr. Hearn, he believed that you were happy with the move to the
BMC-East, and you had not informed him that you were not being
accommodated following the move. (ROI, Affidavit C, page 5).

Finally, you have the burden of proving, by a preponderance of the evidence,
that the reasons asserted by management were not the true reasons, but merely
pretexts for discrimination. **Burdine**, 450 U.S. at 247. You may meet your
burden either directly by persuading the trier of fact that a discriminatory reason
more likely than not motivated the employer or indirectly, by showing the
employer's proffered explanation is unworthy of credence. **Burdine**, 450 U.S. at
256. In **St. Mary's Honor Center v. Hicks**, 509 U.S. 502 (1993), the Supreme
Court held that a fact finder is not required as a matter of law, to find
discrimination whenever it finds that the employer's explanation is not credible.
The critical factor is that the court must be persuaded that it was discrimination
that motivated the employer to act as it did. According to the Court, it is not
sufficient "to disbelieve the employer; the fact finder must believe the plaintiff's
explanation of intentional discrimination." **Hicks**, 509 U.S. at 519. I am not
persuaded that management's actions as described in this complaint were
motivated by discrimination.

It is noted that you failed to provide an affidavit during the investigation of your
complaint. The Commission has held that where the EEO investigator asked the
complainant to provide specific information and the complainant failed to do so,
any deficiency in the record preventing the complainant from meeting his burden

David F. Poehler
Page 8

of proof is not based on the agency's failure to conduct a proper investigation. **Scurra v. United States Postal Service**, EEOC Appeal No. 01965021 (October 8, 1998).

After carefully considering the entire record, and applying the legal standards outlined in **McDonnell Douglas Corp. v. Green**, 411 U.S. 792 (1973); **Prewitt v. U.S. Postal Service**, 662 F.2d 292 (5th Cir. 1981) (applying the standard to cases brought under the Rehabilitation Act) and **Hochstadt v. Worcester Foundation for Experimental Biology, Inc.**, 425 F.Supp. 318 (D.Mass.), aff'd 545 F.2d 222 (1st Cir. 1976) (applying the standard to reprisal cases), I find that you have failed to prove that you were subjected to discrimination as alleged and your complaint is now closed.

## APPEAL RIGHTS

### APPEAL TO THE EEOC

You have the right to appeal the Postal Service's final decision to the **Director, Office of Federal Operations, Equal Employment Opportunity Commission (EEOC), P.O. Box 19848, Washington, DC 20036-9848**, within 30 calendar days of your receipt of this decision. You must use PS Form 3573, a copy of which is enclosed, in connection with your appeal. You may also deliver your appeal in person or by facsimile provided that briefs filed by facsimile are ten or fewer pages in length. Any supporting statement or brief must be submitted to the EEOC within 30 calendar days of filing the appeal. Along with your appeal, you must submit proof to the EEOC that a copy of the appeal and any supporting documentation or brief were also submitted to the **Manager, EEO Compliance & Appeals, Appeals Processing Center, USPS, 6 Griffin Road North, Windsor, CT 06006-7052**. You are advised that if you file your appeal beyond the thirty (30) day period set forth in the Commission's regulations, you should provide an explanation as to why your appeal should be accepted despite its untimeliness. If you cannot explain why your untimeliness should be excused in accordance with 29 C.F.R. §1614.604, the Commission may dismiss the appeal as untimely.

### RIGHT TO FILE A CIVIL ACTION

Alternatively, if you are dissatisfied with the Postal Service's final decision in this case, you may file a civil action in an appropriate U.S. District Court within ninety (90) calendar days of your receipt of the Postal Service's final decision, within

David F. Poehler
Page 9

ninety (90) calendar days of the EEOC's final decision on any appeal, or after one hundred and eighty (180) days from the date of filing an appeal with the EEOC if no final decision has been rendered. If you choose to file a civil action, that action should be captioned **(Your Name) v. John E. Potter, Postmaster General**. You may also request the court to appoint an attorney for you and to authorize the commencement of that action without the payment of fees, costs, or security. Whether these requests are granted or denied is within the sole discretion of the District Judge. Your application must be filed within the same 90-day time period for filing the civil action.

for Robert S. Hylen
Manager, EEO Compliance & Appeals

June 25, 2004
Date

Enclosures: PS Form 3573
Certificate of Service

# United States District Court
# District of Massachusetts

**DAVID F. POEHLER**
        PLAINTIFF

    **v.**

**JOHN E. POTTER, POSTMASTER
GENERAL, USPS**
        DEFENDANT

**CIVIL ACTION NO.** 04-30254-MAP

### RESPONSE TO
### DEFENDANT'S FIRST SET OF INTERROGATORIES

The plaintiff, David F. Poehler, serves upon the defendant, John E. Potter, the following

response to interrogatories pursuant to Fed. R. Civ. P. 33.

### INTERROGATORIES

1.    State the basis of your claim of discrimination, i.e. whether it is based on age, sex, race, national origin, disability or retaliation.

    **ANSWER:**
This complaint is based on discrimination on account of my age, sex and disability (physical and emotional) and in retaliation for filing prior complaints. This case was filed December 29, 2004 after I received notice of final decision dated September 30, 2004, in EEO Agency No. 1B-01200034-01, filed June 20, 2001, that complained of unlawful discrimination in retaliation for EEO activity, when: (1) on March 15, 2001, I was issued a Notice of Proposed Removal charging me with failure to comply with an official directive and AWOL; (2) on July 18, 2001, a 7 Day Suspension held in abeyance as a reduction to his Proposed Removal, was invoked; (3) on or about August 30, 2001 Acting Manager Distribution Operations Al Hearn threatened me regarding my EEO activity; and (4) I was denied overtime and holiday work during the Labor Day 2001 holiday weekend. I also claimed discrimination based on my mental and physical disabilities, and in retaliation for prior EEO activity when on September 29, 2001, I was issued a Notice of 14-Day Suspension charging me with failure to be regular in attendance.

This EEO case was consolidated with EEO Agency number 1B-021-0026-99, filed June 6, 1999, where I complained to EEO about not being able to return to my supervisory position in 1997. This was after I had learned that a woman, Suzanne Bowes, a PTF mail handler (level 4) approximately 25 years old at the time, who had less experience as a supervisor than me, was promoted from the BMC to Supervisor (Level 16) in Springfield, VT, even though she had not completed the ASP program. In defense of this claim, Koestner claimed that, because Springfield, VT was not in the 010- 011 zip code, the ASP had not been required.



After filing that complaint, I learned that another former supervisor, Richard Cowley, separated from the postal service for one and one half years and had been reinstated by Robert Koestner to his former supervisory position at the Riverdale Facility (within the 010-011 area code) and was not required to take the ASP test. Mr. Cowley later served as a supervisor at the East Longmeadow facility within the 010-111 zip code.

I also learned that Sheri Kania, a level 5 clerk, returned to the BMC facility in the 011 area in late 1999 from a Florida USPS facility. Ms. Kania, who was under 40 years old at the time, and only had acting supervisory experience, was appointed a Maintenance Operations Supervisor at the Springfield BMC, but was not required to take the ASP test.

I also learned that Raymond Hearn, the son of MDO Wayne Hearn, who was under age 40 at the time, was given multiple opportunities to take the ASP exam after failing the exam the first time.

Similarly, I subsequently learned Ms. Robin Belville failed the exam and was afforded additional opportunities to take the exam and was appointed on 7/12/03 as EAS 17, customer Service Representative at the Riverdale installation with the 010-100 area.

Fran Demaio received encouragement and multiple opportunities to take ASP test after initial failure, as did a friend of hers whose name I cannot remember and other individuals received notification by e-mail as to ASP participation and exam information, special treatment I did not receive.

Also, I learned that former Emory employees were hired by the USPS as supervisors, without completing the ASP program.

The exam never should have been a requirement for me, and I was not afforded the same opportunities as other persons.

This case also is an appeal from a notice of final decision dated November 1, 2004 on EEO case #1B-001-0008-03, filed May 29, 2003, that complained of unlawful discrimination based on my age and disability and in retaliation for prior EEO activity, when on April 7, 2003, my request for transfer to a custodial position was denied.

Despite the above, I continue to be denied a permanent supervisor position due to unlawful discrimination based on age, sex, and disability, as well as in retaliation for prior EEO filings.

    2.     If you are claiming discrimination based on a disability, state the following:

        a.    the nature of the disability;
        b.    the names and addresses of all health care practitioners who treated you for the condition causing the disability;
        c.    a description of how, if at all, the disability limits your activities;
        d.    if management was aware of your disability, state specifically who was aware and how that person or persons became aware.